## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

SUOOD ALMERDAEI, ALI ALAWI ALMARDAEI, AMR
ALDAYLAM, SAMAN AL-GAAD, ABDO ALI SALEH,
ALI ABDO SALEH, ALFIAH ABOD AHMED, JAMAL
ALMANSOURI, NABILA ALHANASH, ARWA SALEH,
FAISAL ALGUDARI, TAWFIK RAJEH, A.R., SIHAM
RAJEH, ATEF RAJEH, WADLAH MOHAMMED SALEH,
H.W.M.Q., H.W.M.Q. (2), N.W.M.Q., ABDLARZAK
MOHSIN, BAHIA MOHAMMED AHMED YAHYA, AMIN
EL BURATI, KUBLA MOSHIN, MAR ABDO KAID (a.k.a.
FAIZ ALI AL-NOMAIR), SAQR AL-NOMAIR, HILAL AL-
NOMAIR, EMTETHAL AL-NOMAIR, NORH A. AHMED,
HUSSEIN ALI YAFAI, SHATHIA ABDO ALNAGGAR,
NAKHLA SALEH HUSSEIN SAIBAAN, AHLAM
HAUTER, ABDULRAKIB ABASHAAR, RASAM OBAID
SAEED, EMAD NASR ABDULRAB NAGI, MANSOUR
MOHAMED, GHAITHAH SHAROH, MAJDY ALHARBI,
ANHAR ABDULLAH TAHER, ABDELBASET ALI,
JAMILAH ALI, ESMAYL ALGAZALI, LATIFIYA
ALGAZALI, FAYZAH ABDULLAH, GHYATH
ABSULRAHMAN SALEH, The Estate of MOHAMED
MUTAHER KASSEM, WAFE ABDULLA SALEH, NADA
ALGHAITHY, B.H.A., G.H.A., S.H.A., SAEED SHARIF,
SABA AL HAMRI, F.S., TAWFIK AL-SAIDI, ETIDAL
ALKUAIF, MOHAMED AL-WAJIH, KAWKAB AL
MALKI, ABDURAHMAN AL MALKI, ASMA
ABDULHAMID AL-QUHAIF, MOHAMED TAHER
ALDAFRI, AMAL AL-OKAM., A.A., S.A., MUTEI AL
GHAZALI, M.M.N.A., ABDASALAM SAEED, GEAB
SAEED, MONA ABASS ZABARA, WALED MOHAMMED
AL NEHMI, NAIF AL NAJAR, SOMAYAH AL NAJAR,
M.A., DIANA AREVALO, YAHA AMER ALHAGAG,
ABDO AHMED NASSER, GHAMDAM NASSER,
MOKHTAR NASSER, HANAN FAHMI ALGHAITHI,
WAZEA ABDULKADER ALGARADI, NEHMAH AHMED
SHOHATEE, MUSTAFA AHMED YAHYA, SURIAH
MOHAMED MUTHANA, MOHAMED QASEM,
SAMERAH AHMED MUSA, ABDULLAH ALI SALEH,
MEETHAK ABDULLAH ALI SALEH, AHMED YAHYA
HAIMED, and QUBLAH TAHAR YAHYA,

　　　　　　　　Plaintiffs,

　　　　v.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**NOTICE OF MOTION
FOR EMERGENCY WRIT
OF MANDAMUS AND
PRELIMINARY
INJUNCTION;
MEMORANDUM OF
POINTS AND
AUTHORITIES IN
SUPPORT THEREOF**

DONALD J. TRUMP, as President of the United States of )
America; MATTHEW WHITAKER, Acting Attorney General )
of the United States; MICHAEL POMPEO, Secretary of State; )
U.S. DEPARTMENT OF STATE; U.S. DEPARTMENT OF )
JUSTICE; KIRSTJEN NIELSEN, Secretary of Homeland )
Security; U.S DEPARTMENT OF HOMELAND SECURITY; )
DANIEL COATS, Director of National Intelligence; OFFICE )
OF THE DIRECTOR OF NATIONAL INTELLIGENCE; )
DEVIN KENNINGTON, Consular Officer at U.S. Embassy in )
Djibouti; CHAPMAN GODBEY, Consular Officer; RYAN )
NOLAN, Consular Officer at U.S. Embassy in Djibouti; U.S. )
EMBASSY IN DJIBOUTI, )

Defendants.

## TABLE OF CONTENTS

I.    INTRODUCTION....…………………………………………………………………37

II.   RELEVANT FACTS .....................................................................................40

III.  RELIEF SOUGHT .....................................................................................71

IV.   JURISDICTION .........................................................................................72

V.    STANDARD FOR PRELIMINARY INJUNCTION ...........................................73

VI.   ARGUMENT .............................................................................................74

   A.   PLAINTIFFS HAVE SUFFERED, AND CONTINUE TO SUFFER IRREPARABLE
        HARM...................................................................................................74

   B.   PLAINTIFFS DEMONTRATE A STRONG LIKELIHOOD OF SUCCESS ON THE
        MERITS ................................................................................................75

      1.   Plaintiffs will Likely Prevail on their Claim that Defendants' Denial of Immigrant
           Visas to Plaintiffs is an Arbitrary and Capricious Abuse of Discretion, not in
           Accordance with the Law, and without Observance of Procedure in Violation of
           Plaintiffs' Rights Under the APA……..................................................…….75

      2.   Plaintiffs will Likely Prevail on their Claim that Defendants' Denial of Plaintiffs'
           Immigrant Visas is in Violation of the INA, the FAM, and the Fifth Amendment Due
           Process Clause of the U.S. Constitution……………………………………………..77

      3.   Plaintiffs will Likely Prevail on their *Bivens* Claim Against Defendants Miller,
           Whitaker, Pompeo, Nielsen, Cissna, McAleenan, Coats, Kennington, and Godbey for
           Violating Plaintiffs' Constitutional Rights……………………………………………..81

         A.   Defendants Miller, Whitaker, Pompeo, Nielsen, Cissna, McAleenan, and Coats
              Are Involved in the Drafting, Implementation, and Enforcement of the
              Proclamation, a Blatantly Racist and Discriminatory Policy, Targeting Immigrants
              from Muslim Countries and Violates Plaintiffs' Constitutional Rights…………..83

         B.   Defendants Kennington, and Godbey's Abusive and Discriminatory Behavior
              Against Plaintiffs in the Issuance of Visas Based on Nationality, Their Failure to
              Properly Apply Waivers Under the Proclamation, and their Failure to Provide
              Guidance on the Waiver Process Violates Plaintiffs' Constitutional Rights….……85

VII.  THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN FAVOR OF PLAINTIFFS.....86

VIII. CONCLUSION..........................................................................................87

**TABLE OF AUTHORITIES**

**Cases**

*Abdul Wali v. Coughlin*, 754 F.2d 1015 2d Cir. 1985)……………...…………….…….…..73

*Ana International Inc. v. Way*, 393 F.3d 886 (9th Cir. 2004)…………...…………………..72

*Ayanbadejo v. DHS*, 517 F.3d 273 (5th Cir. 2008)……………………………………………76

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971)…………………………………………………………………………………81, 85, 87

*Bowen v. Massachusetts*, 487 U.S. 879 (1988)…………...…………………………….......…72

*Califano v. Sanders*, 430 U.S. 99 (1977)……………………………………………..…………72

*Coca-Cola Co. v. Tropicana Prods., Inc.,* 690 F.2d 312 (2d Cir. 1982)………...…………….73

*Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979)……………….…..81

*Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003)…………………………………………79

*Dixie Fuel Co. v. Comm'r of Social Security*, 171 F.3d 1052 (6th Cir. 1998)...……………..…72

*Doe v. New York University*, 666 F.2d 761 (2d Cir. 1981)……………………………….....74

*Ferreras v. Ashcroft,* 160 F. Supp. 2d 617, 629 (S.D.N.Y 2001)………………………..78

*Ginters v. Frazier,* 614 F.3d 822 (8th Cir. 2010)………………………………………..…76

*Harrison v. New York*, 95 F. Supp. 3d 293, 316 (E.D.N.Y. 2015)………………….……..81

*Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996)……………………………...…………..………..73

*Lanza v. Ashcroft,* 389 F.3d 917, 927 (9th Cir. 2004)……………………………………78

*Loveridge v. Pendleton Woolen Mills, Inc.*,788 F.2d 914 (2d Cir. 1986)………...……...…..74

*Mejia Rodriguez v. DHS,* 562 F. 3d 1137 (11th Cir. 2009)……………………………....76

*Obergefell v. Hodges*, 135 S. Ct. 2584 (2015)…………………………………………79

*Pazer v. N.Y. State Board of Law Examiners*, 849 F. Supp. 284 (S.D.N.Y. 1994)………...……74

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904 (2d Cir. 1990)……………….……..74

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994)…………………..81

*Ruiz v. Mukasey,* 552 F.3d 269 (2d Cir. 2009)………………………………………………76

*Sabhari v. Reno*, 197 F.3d 938 (8th Cir. 1999)…………………………........................…72, 75

*Schweitzer v. Dep't of Veterans Affairs*, 23 F. App'x 57, 59 (2d Cir. 2001)………………………81

*Sereika v. Patel*, 411 F. Supp. 2d 397, 402 (S.D.N.Y. 2006)………………………………...82

*Shah v. Chertoff,* No. 3:05-CV-1608-BH (K) ECF, 2006 U.S.Dist. LEXIS 73754(N.D. Tex. 2006)……………………………………………………………………………………....75

*Sigman Coal Co. v. Apfel,* 226 F.3d 291, 301 (4ᵗʰ Cir. 2000)………...…..……………………72

*Stanley v. Illinois,* 405 U.S. 645, 651 (1972)………………………………………………79

*Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2d Cir. 1995)……………74

*Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006)……………….…………………….....72, 75

*Trump v. Hawaii,* 585 U.S. __ (2018)………………………………………………….37, 40

*Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969 (2d Cir. 1989)………..…………...74

*Waldman Publishing Corp. v Landoll, Inc.*, 43 F.3d 775 (2d Cir. 1994)………….…………....73

*Weyerhaeuser Co. v. United States Fish and Wildlife Service, et al.* 139 S. Ct. 361 (2018)……..76

*Yeboah v. U.S. DOJ*, 345 F.3d 216 (3d Cir. 2003)………...…………….…...………….……72

**Statutes**

5 U.S.C. § 551(13)………………………………………………………………...73, 75

5 U.S.C. § 702…..………………………………………………...…….....................73, 75

5 U.S.C. § 706(2)…………………………………………………………………76

8 U.S.C. § 1152(a)(1)(A)………………………………………………………………77

9 FAM 504.13(f)………………………………………………………….…...…..78

22 C.F.R. § 40.6…………………………………………...………………………………77

22 C.F.R. § 41.121…………………………………………………………………….…77

22 C.F.R. § 42.81……………………………………………...……………………….…77

22 C.F.R. § 42.81(a)……………………………………………………………………..85

22 C.F.R. § 42.81(e)…………………………...………………………………………..85

28 U.S.C. § 1331……………………………………………………………...…………72

INA § 212(a)……………………………………………………………………………85

INA § 221(g)……………………………………………………………………………85

INA § 242(a)(2)(B)(ii)………………………………………………………….......76

Presidential Proclamation No. 9645, 82 Fed. Reg. 45161 (Sept. 27, 2017), 3(c)………..37, 40, 76

## Constitutional Provisions

Art. II Con………………………………………...………………………………………...72

Con. Amend. Art. V……………………………………………...…………40, 71, 79-83, 85-87

## EXHIBIT LIST

### Proof of Fraudulent Waiver Process

Declaration of Former Consular Officer, Christopher Richardson, Esq……………………..…A

> ". . . there really is no waiver and the Supreme Court was correct to point out that the waiver is merely 'window dressing.'"

> "My understanding was no one is eligible to apply [for a waiver]."

> "If for some reason an applicant made it through the list and we had no choice but to determine we could find an applicant eligible to apply, regardless of the PP instructions that we had 'discretion to grant the waiver,' we were not allowed to exercise that discretion."

> "In essence what the administration was doing was 'hiding' behind the doctrine of consular non-reviewability for the benefit of issuing a Muslim ban and the same time usurping all of our authority given by both Congress and the PP by disallowing the consular officer to make a decision."

Declaration of Jay Garison, Esq, Obtained from Evidence used in *Emami v. Nielsen,* 3:18-cv-01587 (N.D. California, filed May 13, 2018)……………...…….………….……………..…..B

> ". . . without being able to submit documents and legal analysis supporting a demonstration that the applicant meets the three criteria for a waiver, there is no way that an individual applicant could demonstrate to an officer's satisfaction that he or she qualifies for a waiver in a three to five minute visa interview."

> ". . . consular officers are tactically acknowledging that the waiver process is a fraud and documentary evidence is not necessary to satisfy the undue hardship and national interest factors. . . ."

> ". . . the haphazardly implemented provisions of P.P. 9645 result in an unnecessary burden on the Department of State, excessive and unnecessary denials for individuals with legitimate cases from the designated countries, and fundamentally appears to be little more than a sham due to the recursive requirements of its apparent implementation."

Presidential Proclamation No. 9645, 82 Fed. Reg. 45161 (Sept. 27, 2017)………………………C

U.S. Dep't of State, "June 26 Supreme Court Decision on Presidential Proclamation 9645".......D

Findings of Fact and Conclusions of Law, *Alharbi v. Miller,* No. 1:18-cv-02435 (E.D.N.Y. filed April 25, 2018), ECF No. 20…………………………………………………………...……....E

Letter from Mary K. Waters, U.S. Dep't of State, to the Hon. Chris Van Hollen, U.S. Senate, Feb. 22, 2018……………………………………………………………...........................F

Tr. of Oral Argument, *Trump v. Hawaii*, Case No. 17-965, at 81:1-9………...……...………....G

Jeremy Stahl, "The Waiver Process Is a Fraud," Slate, June 15, 2018…......................................H

Defendants' Opposition to Plaintiff's Renewed Application for Temporary Restraining Order & Preliminary Injunction, *Doe v. Trump,* No. 17-CV-112-WMC (W.D. Wis. Mar. 10, 2017), 2017 WL 975996……...…………………………………….…………….........................................I

Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction and/or Temporary Restraining Order, *Int'l Refugee Assistance Project v. Trump*, 241 F. Supp. 3d 539 (2017) (No. 8:17-cv-00361-TDC), 2017 WL 1047713……………….………………………….......……..J

Application for Stay Pending Appeal to the U.S. Court of Appeals for the Ninth Circuit, *Trump v. Hawaii*, 137 S. Ct. 2080 (2017) (No. 16-1540)………………………………………………...K

Center for Constitutional Rights and the Rule of Law Clinic at Yale Law School, *Window Dressing the Muslim Ban: Reports of Waivers and Mass Denials from Yemeni-American Families Stuck in Limbo* (2018)…………………….……………….………...……………………L

Embassy Letter Regarding Eligibility for Waiver Under the Proclamation…………..…………M

WhatsApp Messages from State Department Employee…………..……………….……..…….…N

"The waiver process is fraud—that much I'm certain of now." May 9, 2018 at 4:17 PM

". . . I've already been told in no uncertain terms which side of the equation the Executive prefers by the fact we cannot consider conditions in home country for hardship." December 26, 2017 at 4:50 AM

"The Q&As have to come out in discovery. Only then will people realize how this is one step away from [the] Soviet politburo." June 4, 2018 at 2: 41 PM

"I don't care what the rule is, but you can't keep giving out bad legal rules and getting overruled by the courts[,] its bad for applicants, and its bad for the people who have to enforce the law[.] [W]e will get blamed whatever we do while Stephen Miller gets a free pass and we should make him pass out the refusal letters, too!" January 4, 2018 at 9:48 AM

". . .  I barely can trust my Consular Affairs people on anything anymore after so many Changes to their legal interpretations of PP9645 in past three months." December 18, 2017 at 2:25 PM

"This was never about security--this was about lowering immigration numbers period."
December 18, 2017 at 2:41 PM

"they're picking on ethnic groups that are not politically active that's what's so offensive to me not the pretense of being a Muslim ban." December 18, 2017 at 2:42-2:42 PM

"that's the necessary opening to point out that the travel ban is definitely increasing civilian casualties in Yemen, especially with bombing in Taiz the other day where many of our visa applicants come from." December 29, 2017 at 10:46 PM

"the memo is bullshit enough, but that together with the Q&As show that the waiver power is a joke." December 13, 2017 at 12:36 AM

## Evidence in Support of Defendants' Family Separation, Anti-Immigrant and Anti-Muslim Policies

Donald J. Trump Campaign, Donald J. Trump Statement on Preventing Muslim Immigration (Dec. 7, 2015)……………………………………………………………………..…O

"Donald J. Trump is calling for a total and complete shutdown of Muslims entering the United States until our country's representatives can figure out what is going on. According to Pew Research, among others, there is great hatred towards Americans by large segments of the Muslim population."

Tweets from President Trump on June 5, 2017 Following Litigation Against the First Travel Ban………………………………….………………………………………….………....…..P

"The Justice Dept. should've stayed with the original Travel Ban, not the watered down, politically correct version they submitted to S.C." June 5, 2017 at 3:39 AM…………..…P1

"People, the lawyers and the courts can call it whatever they want, but I am calling it what we need and what it is, a TRAVEL BAN!" June 5, 2017 at 3:25 AM……...……..P2

Tweet from President Trump Hours After News Broke About the Mass Shooting at the Pulse Nightclub in Orlando on June 12, 2016. Gunman Omar Mateen, who Pledged Allegiance to the Islamic State, Killed 49 People and Injured 53 at the Gay Nightclub, in the Worst Mass Shooting in U.S. History……………………...…………………………………………….…………………Q

"Appreciate the congrats for being right on radical Islamic terrorism, I don't want congrats, I want toughness & vigilance. We must be smart!" June 12, 2016 at 9:43 AM.

President Donald Trump's Anti-immigrant and Anti-Muslim Statements, Newsday.com Staff, "Donald Trump Speech, Debates and Campaign Quotes," Newsday, updated Nov. 9, 2016…...R

"They're bringing drugs. They're bringing crime. They're rapists." Remarks by Donald Trump when he announced his run for the Republican nomination for president at Trump Tower Atrium in Manhattan on June 16, 2015 discussing Mexican immigrants coming to the United States.

Nahal Toosi, "Inside Stephen Miller's Hostile Takeover of Immigration Policy," Politico, Aug. 29, 2018,……………………………………………………………….…………………...….S

Draft Memo Titled "Policy Options to Respond to Border Surge of Illegal Immigration," Dated Dec. 16, 2017 with Track Changes Released by Senator Jeff Merkley Detailing the Intentions of the White House, DOJ, and State Department of Separating Migrant Children from their Families by Deporting Children without Asylum Hearings after Separating them from their Families………………………………………………………………………………..….…T

"[The] increase in prosecutions would be reported by the media and it would have a substantial deterrent effect."


## Evidence in Support of History of Untruthfulness of Defendants

Tweet by Department of Homeland Security Secretary Kirstjen Nielsen in June 2018 Directly Contradicting the Draft Memo Titled "Policy Options to Respond to Border Surge of Illegal Immigration," Dated Dec. 16, 2017, Released with Track Changes by Senator Jeff Merkley…..U

"We do not have a policy of separating families at the border. Period." June 17, 2018 at 2:52 PM.

## Evidence in Support of Untruthfulness of DOJ

North Carolina Law Review Article Detailing Misrepresentation Made by Government Lawyers in *Hirabayashi v. United States,* 320 U.S. 81 (1943)…………………….……………………….…V

Presents archival evidence demonstrating that government lawyers made a crucial misrepresentation to the United States Supreme Court in the case of *Hirabayashi v. United States,* 320 U.S. 81 (1943), the case that upheld the constitutionality of a racial curfew imposed on Japanese Americans in World War II. While the government's submissions in *Hirabayashi* maintained that the curfew was a constitutional response to the serious threat of a Japanese invasion of the West Coast, new archival findings make clear that military officials foresaw no Japanese invasion and were planning for no such thing at the time they ordered mass action against Japanese Americans. The archival

record also demonstrates that at the time that Justice Department lawyers filed their brief in *Hirabayashi* emphasizing a threatened invasion, they knew that top military officials had denied the risk of invasion in communications to Congress. The Article seeks to understand how Justice Department lawyers came to make such a misrepresentation and demonstrates that the *Hirabayashi* decision deserves to be as fully and resoundingly repudiated as the Court's better-known decision in *Korematsu v. United States,* 323 U.S. 214 (1944). Eric L. Mul*ler, Hirabayashi and the Invasion Evasion,* 88 N.C. L. Rev. 1333 (2010).

Senior District Judge Edward R. Korman Admonishing Counsel Frank Amanat for Behavior Including "Mischaracterizing" the Facts of the Case in a 2013 Case Before the Eastern District of New York………………………….…………………………………………..……………W

First, the court scolded government counsel, Mr. Frank Amanat, for "making false statements" and "mischaracterizing" the facts of the case. Tr. at 16:14-19, 34:17. The court the found that Mr. Amanat was stating to the court that documents that were "confidential" were not confidential at all. Tr. at 19:9-16. The court the found that that Mr. Amanat was engaging in a "cover up" of the government behavior. *Id.* The court then recognized Mr. Amanat's pattern and practice of using less than credible "affidavits" to support his position. Tr. at 20:8-14. The court then found Mr. Amanat had "absolutely no credibility." Tr. at 20:22-25. Further recognizing the charade that unfolded before the court, the court stated that Mr. Amanat was "just playing games." The court went on to find that Mr. Amanat was "basically lying" about the behavior of the government. The court concluded that Mr. Amanat was conducting the "charade" before the court in an effort "keep those documents secret." Tr. at 21:18; 26:2. *Tummino v. Hamburg,* 12-cv-763 (2013).

U.S. District Court for the Southern District of Texas 2016 Order Admonishing DOJ Attorneys and Ordering DOJ Attorneys to Take an Ethics Class……………….…………………….…..……X

"[The Government's] admissions make one conclusion indisputably clear: the Justice Department lawyers knew the true facts and misrepresented those facts to the citizens of the 26 Plaintiff States, their lawyers and this Court on multiple occasions. . . . [t]he Government claim[ed] that the reason its lawyers were not candid with the Court was that they either 'lost focus on the fact' or that somehow 'the fact receded in memory or awareness'. . . . This Court. . . hereby orders that any attorney employed by the Justice Department in Washington, D.C. who appears, or seeks to appear, in a court (state or federal) in any of the 26 Plaintiff States annually attend a legal ethics course." *State of Texas et al., v. United States of America et al.,* No.1:14-cv-00254 Doc. 347 (2016).

Solicitor General Noel Francisco Misstating the Core Facts about Trump's Statements of Animus Toward Muslims in Oral Arguments and Generally was Misleading about Trump's Animus in *Trump v. Hawaii. See* Exhibit G, Tr. of Oral Argument, *Trump v. Hawaii*, Case No. 17-965, at 81: 8-10.……………………….…………………………………………………………….....Y

". . . the president has made crystal clear on Sept. 25 that he had no intention of imposing the Muslim ban" he'd promised repeatedly during his presidential campaign. Francisco argued that Trump had done this, the third attempt at a travel ban issued by the President on Sept. 24 had been "cured" of any potential religious animus that might otherwise make it unconstitutional under the First Amendment, although time and again, Trump and the White House have said the opposite of what Francisco represented to the Court.

Government Immigration Attorney's Forgery Barring Immigrant from Pursuing Relief Covered up by the Board of Immigration Appeals ("BIA") and the Executive Office for Immigration Review ("EOIR")……………………………………………………………...……………….Z

The Ninth Circuit recently ruled a Bivens remedy was available to a plaintiff, when an ICE attorney intentionally submitted a forged document in an immigration proceeding to completely bar that immigrant from pursuing relief to which he was entitled. *Lanuza v. Love*, 2018 WL 3848507, at *6 (9th Cir. Aug. 14, 2018).  Interestingly, even after the government immigration attorney's forgery was discovered in 2012 and reported to the BIA, nobody at EOIR reported him to the inspector general or other oversight authority, which is why he was not terminated until his victim sued two years later "There can be no doubt that Love—who intentionally, and illegally, submitted falsified evidence in an immigration hearing—is not protected by qualified immunity. . . ." *Id.* at 29.  "The district court reasoned, 'It would be obvious to any reasonable federal official that submitting false evidence in an immigration proceeding, or in any judicial or quasi-judicial proceeding for that matter, is unlawful and unconstitutional and would undermine the integrity of such a proceeding.'" *Id.* at 29 note 10.   "At its core, this case is about a lie, and all the ways it was used, over several years, to defraud the courts.  Government attorneys are given great power and with that power comes great responsibility." *Id.* at 31.

Letter from DOJ Representative Michael H. Allen, Deputy Assistant Attorney General for Policy, Management and Planning Admitting to Error in Statistics which Implied a Link Between Terrorism in the United States and Immigration, but Refusing to Correct It……........AA

"[T]he Department agrees that the perception of objectivity of future reports could be enhanced by, where practicable, releasing underlying data with appropriate protections for national security and privacy, more thorough explanation of the context for information and clearer differentiation of the information presented. . . ."

WhatsApp Messages from State Department Employee.............................................................BB

"I know DoJ is lying on this stuff. That's why I'm pissed. They lied about your client never applying for a passport in our office even though the system record was there for them to see with very specific case notes and date stamps. Now they're lying about this stuff being classified. I haven't disclosed contents of anything to you, just existence, and I'm doing that because I know DoJ is lying." May 11, 2018 at 4:10 PM

**Evidence in Support of History of Untruthfulness by State Department**

Declarations from Chloe Dybdahl, Attorney Advisor, in the Advisory Opinions Division, Office of Legal Affairs of the Visa Office, Bureau of Consular Affairs, of the U. S. Department of State, which Misrepresents Facts……………………………………………………………....…………CC

> "It bears repeating that the Dybdahl Declaration also states that the applications of seven other Plaintiffs had been 'refused' despite the Case Status Tracker's indication that they remained in 'administrative processing.'" *Nine Iraqi Allies v. Kerry,* 168 F. Supp. 3d 268 (D.D.C. 2016), at 37 n. 15............................................................................................CC1

> "Defendants filed a letter and sworn declaration by a senior State attorney, Chloe Dybdahl; which attempted to explain that although the consular officer provided Plaintiffs-Beneficiaries with approval notices at the conclusion of each applicant's immigrant visa interview, the consular officer actually refused each Plaintiffs-Beneficiary's visa." *Alharbi v. Miller*, No. 18-cv-2435 (BMC) Doc. 42 (2018), at 1...CC2

## Evidence in Support of U.S. Embassy's Blanket Denial of Waivers Under the Presidential Proclamation

Accounts of U.S. Citizens and Beneficiaries Detailing their Experiences with Embassy Officials Regarding Waiver Denials Under the Presidential Proclamation, the Confusion Surrounding Who Has Authority to Grant Waivers, and Unreasonably Long Waiting Periods for Issuance of Visas…………………………...……………………………………....………………………………..…DD

> "On March 28, 2018, we attended the interview. The consular officer took all the documents requested and they asked us to raise our right hands and swear an oath that all the documents are original.  The consular officer said, we understand that you and your children are U..S citizens, but we cannot issue your wife a visa due to the President's Proclamation.  He said that if it wasn't for the president proclamation, I would have issued her a visa on the same day. They give us the refusal letter and now we are trapped here in Djibouti." *Declaration of Basheer Munasser*…………………………………DD1

> "On January 25, 2018, Nakhla went to her interview at the U.S. Embassy in Djibouti. The consular officer told her that everything was good, that she had everything that was needed.  But she was still refused. My wife, mother-in-law, and I were upset because they actually told her that she had everything she needed. They mentioned especially because of the ban, she had to be refused. They said that there was nothing they could do. *Declaration of Fahd Faisal Alnaggar*…………………………………………………...DD2

> "My daughters were interviewed on August 2017.  After the interview they say that they will need to wait until I got interviewed and they will issue the visas for all of us.  A few months later, the U.S. Embassy contacted me and told me that they will issue our visas.  I never heard back from them until I went for an interview on September 19, 2018.  After the consular officer interviewed me, she told me because of the President Proclamation,

she cannot issue any visas and that if it was not for that, she would have issued visas for me and my daughters. They gave me a refusal letter for me and my daughters.  Since then, we never heard anything from them again." *Declaration of Samah Algaad*.…...DD3

### Evidence Showing U.S. Embassy in Sana'a Applied False Inadmissibilities

Emails from Consular Officer Showing Khat is Not a Permissible Reason to Deny a Visa Application…………………………………………………………………………………... EE

". . . this is an obvious example of where Sana'a's khat testing program ended up depriving someone of his/her FTJ [follow to join] status.  I'm seeking permission to reinstate the petition. . . " November 22, 2015 at 2:12 AM…………………………....EE1

"We will schedule any cases without hard visa ineligibilities ahead of those cases with hard ineligibilities applied by Sana'a, with the except[ion] of 1A4 for khat that we always disregard pending the results of a new medical exam." August 7, 2016 at 3:06 AM….EE2

### Evidence Showing that Khat Usage is Legal in Yemen and Djibouti

List of Selected Jurisdictions Where Khat is Legal Including Yemen and Djibouti. "Legal Status of Khat in Selected Jurisdictions," Library of Congress, Global Legal Research Center, May 2015………………………………………………………….………………………..FF

### Evidence Showing Devastating Impacts of Fraudulent Waiver Process

**Qasem/ Ahmed Family** ………………………………………………..……........GG
Note: This family are not named Plaintiffs in this case because their visas were finally issued following unreasonable delays.  F.O.M., a 17 year old girl with a life-threatening brain tumor is now on life support due to the delay in the issuance of her visa which would have been operable and treatable had she been issued a visa sooner.  She has now died.

Declaration of Omar Moshen Moshen Al Hasani regarding his daughter's brain tumor and severe medical condition…………..……………………………………………………….…....GG1

Medical records and pictures of F.O.M., a 17 year old girl who has a life-threatening brain tumor and is now on life support.  Her family petitioned for immigrant visas and were subject to denials and unreasonable delays under the Proclamation and as a result her medical condition worsened because there were not adequate facilities to treat her in Yemen……………………….…….....GG2

Pictures of hometown destruction in Yemen………………………...……….….……...……….GG3

**Evidence in Support of Petitioners' Right to Immigrant Visas Under the Presidential Proclamation Waiver**

**Family 1: Almerdaie / Almardaei Family**

I-130 Approval Notice for Alien Relative (Petitioner Suood Almerdaie, wife, for Beneficiary husband Ali Alawi Almardaei)................................................................................HH1

Notice of Visa Ineligibility and Waiver Review Denial for Beneficiary Ali Alawi Almardaei dated January 24, 2018.....…………………………………………….….…..…....…HH2

Immigrant Visa Application Refusal Sheet for Beneficiary Ali Alawi Almardaei last updated September 18, 2018……………………………………………………………….…….…HH3

Declaration of Plaintiff Suood Almerdaei in support of her husband, Ali Alawi Almardaei's I-130 Petition and describing how difficult it has been for the family to be separated, her medical condition and stress caused by being separated from her husband, her daughter's head tumor and related medical condition, the impacts of the war in Yemen,and financial hardship……..….HH4

Medical document for Plaintiffs Suood Almerdaie and Ali Alawi Almardaei's daughter detailing surgery instructions for her head tumor………………………………………….………HH5

Pictures showing hometown destruction in Yemen……………………………………....…HH6

Western Union receipts showing money transfers from Plaintiff Suood Almerdaie's friends and family in the U.S. to Plaintiff Ali Alawi Almardaei in Djibouti……………..……….……..HH7

Letters from Plaintiffs Suood Almerdaie and Ali Alawi Almardaei's children describing how much they miss their father and the challenges of growing up without him…………..….…HH8

**Family 2: Aldaylam / Al -Gaad Family**

I-130 Approval Notice for Alien Relative (Petitioner Amr Fadhl Aldaylam, husband, for Beneficiary wife Samah Musaed Algaad)...................................................................................II1

Notice of Visa Ineligibility and Waiver Review Eligibility for Samah Musaed Algaad after previous approval dated September 19, 2018………………………….…………………......II2

Immigrant Visa Application Administrative Processing Sheet for Samah Musaed Algaad last updated January 8, 2019…………………………………………………………………………II3

Declaration of Plaintiff Amr Fadhl Aldaylam in support of his daughters, and his wife Samah and describing hardship from the war in Yemen, their difficulties traveling to Djibouti, the financial hardship of living in Djibouti, and detailing his daughter's medical condition of having extra skin on her nose that makes it difficult for her to breathe……………..……….……..II4

Declaration of Plaintiff Samah Musaed Algaad describing hardship and destruction from the war in Yemen, their difficulties traveling to Djibouti, the financial hardship of living in Djibouti, and detailing her daughter's medical condition of having extra skin on her nose that makes it difficult for her to breathe sleep and the need to seek medical attention in the U.S………..………...…II5

Medical report detailing the medical condition of Plaintiff Samah Musaed Algaad including persistent nausea and constipation due to stress and detailing her prescriptions………..……..II6

Western Union receipts showing money transfers from Plaintiff Amr Fadhl Aldaylam in the U.S. to his family in Yemen and Djibouti……………………………………………………......II7

## Family 3: Kaid / Saleh Family

Notice of Visa Ineligibility and waiver review eligibility for Beneficiary Ali Saleh and his derivative children dated October 9, 2018.........……………………………………..…..…..JJ1

Immigrant Visa Application Administrative Processing Sheet for Beneficiary Ali Saleh and his derivative children last updated August 12, 2018....……………………................................JJ2

Immigrant Visa Application Administrative Processing Sheet for Beneficiary Amani Ali Abdo Saleh last updated December 4, 2018....………..……..…………….....................................JJ3

Declaration of Plaintiff Abdo Ali Saleh in support of his I-130 Petition for his beneficiary son and his derivative wife and discussing financial hardship, the hardship of being separated from his family, and medical issues including Plaintiff Abdo Ali Saleh's previous stroke………......JJ4

Receipts showing money transfers from Plaintiff Abdo Ali Saleh and his friends and family in the U.S. to his family in Djibouti………………………………………………..……...JJ5

## Family 4: Almansouri / Alhanash Family

I-130 Approval Notice for Alien Relative (Petitioner Jamal Almansouri, husband, for Beneficiary wife Nabila Alhanash)..........................................................................................KK1

Notice of Visa Ineligibility and Waiver Denial for Nabila Alhanash after previous approval dated January 30, 2018…………………………………………………….……………….… KK2

Immigrant Visa Application Immigrant Visa Processing Sheet for Nabila Alhanash last updated November 19, 2018……………....……………..…………………….………….………KK3

Declaration of Jamal Mohamed Almansouri in support of his I-130 Petition for his wife, Nabila Mohamed Alhanash and describing his hardship including family separation, his heart condition,

and the difficulty of raising his young children alone with his heart condition and without his wife…………….…………………….…….…..…………..……………………….…..KK4

Letter from Dr. Alexander J. Slotwiner detailing Jamal Mohamed Almansouri's recent heart attack and condition, and stating that he would benefit greatly from long term assistance from his wife and advocating for the approval of her visa…………………………………………...KK5

Medical report detailing Nabila Alhanash's cysts and medical condition…………………...KK6

Pictures of hometown destruction in Yemen………………...……..……………………….KK7

Money transfers from Plaintiff Jamal Almansouri in the US to his wife, Plaintiff Nabila Alhanash in Djibouti……………………………………………………………………………..KK8

## Family 5: Saleh / Algudari Family

Immigrant Visa Application Issued Sheet for Beneficiary Faisal Algudari  showing refusal of visas for derivatives updated September 27, 2018……………..……………………………LL1

Statement of Relationship with Petitioner signed by Ali M Saleh submitting an I-1864 Affidavit of support……………………………………………………………………..……......LL2

Declaration of Petitioner Arwa Saleh supporting her husband's I-130 Petition and the process of the petition, describing her life before the war in Yemen, her life during the war including her house being destroyed by the bomb, her travel to the U.S., her husband's journey to Djibouti, and her husband's illness and paralysis...……………………….................................................LL3

Discharge papers, echocardiography reports, and sonograms of beneficiary Faisal Algudari…………………………………………………………………………………..LL4

## Family 6: Rajeh Family

Notice of I-130 Approval for Alien Relative dated May 10, 2011 (Petitioner Tawfik Rajeh, father, for Beneficiary child Siham Rajeh)............................................................................MM1

Notice of I-130 Approval for Alien Relative dated May 10, 2011 with Receipt Notice dated February 22, 2010 (Petitioner Tawfik Rajeh, father, for Beneficiary child A.R.)....................MM2

Notice of I-130 Approval for Alien Relative dated May 10, 2011 with Receipt Notice dated February 22, 2010 (Petitioner Tawfik Rajeh, father, for Beneficiary child Atef Rajeh).........MM3

Notice of Visa Ineligibility and Waiver Review Denial for Siham Rajeh after previous approval dated January 7, 2018………………….…………………………………...…………….…..MM4

Notice of Visa Ineligibility and Waiver Review Denial for A.R. after previous approval dated January 7, 2018……………….…………………………………...………………………....MM5

Notice of Visa Ineligibility and Waiver Review Denial for Atef Rajeh after previous approval dated January 7, 2018……………….…………………………..…………………….........MM6

Immigrant Visa Application Administrative Processing Sheet for Siham Rajeh last updated September 18, 2018……...……….…..……….…..……………………………...........MM7

Immigrant Visa Application Administrative Processing Sheet for A.R. last updated September 18, 2018……...……….…..……….…..……………………………...……...MM8

Immigrant Visa Application Administrative Processing Sheet for Atef Rajeh last updated September 18, 2018……...……….…..……………….………………………..………....MM9

Declaration of Tawfik Rajeh in support of her children, Siham Rajeh, A.R., and Atef Rajeh detailing the emotional hardship of having her family separated for 10 years, financial hardship of supporting her children in Yemen and Djibouti, and the struggles of her children as they traveled to Djibouti for their interview…………………………………...…………………....MM10

Picture of family's destroyed home in Yemen …………………………………...…...MM11

Receipts showing money transfers from Tawfik Rajeh in the U.S. to his family in Yemen..MM12

**Family 7: Saleh / Qasem Family**

I-130 Approval Notice for Alien Relative (Petitioner Wadhah Mohammed Saleh, father, for Beneficiary child H.W.M.Q.)........................................................................................................NN1

I-130 Approval Notice for Alien Relative (Petitioner Wadhah Mohammed Saleh, father, for Beneficiary child N.W.M.Q.)........................................................................................................NN2

I-130 Approval Notice for Alien Relative (Petitioner Wadhah Mohammed Saleh, father, for Beneficiary child H.W.M.Q. (2))............................................................................................NN3

Notice of Visa Ineligibility and Waiver Denial for H.W.M.Q. after previous approval dated April 10, 2018...…………………………………………………...……………………….....NN4

Notice of Visa Ineligibility and Waiver Denial for N.W.M.Q. after previous approval dated April 10, 2018…………….…………………………….………………………………..NN5

Notice of Visa Ineligibility and Waiver Denial for H.W.M.Q. (2) after previous approval dated April 10, 2018 ………….…………………………………………………………………..NN6

Notice of Immigrant Visa Application Refusal Sheet for H.W.M.Q. last updated October 3, 2018………..…………………………………………………………………………...NN7

Notice of Immigrant Visa Application Refusal Sheet for N.W.M.Q. last updated November 5, 2018…………………………………………………………….………………...NN8

Notice of Immigrant Visa Application Refusal Sheet for H.W.M.Q. (2) last updated December 20, 2018………………………………………………………………………..…NN9

Declaration of Plaintiff Wadah Mohammed Saleh in support of his I-130 Petitions for his children, H.W.M.Q., N.W.M.Q., and H.W.M.Q. (2), and discussing the impacts of the war in Yemen, and their financial hardship…………………………………………………....NN10

Letter from Dr. Zhihong Wang detailing Plaintiff Wadah Mohammed Saleh's son's life-threatening cancer and the need for the family to be reunited………………..………...NN11

Pictures of Plaintiff Wadah Mohammed Saleh's young son with tubes in his stomach detailing his cancer and medical condition………………………………………………………NN12

Pictures of destruction of hometown in Yemen…………………………..………………………NN13

Western Union receipts showing transfer of money from Plaintiff Wadah Mohammed Saleh in the United States to his family in Djibouti……………………………………………...…NN14

## Family 8: Mohsin / Yahya Family

I-130 Approval Notice for Alien Relative (Petitioner Abdlrazak Mohsin, husband, for Beneficiary wife Bahia Mohammed Ahmed Yahya).................................................................OO1

Notice of Intent to Deny Petition for Alien Relative Form I-130 on behalf of Bahia Yahya dated May 8, 2017…...…………………………………………………………………....OO2

Notice of Visa Ineligibility and Waiver Review Eligibility for Bahia Mohammed Ahmed Yahya after previous approval…..………………...……………..…………………………...…OO3

Immigrant Visa Application Administrative Processing Sheet for Bahia Mohammed Ahmed Yahya last updated December 26, 2018…………..…………………………….…….…OO4

Declaration of Adnan Mohsin in support of Abdlrazak Mohsin's I-130 Petition for Bahia Mohamed Yahya and discussing impacts of war in Yemen, financial hardships, and impacts of family separation…………...…….……………………………………………....OO5

Letter from medical professional, Patricia Kirst, attesting to Plaintiff Abdlrazak Mohsin's medical condition and advocating for his wife, Bahia  Mohammed Ahmed Yahya, to be allowed

to enter the United States to live with her family permanently to help care for her sick 89 year old husband and 8 children……………………………………………...…….....……...OO6

Letter from Dr. Brandon Brownell, attesting to Plaintiff Abdlrazak Mohsin's poor medical condition and advocating for his wife, Bahia Mohammed Ahmed Yahya, to be allowed to enter the United States to live with her family permanently to help care for her sick  husband…....OO7

Medical report for Plaintiff Bahia Mohammed Ahmed Yahya regarding medical condition and the need for treatment outside of Djibouti……………...……………….……………...…...OO8

Pictures of hometown destruction in Yemen……………………...……….………………..OO9

Money transfers from Plaintiff Abdlrazak Mohsin in the US to his wife, Plaintiff Bahia Mohammed Ahmed Yahya in Djibouti………………...……………….…..…………..OO10


**Family 9: Munasser / Saleh Family**

I-130 Approval Notice for Alien Relative (Petitioner Basheer Munassar Munasser, husband, for Beneficiary wife Amal Saleh Saleh)..........................................................................................PP1

Notice of Visa Ineligibility and Waiver Review Eligibility for Amal Saleh Saleh after previous approval ……………………………………………………………………...…...PP2

Notice of Visa Ineligibility and Waiver Denial for Amal Saleh Saleh after previous approval ……………………………………………...……………………………...PP3

Immigrant Visa Application Administrative Processing Sheet for Amal Saleh Saleh last updated December 20, 2018……………………….…………………………...………….....…...PP4

Declaration of Plaintiff Basheer Munasser in support of support of his I-130 Petition for Amal Saleh Saleh and discussing his wife's poor health and the need for his family to be together...PP5

Letter from Dr. Christiane Osman Glele discussing Plaintiff Amal Saleh Saleh's medical condition………………………………………………………………….……………......PP6


**Family 10: Elburati / Mohsin Family**

Notice of Visa Ineligibility and Waiver Review Eligibility for Kubla Kassim Mohsin dated May 24, 2018………………………………………………………………........QQ1

Immigrant Visa Application Administrative Processing Sheet for Kubla Kassim Mohsin last updated August 11, 2018…………………...………………….……………….…....QQ2

Declaration of Amin Elburati, in support of his I-130 Petition for his wife Kubla Mohsin, and his medical hardship……………………………………………..………………………QQ3

Letter of Appeal for Kubla Moshin by Amin Elburati…………………………….……..QQ4

Letter from UI Health Department of Orthopedics outlining need for 24 Hour Care for Amin Elburati……………………………………………………………………………..…..QQ5

Letter from Prime Care Physicians outlining need for 24 Hour Caregiver for Amin Elburati dated April 13, 2018…...........................................................................………..QQ6

Letter from University of Illinois Hospital & Health Sciences System Health Social Work supporting Amin Elburati's Petition for his wife's visa and outlining his need of assistance dated September 21, 2018.....................................................................................................QQ7

## Family 11: Al-Nomair Family

I-130 Approval Notice for Alien Relative (Petitioner Mar A. Kaid for Beneficiary Hilal Abdullah)......................................................................................................................RR1

I-130 Approval Notice for Alien Relative (Petitioner Mar A. Kaid for Beneficiary Emtethal F. Abdullah)......................................................................................................................RR2

I-130 Approval Notice for Alien Relative (Petitioner Mar A. Kaid for Beneficiary Azhar Abdullah)......................................................................................................................RR3

Notice of Visa Ineligibility and Waiver Denial for Saqr Faiz Ali Al-Nomair dated February 28, 2018…………………………………………………………………….…….…...RR4

Notice of Visa Ineligibility and Waiver Denial for Hilal Faiz Ali Al-Nomair after previous approval dated February 28, 2018...……………………………………………………....RR5

Notice of Visa Ineligibility and Waiver Denial for Emtethal Faiz Ali Al-Nomair after previous approval dated February 28, 2018……...…………………….…………………………RR6

Notice of Visa Ineligibility and Waiver Review Eligibility for Emtethal Faiz Ali Al-Nomair dated May 30, 2018………...…………………………………………………………RR7

Immigrant Visa Application Administrative Processing Sheet for Saqr Faiz Ali Al-Nomair last updated December 31, 2018……...…………………………………………………RR8

Immigrant Visa Application Administrative Processing Sheet for Emtethal Faiz Ali Al-Nomair last updated January 2, 2019…………………………………………………………..RR9

Immigrant Visa Application Administrative Processing Sheet for Hilal Faiz Ali Al-Nomair last updated December 31, 2018………..……………………………………………………...RR10

Declaration of Faiz Al-Nomair in support of his I-130 Petition for his children Hilal Faiz Ali Al-Nomair, Emtethal Faiz Ali Al-Nomair and Saqr Faiz Ali A-Nomair, their interview process at the U.S. Embassy in Djibouti, their hardship, and his medical hardship…………………..……RR11

Medical letter on behalf of Plaintiff Faiz Ali Al-Nomair by Dr. Lei Charlton detailing his chronic asthma and hyperlipidemia……………………..………………………………………RR12

Medical letter on behalf of Iftekar Al Nomeer by Dr. Lei Charlton detailing her diabetes, mellitus, and shoulder and neck muscle pain…………………...…………………………...RR13

Moneygram transfers showing money sent from Plaintiff Faiz Ali Al-Nomair in the United States to Plaintiff Hilal Ali Al-Nomair in Djibouti………..…………………….…..……...RR14

**Family 12: Ahmed / Al Yafai Family**

I-130 Approval Notice for Alien Relative (Petitioner Norh A. Ahmed, wife, for Beneficiary husband Hussein Al Yafai).......................................................................................................SS1

Notice of Visa Ineligibility and and Waiver Denial for Hussein Al Yafai dated March 5, 2018………………………………………………………………………………………SS2

Immigrant Visa Administrative Processing Sheet for Plaintiff-Beneficiary Hussein Al Yafai Last updated December 4, 2018……………………………………………………………...SS3

Declaration of Plaintiff Hussein Al Yafai detailing hardships from the war in Yemen, his wife's tragic accident in Yemen that broke her spine and caused her to miscarry their baby, the inadequate medical care she received in Yemen, and his difficulties in getting an immigrant visa…………………………………………………………………………………...SS4

Medical report on behalf of Norh Ahmed by Dr. Hefdulla Abdullwahab and Dr. Mohammed Homeed detailing her back pain …………………………………………………………SS5

Medical report on behalf of Norh Ahmed by Northwell Health detailing her recent spinal surgery…………………………………………………………………………………SS6

Pictures of hometown destruction in Yemen…………………………………………...SS7

Receipts showing money transfers to Plaintiff in Djibouti……………………………….SS8

**Family 13: Alnaggar / Saibaan Family**

I-130 Approval Notice for Alien Relative (Petitioner Shathia Abdo Alnaggar, daughter, for Beneficiary mother Nakhla Saleh Hussein Saibaan)....................................................................TT1

Notice of Visa Ineligibility and Waiver Denial for Nakhla Saleh Hussein Saibaan after previous approval dated January 25, 2018............................................................................................TT2

Notice of Visa Ineligibility and Waiver Review Eligibility for Nakhla Saleh Hussein Saibaan………………………………………………………………………………………..TT3

Immigrant Visa Application Administrative Processing Sheet for Nakhla Saleh Hussein Saibaan last updated August 23, 2018……………….…………………………………………………TT4

Declaration of Fahd Faisal Alnaggar in support of his mother-in-law Nakhla Saleh Hussein Saibaan's I-130 Petition and discussing his mother-in-law's medical condition, his family's financial hardship, and his wife's emotional stress and mental health issues caused by his mother's visa delay………………………………………………….…………………………...TT5

Pictures showing Nakhla Saleh Hussein Saibaan's cysts of her ovaries along with a note from her doctor in Djibouti describing her ovarian cysts…………………….…….………………………TT6

Pictures of Nakhla Saleh Hussein Saibaan's prescriptions for her medical conditions………..TT7

Pictures of Shathia Abdo Alnaggar's young son in the hospital in the United States detailing his medical issues……………………………………………………………………………………TT8

Receipts showing money transfers from Plaintiff Shathia Abdo Alnaggar in the United states to her mother Nakhla Saleh Hussein Saibaan in Djibouti………………………………………..TT9

**Family 14: Abashaar / Hauter Family**

Notice of Visa Ineligibility and Waiver Review Denial for Beneficiary Abdulrakib Abashaar dated December 18, 2018...………………………………………….………...…………..UU1

Immigrant Visa Application Administrative Processing Sheet for Beneficiary Abdulrakib Abashaar last updated December 31, 2018....…………………….......................................UU2

Declaration of Petitioner Ahlam Hauter in support of her Beneficiary husband, Abdurakib Abashaar detailing the emotional hardship of being separated from his family, trauma he endured as he traveled to Djibouti, and his struggle to survive in Yemen………………..………...UU3

**Family 15: Saeed / Nagi Family**

I-130 Approval Notice for Alien Relative (Petitioner Rasam Obaid Saeed, wife, for Beneficiary husband Emad Nasr Abdulrab Nagi).........................................................................................VV1

Notice of Visa Ineligibility and Waiver Eligibility for Emad Nasr Abdulrab Nagi after previous approval dated July 24, 2018...……………………………………………….…………..VV2

Immigrant Visa Application Administrative Processing Sheet for Emad Nasr Abdulrab Nagi last updated October 11, 2018……………………...……………….…………………….....VV3

Declaration of Plaintiff Rasam Obaid Saeed in support of her I-130 Petition for her husband Emad Nasr Abdulrab Nagi and discussing the impacts of the war in Yemen, the hardship of giving birth to her son without her husband, the hardship of raising a child in war-torn Yemen, and her son's medical issues including breathing issues and asthma from the air in Yemen…VV4

Pictures of hometown destruction in Yemen…………………………………….……...……….VV5

Western Union receipts showing money transfers from Plaintiff Rasam Obaid Saeed's family in the U.S. to Plaintiff Rasam Obaid Saeed and her family in Yemen………………..………VV6


**Family 16: Mohamed / Sharoh Family**

Notice of Visa Ineligibility and and Waiver Denial for Gaithah Sharoh dated November 1, 2018……………………………………………………………….………………WW1

Immigrant Visa Administrative Processing Sheet for Gaithah Sharoh last updated December 19, 2018……………………………………………………………….……………....WW2

Declaration of Plaintiff Mansour Mohamed detailing his difficulty in getting his wife's immigrant visa approved and their hardships including family separation, financial hardships, and his medical issues including his mobility issues due to his knee problems which cause him to walk with a cane and his diabetes……………………………………………….…...WW3

Medical reports and Pictures detailing Plaintiff Mansour Mohamed's knee pain and mobility issues……………………………………………………………..…………………..WW4

Medical invoices for Plaintiff Mansour Mohamed's medical conditions and procedures..…WW5


**Family 17: Alharbi / Taher Family**

I-130 Approval Notice for Alien Relative (Petitioner Majdy Ahmed Alharbi, husband, for Beneficiary wife Anhar Abdullah Taher)..................................................................................XX1

Notice of Visa Ineligibility and Waiver Review Eligibility for Anhar Abdullah Taher after previous approval dated August 15, 2018……………..……………………………………XX2

Immigrant Visa Application Administrative Processing Sheet for Anhar Abdullah Taher last updated October 18, 2018…………………………………………………………………..XX3

Declaration of Plaintiff Majdy Ahmed Alharbi in support of his wife, Plaintiff Anhar Abdullah Taher and discussing the impacts of the war in Yemen, his daughter's disability, and the family's emotional and financial hardships…………………………………………………………..XX4

Medical records detailing Plaintiffs Majdy Ahmed Alharbi and Anhar Abdullah Taher's daughter's physical disability and medical conditions………..…………………………….XX5

Medical report and orthopedic letter from Dr. Craig E. Blum dated January 29, 2018 detailing Plaintiffs Majdy Ahmed Alharbi and Anhar Abdullah Taher's daughter's physical disability and medical conditions…………………………………….……………………………...XX6

Medical report and orthopedic letter from Dr. Nicholas Valente dated January 29, 2018 detailing Plaintiffs Majdy Ahmed Alharbi and Anhar Abdullah Taher's daughter's physical disability and medical conditions…………………………………………………………………….XX7

Medical report and orthopedic letter from Dr. David C. Okonkwo dated May 7, 2018 detailing Plaintiffs Majdy Ahmed Alharbi and Anhar Abdullah Taher's daughter's physical disability and medical conditions……………………………………………….…………....XX8

Medical report and orthopedic letter from Dr. Ross F. Cole dated July 30, 2018 detailing Plaintiffs Majdy Ahmed Alharbi and Anhar Abdullah Taher's daughter's physical disability and medical conditions…………………………………………………………………….XX9

Pictures of hometown destruction in Yemen……………..……..……………………..XX10

Receipts showing money transfers from Plaintiff Majdy Ahmed Alhari in the United States to his family in Yemen……………………………………………………………………...XX11

**Family 18: Ali Family**

I-130 Approval Notice for Alien Relative (Petitioner Abdelbaset Ali, father, for Beneficiary child Jamilah Ali)..........................................................................................................YY1

Immigrant Visa Application Processing Sheet for Jamilah Ali…………………….............YY2

Declaration of Abdelbaset Ali on behalf of Beneficiary Jamilah Ali's hardship in Djibouti and Yemen, his medical problems, his wife's medical problems including his chronic lymphocytic leukemia which requires chemotherapy, and the family's emotional hardships as a result of being separated………………………………………………......................................YY3

Letter from Dr. Marcy Canary detailing Plaintiff Abdelbaset Ali's chronic lymphocytic leukemia which requires chemotherapy and care that he could not receive in Yemen……………..……YY4

Receipts showing money transfers from family in the United States to help support Plaintiff in Djibouti……………………………………………………………………………………..YY5


**Family 19: Algazali Family**

Notice of Visa Ineligibility and Waiver Review Denial for Beneficiary Latfiya Algazali and derivatives dated June 3, 2018……………………………………………..…..........ZZ1

Immigrant Visa Application Issued Sheet for Beneficiary Latifya Algazali and Immigrant Visa Application Administrative Processing Sheet for derivatives last updated January 8, 2019………………………………………………………………………..…..ZZ2

Declaration Plaintiff Latifya Algazali describing her hardships including her interview at the U.S. Embassy in Djibouti,, describing the stress and difficulties of being separated from her family, and her health issues including high blood pressure, diabetes, anxiety and depression……………………………………………………………………...ZZ3

Medical history of Plaintiff Esmayl Algazali detailing his chronic medical problems including dementia, hyperlipidemia, hypertension, diabetes, and prostate cancer with an extensive list of medications…………………………………………………………………ZZ4

Medical Certificate of Dr. Mohamed Abdallah Mohamed on behalf of derivative Abdo Hassan Ali Al Hijari declaring present heart disease and need for special attention and pictures of Abdo Hassan Ali Al Hijari's back dated November 26, 2018……………………..…….…..……...…ZZ5

Picture of hometown destruction in Yemen………………………………….………...ZZ6


**Family 20: Abdullah / Saleh Family**

I-130 Approval Notice for Alien Relative (Petitioner Fayzah Abdullah, wife, for Beneficiary husband Ghyath Saleh)...............................................................................................................AAA1

Notice of Visa Ineligibility and Waiver Review Eligibility for Ghyath Saleh after previous approval dated July 8, 2018……………………..……………………………….......AAA2

Immigrant Visa Application Administrative Processing Sheet for Ghyath Saleh last updated December 27, 2018……...……………………..……………………………………AAA3

Declaration of Fayzah Abdullah in support of her husband, Ghyath Saleh detailing the financial hardship of traveling to and living in Djibouti for Ghyath's interview, emotional hardship of

being separated from her husband, and struggles of raising a daughter in war-torn Yemen………………………………………………………………….………AAA4

Declaration of Ghyath Saleh in support of himself detailing his struggles and frustrations applying for a visa, physical and financial hardships of living in Djibouti, struggle to survive the civil war in Yemen, and sadness of missing the birth of his daughter………………………AAA5

Medical records for Fayzah Abdullah's father, Ahmed Abdullah, that lists his medications and states that he is suffering from back pain, shoulder pain, diabetes, and major depressive disorders and that he is considered totally and permanently disabled….……………………….…..…AAA6

Medical records for Ghyath Saleh's father, Abdulraman Abdullah, that states that he is suffering from joint pain and bilateral knee pain………………………………………………………AAA7

Western Union receipts showing money transfers from Ghyath Saleh to his wife Fayah Abdullah in Yemen…….………………………………………………………...………………….AAA8

### Family 21: Kassem / Saleh Family

Notice of Visa Ineligibility and Waiver Review Eligibility for Wafa Saleh with email from the U.S. Embassy in Djibouti dated October 17, 2018………...………...………………………BBB1

Immigrant Visa Application Administrative Processing Sheet for Wafa Saleh last updated October 23, 2018....……….……….………………………………....…….............................BBB2

Declaration of Plaintiff Wafa Saleh in support of her citizenship and stating her hardships including the loss of her husband, financial hardship living in Djibouti, and the stress of taking care of four children by herself……………………………………………………………BBB3

### Family 22: Alghaithy Family

Notice of I-130 Approval for Alien Relative with Transfer Notice dated August 30, 2012 (Petitioner Nada Alghaithy, mother, for Beneficiary child B.H.A.)………………….………..CCC1

Notice of I-130 Approval for Alien Relative with Receipt Notice dated August 28, 2012 (Petitioner Nada Alghaithy, mother, for Beneficiary child S.H.A.) …………….…...……CCC2

Notice of I-130 Approval for Alien Relative with Transfer Notice dated August 30, 2012 (Petitioner Nada Alghaithy, mother, for Beneficiary child G.H.A.)…………………………CCC3

Immigrant Visa Application Administrative Processing Sheet for B.H.A. last updated November 19, 2018……..………...……….……...…………….………………………….................CCC4

Immigrant Visa Application Administrative Processing Sheet for S.H.A. last updated December 13, 2018…...……….........…………………………….………………….................CCC5

Immigrant Visa Application Administrative Processing Sheet for G.H.A. last updated December 18, 2018…...……….....…………………...……….…………………………….................CCC6

Declaration of Nada Alghaithy in support of her children, B.H.A., S.H.A., and G.H.A. and detailing the emotional hardship of having her family separated and the constant traveling she has had to endure as her family is navigating the immigration process .................................CCC7

## Family 23: Sharif / Al Harmi Family

I-130 Approval Notice for Alien Relative (Petitioner Saeed Sharif, husband, for Beneficiary wife Saba Al Hamri)........................................................................................................................DDD1

I-130 Approval Notice for Alien Relative (Petitioner Saeed Sharif, father, for Beneficiary child N.S.)....................................................................................................................................DDD2

I-130 Approval Notice for Alien Relative (Petitioner Saeed Sharif, father, for Beneficiary child F.S.)....................................................................................................................................DDD3

I-130 Approval Notice for Alien Relative (Petitioner Saeed Sharif, father, for Beneficiary child A.S.)....................................................................................................................................DDD4

Notice of Visa Ineligibility and Waiver Denial for Saba Al Hamri after previous approval dated January 4, 2018……………………...………………….....…………………………........DDD5

Notice of Visa Ineligibility and Waiver Denial for N.S. after previous approval dated January 4, 2018………………………………………………………...………………………........DDD6

Notice of Visa Ineligibility and Waiver Denial for F.S.after previous approval dated January 4, 2018…………………………………………………...……………………………DDD7

Notice of Visa Ineligibility and Waiver Denial for A.S. after previous approval dated January 4, 2018……………...…………………………………………...…………………………........DDD8

Immigrant Visa Application Administrative Processing Sheet for Saba Al Hamri last updated January 7, 2019…...……….…...………….…….…………………………………….……DDD9

Immigrant Visa Application Administrative Processing Sheet for N.S. last updated January 7, 2019…...……….…...………….…….…………………………………….....................DDD10

Immigrant Visa Application Administrative Processing Sheet for F.S. last updated January 7, 2019…...……….…...………….…….…………………………………….....................DDD11

Immigrant Visa Application Administrative Processing Sheet for A.S. last updated January 7, 2019……..………...……….……...…………………………………….....................DDD12

Declaration of Saeed Sharif in support of his wife and children's I-130 Petitions and the hardship of being separated from his family, the impacts of the war in Yemen, the financial hardships the family is facing, and the stress he is suffering as a result of the visa delays and separation from his family…………………………………………………………………………..DDD13

Pictures of hometown destruction in Yemen……………………………………………DDD14

Receipt showing money transfers from Plaintiff Saeed Sharif in the U.S. to his wife and family in Djibouti…………………………………………………………………………..DDD15

## Family 24: Al-Saidi / Alkuaif Family

I-130 Receipt Notice for Alien Relative (Petitioner Tawfik Al-Saidi, husband, for Beneficiary wife Etidal Alkuaif)...................................................................................................EEE1

Notice of Visa Ineligibility and Waiver Review Denial for Etidal Alkuaif after previous approval…………………………………………………………………………....EEE2

Immigrant Visa Application Administrative Processing Sheet for Etidal Alkuaif and derivatives last updated November 19, 2018……...…………………….……………………………EEE3

Declaration of Tawfik Al-Saidi in support of his wife, Etidal Alkuaif, detailing the emotional hardship of being separated from his family, financial hardship of supporting his family in Djibouti and Yemen, and Etidal Alkuaif's medical issues…………………………………...EEE4

Medical records for Etidal Alkuaif stating that her gallbladder was surgically removed…....EEE5

Pictures of hometown destruction in Yemen…………………………………………EEE6

Receipts showing money transfers from Tawfik Al-Saidi to Etidal Alkuaif and their family in Yemen and Djibouti…………………………………………….…………………………..EEE7

## Family 25: Al-Wajih / Al Malki Family

I-130 Approval Notice for Alien Relative (Petitioner Mohamed Al-Wajih, father, for Beneficiary child Abdulrahman Almalki)...................................................................................FFF1

I-130 Approval Notice for Alien Relative (Petitioner Mohamed Al-Waljih, father, for Beneficiary child Kawkab Almalki)...................................................................................FFF2

Visa Approval Notice for Asma Alquhaif…………………………………..…..FFF3

Notice of Visa Ineligibility and Waiver Denial for Kawkab Almalki after previous approval dated February 22, 2018…………...…………………………...……………………………...FFF4

Immigrant Visa Application Administrative Processing Sheet for Abdulraman Almalki and derivative last updated December 18, 2018....………..………..…………….....................FFF5

Immigrant Visa Application Administrative Processing Sheet for Kawkab Almalki last updated December 26, 2018……...……….…………….…….…………………………........................FFF6

Immigrant Visa Application Administrative Processing Sheet for Asma Al-Quhaif last updated November 25, 2018....………..…………...…………....................................................FFF7

Declaration of Mohamed Al-Wajih in support of his wife, Assma Adelhameed Al-Quhaif and detailing his experience at the U.S. Embassy in Djibouti and the abusive treatment him and his wife suffered at the hands of embassy officials………………………………….……………...FFF8

Medical records for Kawkab Mohammed Saleh Al-Wajih verifying her pregnancy dated October 30, 2018……………………………………………………………………………...….FFF9

Pictures of hometown destruction in Yemen……………………………………….…….FFF10

Western Union receipts from Mohamed Al-Wajih's family in the U.S. to his family in Djibouti………………………………………...………………………….……….…..FFF11

**Family 26: Aldafri / Al-Okam Family**

I-130 Approval Notice for Alien Relative (Petitioner Mohamad Taher Aldafri, husband, for Beneficiary wife Amal Esmail Y. Al-Okam).......................................................................GGG1

I-130 Approval Notice for Alien Relative (Petitioner Mohamad Taher Aldafri, father, for Beneficiary child A.A.)...............................................................................................GGG2

I-130 Approval Notice for Alien Relative (Petitioner Mohamad Taher Aldafri, father, for Beneficiary child S.A.)...............................................................................................GGG3

Decision Letter to Mohamad T. Aldafri stating that the I-130 Petition for Alien Relative for beneficiary S.A. was denied on the basis of petitioner must establish a bona fide relationship to certain alien relatives who wish to immigrate to the United States and establish the appropriate legal status (i.e., U.S. citizenship or lawful permanent residence) to submit a petition on the beneficiary's behalf. Statements of facts and analysis including grounds for denial dated August 17, 2017…………………………………………………………………………...…GGG4

Service Motion to Reopen Letter to Mohamad T. Aldafri stating the three I-130 petitions that were filed on September 21, 2015 are considered pending………………………………….GGG5

Notice of Visa Ineligibility and waiver review eligibility for Beneficiary Amal Esmail Y. Al-Okam dated July 22, 2018…………………………………………..…………………………….GGG6

Immigrant Visa Application Administrative Processing Sheet for Beneficiary Amal Esmail Y. Al-Okam last updated November 12, 2018…….……………………………………….....GGG7

Immigrant Visa Application Refusal Sheet for Beneficiary A.A. last updated October 14, 2018……………………………………………………………………………………….GGG8

Immigrant Visa Application Refusal Sheet for Beneficiary S.A. last updated October 14, 2018……………………………………………………………………………………….GGG9

Declaration of Plaintiff Amal Esmail Al-Okam in support of herself, chronicalizing her relationship with her husband, her experience in Yemen during the war that including giving birth to her son in a war zone, her father and son both getting injured, and her experience with the U.S. Embassy in Djibouti…………………………………..……………………………….…GGG10

Letter from Presence Saints Mary and Elizabeth Medical Center on behalf of Mohamad Taher Aldafri's admission to the medical center on July 6, 2018 signed by Leah S.S. (LCSW) dated July 10, 2018………….……………………………………………………………….……...GGG11

Medical history record and psychiatric evaluations from Advocate Illinois Masonic Medical Center and Yemen Republic Mental Health Hospital outlying Plaintiff Mohamad Tahar Aldafri's diagnoses of schizophrenia, depression and list of medications…………………………...GGG12

Pictures of hometown destruction in Yemen…………………………………………GGG13


## Family 27: Al Ghazali Family

I-130 Approval Notice for Alien Relative (Petitioner Mutei Al Ghazali, father, for Beneficiary child M.M.N.A.)...................................................................................................................HHH1

Notice of Visa Ineligibility and waiver review eligibility for Beneficiary M.M.N.A. dated October 2, 2018………………………………………………………………………...HHH2

Immigrant Visa Application Administrative Processing Sheet for Beneficiary M.M.N.A. last updated December 20, 2018………………………………………………………………HHH3


## Family 28: Saeed Family

Immigrant Visa Application Administrative Processing Sheet for Geab Saeed last updated December 11, 2018…..……………………………………….………………..…..III1

Declaration of Petitioner Abdasalam Saeed in support of his Beneficiary son, Geab Saeed detailing the emotional hardship of being separated from his family and recent hospitalization after sustaining an injury in Yemen………………………………………...…………………..III2

Receipts showing money transfers from Petitioner Abdasalam Saeed and friends to Geab Saeed in Egypt…………………………………………………………………………………...…III3

**Family 29: Zabara / Al Nehmi Family**

Immigrant Visa Approval Notice from the U.S. Embassy in Djibouti for Beneficiary Waled Mohammed Al Nehmi……………………………………………………………………JJJ1

Immigrant Visa Interview Letter for Beneficiary Waled Mohammed Al Nehmi dated September 1, 2017………………………………………………………………………………....JJJ2

Notice of Visa Ineligibility and and Waiver Denial for Plaintiff-Beneficiary Waled Mohammed Al Nehmi dated January 24, 2018………………………………………………………...JJJ3

Immigrant Visa Administrative Processing Sheet for Plaintiff-Beneficiary Waled Mohammed Al Nehmi last updated July 25, 2018………………………………………...……………………JJJ4

Declaration of Mohammed Zabara on behalf of Plaintiff Waled Al Nehmi describing his sister and brother-in-law's hardships as a result of the war in Yemen, the challenges of moving and adjusting to life in war-torn Yemen, financial hardship, and medical issues of Plaintiff Waled Mohammed Al Nehmi including his high cholesterol, high blood pressure, diabetes, and vision problems………………………………………………………………………………..JJJ5

Medical records from Cairo Lab Clinical Laboratory showing Plaintiff Waled Mohammed Al Nehmi's medical issues including high cholesterol, high blood pressure, diabetes and vision problems as well as prescriptions for medications signed by doctors…………………………JJJ6

**Family 30: Al Najar Family**

I-130 Approval Notice for Alien Relative (Petitioner Naif Abdulwasa Al Najar, husband, for Beneficiary wife Somayah Al Najar).....................................................................................KKK1

I-130 Approval Notice for Alien Relative (Petitioner Naif Abdulwasa Al Najar, father, for Beneficiary child M.A.)......................................................................................................KKK2

Notice of Visa Ineligibility and Waiver Denial for Plaintiff-Beneficiary M.A. dated December 26, 2017……………………………………..………………………………………………KKK3

Notice of Visa Ineligibility and Waiver Eligibility for Plaintiff-Beneficiary Somayah Al Najar dated August 15, 2018……………………………………………………..………...KKK4

Notice of Visa Ineligibility and Waiver Eligibility for Plaintiff-Beneficiary M.A. dated August 15, 2018…………………………………………………………………….………..KKK5

Immigrant Visa Administrative Processing Sheet for Plaintiff-Beneficiary Somayah Al Najar last updated August 21, 2018………………………………………………………………….....KKK6

Immigrant Visa Administrative Processing Sheet for Plaintiff-Beneficiary M.A. last updated January 21, 2019……………………………………………………………………………….KKK7

Declaration of Plaintiff Naif Al Najar discussing his family's hardships related to obtaining visas for his wife and son including family separation, financial hardships, life in war-torn Yemen for his wife and son, and his medical issues including his heart valve issues…………………..KKK8

Receipts showing money transfers from Plaintiff Naif Abdulwasa Al Najar in the United States to his family in Yemen……………………………………………………………………KKK9

## Family 31: Arevalo / Alhagag Family

I-130 Approval Notice for Alien Relative (Petitioner Diana Arevalo, wife, for Beneficiary husband Yahya Alhagag).........................................................................................................LLL1

Declaration of Plaintiff-Petitioner Diana Arevalo given in support of Plaintiff-Beneficiary Yahya Alhagag detailing the hardships of living in Yemen during the civil war, mental and physical health problems, unprofessional embassy experience, and financial and economic hardship incurred while living in Yemen…………………………………………………………………LLL2

Receipts showing money transfers Plaintiff-Petitioner Diana Arevalo in the United States to Plaintiff-Beneficiary Yahya Alhagag in Djibouti…………………………………………LLL3

## Family 32: Nasser Family

Notice of I-130 Approval for Alien Relative (Petitioner Abdo Nasser, father, for Beneficiary child Mokhtar Nasser)........................................................................................................MMM1

Notice of I-130 Approval for Alien Relative (Petitioner Abdo Nasser, father, for Beneficiary child Ghamdam Nasser)......................................................................................................MMM2

Notice of Visa Ineligibility and and Waiver Denial for Plaintiff-Beneficiaries Mokhtar Nasser and Ghamdam Nasser dated May 3, 2018…………………………………………………..MMM3

Notice of Visa Ineligibility and and Waiver Eligibility for Plaintiff-Beneficiary Mokhtar Nasser dated July 3, 2018……………………………………………………………..………………MMM4

Immigrant Visa Application Administrative Processing Sheet for Plaintiff-Beneficiary Mokhtar Nasser last updated September 6, 2018……...…………………………………...……...…MMM5

Immigrant Visa Application Administrative Processing Sheet for Plaintiff-Beneficiary Ghamdam Nasser last updated September 6, 2018……...…………………………………...……...…MMM6

Declaration of Abdo Nasser given in support of Mokhtar Nasser and Ghamdam Nasser detailing the dangers of living in Yemen during the civil war and the financial hardship that the Nasser family has incurred from travelling and living in Djibouti………………………….…...MMM7

## Family 33: Alghaithi / Algaradi Family

Notice of I-130 Approval for Alien Relative (Petitioner Hanan Fahmi Alghaithi, wife, for Beneficiary husband Wazea Abdulkader Algaradi)………………………………………NNN1

Notice of Visa Denial and Waiver Eligibility for Wazea Abdualkader Algaradi dated September 10, 2018……………………………………………..……………………………NNN2

Immigrant Visa Administrative Processing sheet for Wazea Abdualkader Algaradi last updated January 28, 2019……………………………………………………………………NNN3

Declaration of Plaintiff Hanan Fahmi Alghaithi discussing her hardships including the impacts of the war in Yemen, financial hardship, the delays in Wazea Abdulkader Algaradi's visa application, family separation, and the difficulties of giving birth alone without her husband…………………………………………………………………………………NNN4

## Family 34: Shohatee / Yaha Family

Immigrant Visa Application Administrative Processing Sheet for Beneficiary Mustafa Yahya and derivatives last updated December 13, 2018……………………………………………...OOO1

Declaration of Omar Yahya given in support of Mustafa Yahya and his family describing the destruction of their home in Yemen, financial hardship, medical problems, and lack of education due to living in Djibouti…………………………………………………………………..OOO2

## Family 35: Muthana/ Qasem Family

I-130 Approval Notice for Alien Relative (Petitioner Suriah Mohamed Muthana, for Beneficiary parent Mohammed Mohammed Qasem)...............................................................................PPP1

I-130 Approval Notice for Alien Relative (Petitioner Suriah Mohamed Muthana, for Beneficiary parent Samerah Ahmed Musa)...............................................................................PPP2

Administrative Processing Notice from the U.S. Embassy in Cairo for Mohamed Qasem dated November 27, 2018……………………………………………………………….…..PPP3

Immigrant Visa Application Administrative Processing Sheet for Beneficiary Samerah Ahmed Musa last updated December 30, 2018……………………………………………….....PPP4

Immigrant Visa Application Administrative Processing Sheet for Beneficiary Mohamed Mohammed Qasem last updated January 27, 2019……………………………….....…....PPP5

Declaration of Suriah Mohamed Muthana supporting her parents, Mohamed Qasem and Samerah Musa, detailing their lives in Yemen before moving to Cairo, her mother's medical needs such as her mother's thyroid removal, her own medical issues due to stress now having problems digesting food, her parents multiple interview processes, her financial struggles and her difficulties due to the separation…………………………………………………...…………PPP6

Medical letter from Dr. Yasser El-Debakey detailing Samerah Ahmed Musa medical procedures dated july 16, 2018……………………………………………………………………....PPP7

Medical letter from Beaumont Center for Exceptional Families diagnosing Z.S, Petitioner's son's medical condition of Left Hemiplegia……………….....………………………………..PPP8

Medical letter from DMC Children's Hospital of Michigan diagnosing Z.S, Petitioner's son, with epilepsy and hemiparesis………………….………………………………………………PPP9


**Family 36: Saleh Family**

Notice of Visa Ineligibility and Waiver Review Eligibility for Plaintiff-Beneficiary, Meethak Abdullah Ali Saleh…………………………………………………………………..QQQ1

Immigrant Visa Application Administrative Processing Sheet for Beneficiary Meethak Abdullah Ali Saleh last updated September 30, 2018…………………………………………QQQ2

Declaration of Abdulla Ali Saleh supporting Meethak Abdullah Ali Saleh's I-130 Petition, Meethak's living conditions in Yemen, outlining Abdullah Ali Saleh's medical problems, and his financial hardship…………………………………………………………………...QQQ3


**Family 37: Haimed/Yahya Family**

I-130 Approval Notice for Alien Relative (Petitioner Ahmed Yahya Haimed, son for Beneficiary mother Qublah Tahar Yahya)...............................................................................RRR1

Notice of Visa Ineligibility and Waiver Review Eligibility for Beneficiary Qublah Tahar Yahya…………………………………………………………………………...RRR2

Immigrant Visa Administrative Processing Sheet for Beneficiary Qublah Tahar Yahya last updated January 08, 2019…………………………………………………………………RRR3

Declaration of Petitioner Ahmed Yahya Haimed in support of his mother's I-130 Petition and describing the family's hardships including family separation, the war in Yemen, Beneficiary Qublah Tahar Yahya's medical issues and the financial hardship associated with supporting his mother and getting the medicine she needs…………………………………..………..RRR4

DNA Test Report and Final Certificate of Analysis proving the biological relationship between Petitioner Ahmed Yahya Haimed and Beneficiary Qublah Tahar Yahya………………......RRR5

Medical Report of Plaintiff Qublah Tahar Yahya stating that she is suffering from severe hypertension with hypoglycemia…………………………....………………………………RRR6

Various medical reports detailing the condition of Plaintiff-Petitioner Ahmed Yahya Haimed's father, who is suffering from several medical issues including Alzheimer's disease, uncontrolled diabetes, spreading lymphoma and serious chemotherapy side effects. The reports also declare that it is in the patient's best interest to have the assistance of his family in order to carry on his daily activities, as he will not survive more than a few months without help………………RRR7

Western Union Receipt from Plaintiff-Petitioner Ahmed Yahya Haimed to Beneficiary Qublah Tahar Yahya………………………………………………………………………………RRR8

## I.     INTRODUCTION

Presidential Proclamation 9645 ("the Proclamation" or "PP"), issued on September 24, 2017, prohibits the entry of all immigrants and certain categories of non-immigrants for nationals of Iran, Libya, Somalia, Syria, and Yemen.  The Proclamation provides for case-by-case waivers from the ban for individuals who can "demonstrate" that denial of entry "would cause undue hardship, . . . would not pose a threat to national entity, . . .and would be in the national interest." Presidential Proclamation No. 9645, 82 Fed. Reg. 45161 (Sept. 27, 2017), 3(c).  The Proclamation provides several examples of circumstances in which waivers may be appropriate, and further requires the Secretary of State and the Secretary of Homeland Security to adopt guidance to establish when waivers may be appropriate for foreign nationals who would otherwise be banned.  However, the entire waiver process is fraudulent.  Very few waivers have been issued to date.   All Plaintiffs in this action qualify for a waiver yet have been denied an immigrant visa and told by consular officers at U.S. Embassies abroad, including in Djibouti, Mumbai, and Kuala Lumpur.  Plaintiffs were told by the officers that they do not have authority to issue waivers although this directly contradicts the guidance that has been provided by the Trump Administration regarding the Proclamation.

The Proclamation went fully into effect in December 2017, and immediately after, thousands of individuals, including many Plaintiffs in this action, reported receiving blanket boilerplate denials (see Exhibit M) of both visas and waivers, most before ever having had an opportunity to apply or to "demonstrate" that they meet the eligibility criteria described in the Proclamation.  (See Exhibits DD1-DD3).  Some have been informed that their eligibility for a waiver is being considered, but have been waiting for many months without a decision in their cases.  Public reports and the latest government statistics illustrate that the number of waiver

grants has been "a miniscule percentage" of all these eligible for visas. *Trump v. Hawaii*, 585 U.S. __ (2018) (Breyer, J., dissenting).

From the onset, the Proclamation was drafted as a discriminatory "Muslim Ban."  It was repeatedly challenged all the way up to the Supreme Court.  Defendants have failed to provide meaningful guidance on how to apply for a waiver.  Based on the limited guidance provided, Plaintiffs have provided documentation proving they meet the requirements for a waiver under the Proclamation to receive a visa, however they have been unreasonably denied and delayed their visas causing undue hardship.  At U.S. Embassies abroad, and particularly at the U.S. Embassy in Djibouti, Plaintiffs have been discriminated against and abused by Defendants and have been turned away by consular officers when attempting to provide proof that they qualify for a waiver under the Proclamation.  (See Exhibits DD1-DD3).

Plaintiff-Petitioners Suood Almerdaei, Amr Aldaylam, Abdo Ali Saleh, Jamal Almansouri, Arwa Saleh, Tawfik Rajeh, Wadlah Mohammed Saleh,  Abdlarzak Mohsin, Amin El Burati, Mar Abdo Kaid (a.k.a. Faiz Ali Al-Nomair), Norh A. Ahmed, Shathia Abdo Alnaggar, Ahlam Hauter, Rasam Obaid Saeed, Mansour Mohamed, Majdy Alharbi, Abdelbaset Ali, Esmayl Algazali, Fayzah Abdullah, the Estate of Mohamed Mutaher Kassem, Nada Alghaithy, Saeed Sharif, Tawfik Al-Saidi, Mohamed Al-Wajih, Mohamed Taher Aldafri, Mutei Al Ghazali, Abdasalam Saeed, Mona Abass Zabara, Naif Al Najar, Diana Arevalo, Abdo Ahmed Nasser, Hanan Fahmi Alghaithi, Nehmah Ahmed Shihatee,  Suriah Mohamed Muthana,  Abdulla Ali Saleh, and Ahmed Yahya Haimed are United States citizens and/or lawful permanent residents ("LPRs"), who each filed a Form I-130, Petition for Alien Relative on behalf of their qualifying relative.

Plaintiff-Beneficiaries Samah Al-Gaad, Ali Abdo Saleh, Alfiah Abod, Ahmed, Nabila Alhanash, Kubla Moshin, Emad Nasr Abdulrab Nagi, Anhar Abdullah Taher, Latifiya Algazali, Wafa Abdulla Saleh, B.H.A., G.H.A., S.H.A., Amal Al-Okam, M.M.N.A., Ghamdam Nasser, and Mokhtar Nasser each filed Form I-130 Petitions which were all processed by the National Visa Center ("NVC"), approved, and subsequently interviewed by Embassy officials. After subjecting Plaintiff-Beneficiaries to months, and even years of delay, Defendants have refused to issue Plaintiff-Beneficiaries' previously approved visas, although according to the Proclamation, all Plaintiff-Beneficiaries and their families meet the requirements for a waiver.

Plaintiff-Beneficiaries Ali Alawi Almardaei, A.R., Siham Rajeh, Atef Rajeh, H.W.M.Q., H.W.M.Q. (2), N.W.M.Q., Bahia Mohammed Ahmed Yahya, Saqr Al-Nomair, Hilal Al-Nomair, Emtethal Al-Nomair, Hussein Ali Yafai, Nakhla Saleh Hussein Saibaan, Abdulrakib Abashaar, Ghaithah Sharoh, Saba Al Hamri, F.S., Etidal Alkuaif, Kawkab Al Malki, Abdurahman Al Malki, Assma Adelhameed Al-Quhaif, A.A., S.A., Waled Mohammed Al Nehmi, Somayah Al Najar, M.A., Wazea Abdulkader Algaradi, Mustafa Ahmed Yahya, Mohamed Qasem, Samerah Ahmed Musa, Meethak Abdullah Ali Saleh, and Qublah Tahar Yahya were each provided an immigrant visa interview following I-130 Form Petition approvals and were subsequently denied immigrant visas due to the Proclamation or have been awaiting processing on their immigrant visas.

Plaintiff-Beneficiaries Faisal Algudari, Jamilah Ali, Gaeb Saeed, and Yaha Amer Alhagag have all received Form I-130 Petition approval notices and are currently awaiting immigrant visa interviews with Embassy officials.

All Plaintiffs-Beneficiaries' I-130 Petitions have been approved and they each have an emergency and/or urgent circumstance and accordingly are eligible for a waiver under the Proclamation due to their hardships and emergency situations including the need for urgent

medical care, the need to be with their families after being separated for years, extreme financial hardship, and destruction of their hometown in war-torn Yemen.

Plaintiffs now seek a writ of mandamus and preliminary injunction directing Defendants to adjudicate Plaintiffs' applications for waivers pursuant to Section 3(c) of the Proclamation, and to issue a final determination on Plaintiffs' applications for immigrant visas within 15 days.

## II.     RELEVANT FACTS

Plaintiffs in this action are U.S. citizens, LPRs, and Yemeni visa applicants who are suffering a range of ongoing harms because of Defendants' failure to issue guidance and issue waivers under the Proclamation.  Plaintiffs are separated from their families and loved ones at critical times in their lives including pregnancy, marriage, childbirth, and medical need, are forced to live in desperate or dangerous circumstances, and are suffering severe emotional and financial harms.  Each of their circumstances fit squarely within one or more of the examples offered in the Proclamation as a situation where a waiver grant may be appropriate.  *See* Presidential Proclamation No. 9645, 82 Fed. Reg. 45161 (Sept. 27, 2017), 3(c).

Unlike Plaintiffs in *Trump v. Hawaii,* 585 U.S. __ (2018), Plaintiffs here do not challenge the Proclamation itself.  Rather, taking the Proclamation as the law of the land, they challenge Defendants' implementation of its waiver provisions.  Plaintiffs allege that Defendants have failed to abide by the terms of the Proclamation, the Administrative Procedures Act ("APA"), the Immigration and Nationality Act ("INA"), and its implementing regulations and guidelines, the Foreign Affairs Manual ("FAM"), and the Fifth Amendment to the United States Constitution by failing to provide appropriate guidance and an orderly application process for individuals to seek the grant of a waiver and failing to timely adjudicate waiver applications.

To receive a waiver, an individual must demonstrate to the consular officer's satisfaction that: "(A) denying entry would cause the foreign national undue hardship; (B) entry would not pose a threat to the national security or public safety of the United States; and (C) entry would be in the national interest." 82 Fed. Reg. 45161, 45168 (Sept. 27, 2017), § 3(c)(i).

The Proclamation specifies that a case-by-case waiver may be appropriate in "individual circumstances" such as where a "foreign national seeks to enter the United States to visit or reside with a close family member (e.g., a spouse, child, or parent) who is a United States citizen, lawful permanent resident, or alien lawfully admitted on a valid nonimmigrant visa, and the denial of entry would cause the foreign national undue hardship." *Id.* § 3(c)(iv).

Plaintiff-Beneficiaries all qualify for the waiver under the Proclamation, but have yet to be issued visas despite the fact that each of their circumstances fit squarely within one or more of the examples offered in the Proclamation as a situation where a waiver grant may be appropriate.

Statutes, regulations, the Proclamation, and agency guidance interpreting the Proclamation make clear that Defendants have a mandatory duty to issue a reasonably prompt decision on visa applications and applications for waivers under the Proclamation.

Unfortunately, Plaintiffs are relying on a sham waiver pursuant to the Proclamation because the waiver adjudication process is fraudulent. Defendants have repeatedly falsely represented that the Proclamation contains a meaningful waiver process. In its public filings, the government has escribed the waiver process as "robust," "comprehensive" and "individualized." (See Exhibit I, at p. 2; Exhibit J at pp. 9, 18, 22; Exhibit K at p. 20). It has also characterized the process as entirely within the consular officer's discretion. (Exhibit G at p. 76).

Plaintiffs have a strong likelihood of success on the merits because the waiver process under the Proclamation is fraud; the U.S. Embassy in Djibouti consistently departs from statutory

procedure; there is well-documented embassy abuse, discriminatory intent, and dishonesty by the DOJ and the U.S. Department of State; and the U.S. Department of State has blatantly lied to the detriment of immigrants and U.S. citizens.  Plaintiffs have suffered and continue to suffer irreparable damage due to the fact that they have been unreasonably denied and or delayed visas under the Proclamation waiver, separating them from their families, denying them quality medical care for life-threatening conditions, and causing financial hardship, among other things.  The separation has caused stress and undue hardship on these families to the point of requiring hospitalization and medication.

Defendants have repeatedly falsely represented that the Proclamation contains a meaningful waiver process. Former U.S. Department of State officer, Christopher Richardson, Esq., has declared under penalty of perjury: "when read together with our training, it is understood that there *really is no waiver*." (See Exhibit A).

Plaintiffs now seek a writ of mandamus and preliminary injunction directing Defendants to adjudicate Plaintiffs' applications for waivers pursuant to Section 3(c) of the Proclamation, and to issue a final determination on Plaintiffs' applications for immigrant visas within 15 days.


**Plaintiffs**

**Almerdaei / Almardaei Family DJI2017672022**

Plaintiff Suood Almerdaei is an LPR and is the wife of Plaintiff Ali Alawi Almardaei. She currently resides in Brooklyn, New York.  Plaintiff Ali Alawi Almardaei is a national of Yemen. He currently resides in Djibouti. Plaintiffs Suood Almerdaei and Ali Alawi Almardaei have five children: S.S., age 17; F.S., age 15; K.S., age 11; H.S., age 8; and M.S., age 5. They currently reside in the United States with their mother.  Plaintiff-Beneficiary Ali Alawi

Almardaei, has petitioned for an immigrant visa three times. Plaintiff-Beneficiary has been cooperating with U.S. Embassies abroad for over 16 years and has still not gotten his visa. Plaintiff-Beneficiary Ali Alawi Almardaei's I-130 Petition was approved and following an interview he received a Notice of Visa Ineligibility and Waiver Review Denial form dated January 24, 2018. Plaintiff-Beneficiary Ali Alawi Almardaei's immigrant visa application was refused in late 2018.

Plaintiffs' daughter H.S. has a tumor in her head and has had two surgeries. If she does not get better she will be required to have another surgery. Plaintiffs' children have also suffered emotionally and have been struggling with school as a result of the stress of being separated from their father. The Plaintiffs are suffering financial hardship. Plaintiff Suood Almerdaei works part time and not only pays her bills but sends money to Plaintiff Ali Alawi Almardaei to cover his expenses. She is currently $30,000 in debt.

**Aldaylam / Al-Gaad Family DJI2018663006**

Plaintiff Amr Aldaylam is a United States citizen and the husband of Plaintiff Samah Al-Gaad. He currently resides in Brooklyn, New York. Plaintiff Samah Al-Gaad is a national of Yemen. She currently resides in Ras Rambo Djibouti, Djibouti. Plaintiffs Amr Aldaylam and Samah Al-Gaad have two children: R.A., age 12 and M.A., age 9.

Plaintiff-Beneficiary Samah Algaad received a Notice of Visa Ineligibility and Waiver Review Eligibility after previous approval dated September 19, 2018. Plaintiff-Beneficiary Samah Algaad's immigrant visa application is currently in Administrative Processing.

Plaintiffs' daughter, M.A. has an obstruction in her nasal passage and has bilateral nasal discharge. She feels discomfort and has trouble breathing because of her condition and it is

recommended that she have an adenoidectomy.  Plaintiffs suffer financial hardship.  Plaintiff

Amr Aldaylam works approximately 55 hours per week to cover his expenses and his family's

expenses in Djibouti. He sends roughly $1,400 a month to cover their food and rent.


**Kaid / Saleh Family SAA2004831018**

Plaintiff Abdo Ali Saleh is a United States citizen and the father of Plaintiff Ali Abdo Ali

Saleh.  He currently resides in Brooklyn, New York.  Plaintiff Ali Abdo Ali Saleh is a national of

Yemen. He currently resides in Yemen.

Plaintiff-Petitioner Abdo Ali Saleh filed a Form I-130 Petition on behalf of his

Beneficiary son originally in 1994 and it has been delayed for years. Plaintiff-Beneficiary Ali

Abdo Ali Saleh is married to Plaintiff-Beneficiary Alfiah Abod Ahmed. They have five children:

M.A.A.S., M.A.A.S. (2), R.A.A.S., E.A.A.S., and A.A.A.S.  Plaintiff Ali Abdo Ali Saleh's

children are derivatives of his I-130 Petition.  Plaintiff-Beneficiary Ali Abdo Ali Saleh had his

interview on June 21, 2017.  Plaintiff-Beneficiary Ali Abdo Ali Saleh received a Notice of Visa

Ineligibility and Waiver Review Eligibility form for himself and his derivative children dated

October 9, 2018.  Plaintiff-Beneficiary Ali Abdo Ali Saleh and Plaintiff-Beneficiary Alfiah Abod

Ahmed Kaid's immigrant visa applications are currently in Administrative Processing.

Plaintiff Abdo Ali Saleh has a history of stroke and is constantly worried about his son

and grandchildren's safety.  Plaintiffs suffer financial hardship and Plaintiff Abdo Ali Saleh

sends money on a monthly basis to his son and family in Djibouti and Yemen.


**Almansouri / Alhanash Family DJI2017700023**

Plaintiff Jamal Almansouri is a United States citizen and the husband of Plaintiff Nabila Alhanash.  He resides in Brooklyn, New York.  Plaintiff Nabila Alhanash is a national of Yemen. She currently resides in Djibouti City, Djibouti.

Plaintiff-Petitioner Jamal Almansouri filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Nabila Alhanash on June 26, 2011 and the Petition was approved on November 20, 2016.  Plaintiff-Beneficiary Nabila Alhanash had an immigrant interview on January 21, 2018 at the U.S. Embassy in Djibouti and was subsequently approved for an immigrant visa.  Plaintiff-Beneficiary Nabila Alhanash received a Notice of Visa Ineligibility and Waiver Review Eligibility form from the U.S. Embassy in Djibouti dated January 30, 2018 after previous approval.

Plaintiff Jamal Almansouri recently suffered from a heart attack in late 2018.  He is currently being treated for this condition.  He is alone and it is difficult for him to deal with his heart condition while taking care of his two young children without his wife.  Plaintiffs suffer financial hardship and Plaintiff Jamal Almansouri in the United States sends money to his wife, Plaintiff Nabila Alhanash in Djibouti.


**Saleh / Algudari Family SAA1998535002**

Plaintiff Arwa Saleh is an LPR and the wife of Plaintiff Faisal Algudari.  She currently resides in Brooklyn, New York.  Plaintiff-Petitioner Arwa Saleh first petitioned for her husband's visa in 1998.  He was denied a visa because he was found to have done khat at some time previously.  However, khat is legal in both Yemen and Djibouti.  (See Exhibit FF,), and Embassy officials have stated that khat is not a valid reason to deny an immigrant visa.  (See Exhibits EE1-EE2).

45

In 2018, Plaintiff-Beneficiary went to Djibouti to for a medical exam and for his immigrant visa interview.  He was told by Embassy officials that after he had the exam, he would be scheduled for an interview for his visa.  However, this did not happen, and Plaintiff-Beneficiary Faisal Algudari still has not had an interview.

Plaintiff-Beneficiary Faisal Algudari suffers medical issues.  He is paralyzed on the left side of his body.  He had a stroke as a result of high blood pressure, which is exacerbated by the fact that he is separated from his family.  The stroke caused him to go into a coma for three days. He has been extremely sad and depressed as a result of delays in his visa process and being separated from his family.  He fainted about a month ago after hearing that his visa has been further delayed.  His doctor has advised him not to get too stressed or sad.  He needs to be reunited with his family.

**Rajeh Family DJI2016780014, DJI2016787047, DJI2016780015**

Plaintiff Tawfik Rajeh is a United States citizen and the father of Plaintiffs A.R., Siham Rajeh, and Atef Rajeh. He currently resides in Flushing, New York.  Plaintiffs A.R., Siham Rajeh, and Atef Rajeh are all nationals of Yemen and they currently reside in Yemen.

Plaintiff-Petitioner Tawfik Rajeh filed Form I-130 Petitions on behalf of Plaintiff-Beneficiaries A.R., Siham Rajeh, and Atef Rajeh in February 2010.  There was an eight year delay but they were finally approved.  Plaintiff-Beneficiaries A.R., Siham Rajeh, and Atef Rajeh had their immigrant interviews on January 7, 2018.   Plaintiff-Beneficiaries A.R., Siham Rajeh, and Atef Rajeh each received a Notice of Visa Ineligibility and Waiver Review Denial form after previous approval dated January 7, 2018.  Plaintiff-Beneficiaries A.R., Siham Rajeh, and Atef Rajeh's immigrant visa applications are all currently in Administrative Processing.

46

Plaintiffs suffer financial hardship.  Plaintiff Tawfik Rajeh supports the Plaintiffs, his children, financially. He only makes $50,000 a year and works seven days per week. He owns a deli and a candy store and needs help running the store not only because of his age but because his other children who are in the United States are currently in school. Plaintiff Tawfik Rajeh has borrowed $30,000 in loans from friends and family as well as a $7,000 loan from a bank. He sends $600 per month to his children in Yemen and when his children lived in Jordan and Djibouti he also covered their cost of living.

**Saleh / Qasem Family DJI2017694027, DJI2017694028, DJI2017694025**

Plaintiff Wadhah Mohammed Saleh is an LPR and is the father of Plaintiffs H.W.M.Q., H.W.M.Q. (2), and N.W.M.Q. He currently resides in Dearborn, Michigan.

Plaintiff-Petitioner Wadhah Mohammed Saleh filed Form I-130 Petitions on behalf of Plaintiff-Beneficiaries H.W.M.Q., H. W.M.Q. (2), and N.W.M.Q on April 25, 2016 and the Petitions were approved on June 13, 2017.  Plaintiff-Beneficiaries H.W.M.Q., H. W.M.Q. (2), and N.W.M.Q had their immigrant interviews at the U.S. Embassy in Djibouti on April 25, 2018. Plaintiff-Beneficiaries H.W.M.Q., H. W.M.Q. (2), and N.W.M.Q each received a Notice of Visa Ineligibility and Waiver Denial form after previous approvals dated April 10, 2018.  Plaintiff-Beneficiaries H.W.M.Q., H. W.M.Q. (2), and N.W.M.Q were all subsequently refused immigrant visas on October 3, 2018, December 20, 2018, and November 5, 2018, respectively.

Plaintiff Wadhah Mohammed Saleh has an ill American child, M.S., who is the half sibling of H.W.M.Q., H. W.M.Q. (2), and N.W.M.Q.   M.S. has been diagnosed with Acute Myeloid Leukemia, a serious form of childhood cancer and is currently being treated at the Children's Hospital of Michigan.  As a result, M.S. undergoes intensive chemotherapy and

radiation treatment which requires prolonged hospital and clinic visits. This makes it difficult for Plaintiff Wadhah Mohammed Saleh to travel to Yemen to visit his children as M.S. is very ill and requires his primary caretakers to be with him. Allowing reunification would provide relief to Plaintiffs and their family during this challenging time. Plaintiffs suffer financial hardship and Plaintiff Wadhah Mohammed Saleh in the United States sends money to his family in Djibouti.

**Mohsin / Yahya Family DJI2017803006**

Abdlarzak Mohsin is a United States citizen and the husband of Plaintiff Bahia Mohmmed Ahmed Yahya. He currently resides in Lackawanna, New York. Plaintiff Bahia Mohammed Ahmed Yahya is the wife of Plaintiff Abdlarzak Mohsin and a national of Yemen. She currently resides in Djibouti, while awaiting her immigrant visa approval. Plaintiffs Abdlarzak Mohsin and Bahia Mohammed Ahmed Yahya have eight children: B.M., age 17; T.M., age 15; M.M., age 14; W.M., age 13; J.M. age 10, Y.M., age 9; M.M. (2), age 7; and M,M. (3), age 4. All of the children are U.S. citizens and currently reside in Lackawanna, New York.

Plaintiff-Petitioner Abdlrazak Mohsin filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Bahia Mohammed Ahmed Yahya twice. The first Petition was filed on June 16, 2015. It was originally denied, but eventually approved on October 10, 2017. The second Petition was filed on July 3, 2017 and approved on February 10, 2018. Plaintiff-Beneficiary Bahia Mohammed Ahmed Yahya had an immigrant interview on March 6, 2018 at the U.S. Embassy in Djibouti. Plaintiff-Beneficiary Bahia Mohammed Ahmed Yahya's visa application is now in Administrative Processing.

Plaintiff-Petitioner Abdlarzak Mohsin is 89 years old and suffers from dementia and forgetfulness.  It is imperative that his wife gets her visa application approved because he needs assistance from his wife.  Plaintiffs suffer financial hardship and Plaintiff Abdlrazak Mohsin in the U.S. sends money to his wife, Plaintiff Bahia Mohammed Ahmed Yahya in Djibouti.

**El Burati / Mohsin Family DJI2016704029**

Plaintiff Amin El Burati is a United States citizen and the husband of Plaintiff Kubla Mohsin. He currently resides in Bridgeview, Illinois.  This petition has two derivatives. Plaintiffs Amin El Burati and Kubla Moshin have one child: Nada El Burati and she is married. Fadhle El Burati is the stepson of Plaintiff Amin El Burati and is also married.

Plaintiff-Petitioner Amin El Burati filed a Form I-130 Petition on February 19, 2013 on behalf of Plaintiff-Beneficiary Kubla Mohsin.  The Petition was approved on June 13, 2013. Plaintiff-Beneficiary Kubla Mohsin had an immigrant interview on May 22, 2018 at the U.S. Embassy in Djibouti.  Plaintiff-Beneficiary Kubla Mohsin received a Notice of Visa Ineligibility and Waiver Review Eligibility form dated May 24, 2018.  Plaintiff-Beneficiary Kubla Mohsin's immigrant visa application is currently in Administrative Processing.

Plaintiff Amin El Burati had an arthroplasty in September 2018.  He is high risk for falling and is experiencing deteriorating vision.  He needs help with physical tasks and needs his wife to be his caretaker.  He also suffers from diabetes and kidney problems.  Doctors have documented his need for 24 hour care for his condition.

**Al-Nomair Family DJI2017672004, DJI2017706004, DJI2017672005**

Plaintiff Mar Abdo Kaid (a.k.a. Faiz Ali Al-Nomair) is a United States citizen and the father of Plaintiffs Saqr, Hilal, and Emtethal Al-Nomair. He currently resides in Richmond,

Virginia.  Plaintiff Mar Abdo Kaid, also named Faiz Abdo Kaid, changed his name by court order to Faiz Ali Al-Nomair.  Plaintiffs Hilal Al-Nomair, Emtethal Al-Nomair, and Saqr Al-Nomair are children of Plaintiff Faiz Ali Al-Nomair and are nationals of Yemen. Saqr, Hilal, and Emtethal currently reside in Djibouti.

Plaintiff-Petitioner Faiz Ali Al-Nomair filed a Form I-130 Petition on behalf of Beneficiaries Emtethal Faiz Ali Al-Nomair, Hilal Faiz Ali Al-Nomair, and Saqr Faiz Ali Al-Nomair, in June 2007 and the Petition was approved on June 25, 2008.  Emtethal Faiz Ali Al-Nomair, Hilal Faiz Ali Al-Nomair, and Saqr Faiz Ali Al-Nomair had their immigrant interviews on October 10, 2017 at the U.S. Embassy in Djibouti.  Plaintiffs-Beneficiaries then received notices that their visas were denied and that they were ineligible for waivers.  They subsequently received forms from the Embassy that they were eligible for waivers.  Plaintiff-Beneficiaries immigrant visa applications are currently in Administrative Processing.

Plaintiff Faiz Ali Al-Nomair has five children who have been issued immigrant visas. One child, M.A., has been diagnosed with epilepsy and needs rehabilitation that specializes in seizures with intensive physiotherapy.  The family separation is causing additional hardship among Plaintiffs and family members as it adds additional stress.  Plaintiff Faiz Ali Al-Nomair also suffer from chronic asthma and hyperlipidemia.  Plaintiff Faiz Ali Al-Nomair has endured financial hardship. He is the only one providing financial support to the beneficiaries and sends roughly $1,400 on a monthly basis to pay for their living expenses.

**Ahmed / Al Yafai Family DJI2017632001**

Plaintiff Norh A. Ahmed is a United States citizen and the wife of Plaintiff Hussein Al Yafai.  She currently resides in Queens, New York.  Plaintiff Hussein Al Yafai is a Yemeni national and currently resides in Djibouti.

Plaintiff-Petitioner Norh A. Ahmed filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Hussein Al Yafai.  The Petition was subsequently approved on August 10, 2016.  Plaintiff-Beneficiary Hussein Al Yafai received a Notice of Visa Ineligibility and Waiver Denial form dated March 5, 2018.  Plaintiff-Beneficiary Hussein Al Yafai's immigrant visa application is currently in Administrative Processing.

While in Yemen, Plaintiffs were in a bad accident.  Plaintiff Norh A. Ahmed broke her spine and miscarried Plaintiffs' baby.  She required surgery and is still in a lot of pain.  Plaintiff Norh A. Ahmed's brother was also injured and in a coma from the accident.  The medical care Plaintiff received in the hospital was later determined by American doctors to be inadequate.  Plaintiffs are suffering as a result of being separated, the accident, are struggling financially.  It is very unsafe in Yemen and Plaintiffs' friends have been kidnapped.


**Alnagger / Saibaan Family DJI2017653008**

Plaintiff Shathia Abdo Alnagger is a United States citizen and is the daughter of Plaintiff Nakhla Saleh Hussein Saibaan.  She currently resides in Stockton, California.  Plaintiff Nakhla Saleh Hussein Saibaan is a Yemeni national and currently resides in Djibouti.

Plaintiff-Petitioner Shathia Abdo Alnaggar filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Nakhla Saleh Hussein Saibaan on November 30, 2015 and the Petition was subsequently approved on April 18, 2017.  Plaintiff Nakhla Saleh Hussein Saibaan had her immigrant interview at the U.S. Embassy in Djibouti on January 25, 2018.

Plaintiff-Beneficiary Nakhla Saleh Hussein Saibaan received a Notice of Visa Ineligibility and Waiver Denial form after previous approval dated January 25, 2018. Plaintiff-Beneficiary Nakhla Saleh Hussein Saibaan subsequently received a Notice of Visa Ineligibility and Waiver Review Eligibility form. Plaintiff-Beneficiary Nakhla Saleh Hussein Saibaan's immigrant visa application is currently in Administrative Processing.

Plaintiff Nakhla Saleh Hussein Saibaan has a cyst on her ovary that is causing her serve pain and makes it difficult for her to walk. She is also alone in Yemen. All of her family is in the United States. She also suffers from high blood pressure, which requires her to be on medication and getting medicine in Yemen is difficult. Plaintiff Shathia Abdo Alnaggar also suffers financial hardship. She is a stay-at-home mother and her husband is in medical school. She had to sell her gold jewelry to send $2000 to her mother, Plaintiff Nakhla Saleh Hussein Saibaan, to help pay for her stay in Djibouti.

**Abashaar / Hauter Family DJI2016787030**

Plaintiff Ahlam Hauter is a United States citizen and is the wife of Plaintiff Abdulrakib Abashaar. She currently resides in Astoria, New York. Plaintiff Abdulrakib Abashaar is a national of Yemen. He currently resides in Yemen. Plaintiffs Ahlam Hauter and Abdulrakib Abashaar have two children: A.A.A., age 4; and M.A.A., age 3, who are both U.S. citizens.

Plaintiff-Petitioner Ahlam Hauter filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Abdulrakib Abashaar and the Petition was subsequently approved. Plaintiff-Beneficiary Abdulrakib Abashaar had his immigrant interview on December 2, 2017 at the U.S. Embassy in Djibouti and he was refused a visa at the Embassy. Plaintiff-Beneficiary Abdulrakib Abashaar received a Notice of Visa Ineligibility and Waiver Review Denial form dated

December 18, 2018.  Plaintiff-Beneficiary Abdulrakib Abashaar's immigrant visa application is currently in Administrative Processing.

Plaintiff Abdulrakib Abashaar has a liver condition which is life threatening.  He requires medical attention and medicine in the United States.  Plaintiffs are suffering hardships including those related to Plaintiff Abdulrakib Abashaar's medical condition, the trauma of being separated, the war in Yemen, and the difficulties in traveling to Djibouti.

**Saeed / Nagi Family DJI2017744012**

Plaintiff Rasam Obaid Saeed is United States citizen and the wife of Plaintiff Emad Nasr Abdulrab Nagi. She currently resides in Yemen.  Plaintiff Emad Nasr Abdulrab Nagi is a national of Yemen. He currently resides in Yemen.  Plaintiffs Rasam Obaid Saeed and Emad Nasr Abdulrab Nagi have one child: N.N., age 3, who is a United States citizen.

Plaintiff-Petitioner Rasam Obaid Saeed filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Emad Nasr Abdulrab Nagi on September 28, 2016 and the Petition was approved on August 15, 2017 and Plaintiff-Beneficiary Emad Nasr Abdulrab Nagi subsequently had an immigrant interview at the U.S. Embassy in Djibouti.  Plaintiff-Beneficiary Emad Nasr Abdulrab Nagi received a Notice of Visa Ineligibility and Waiver Eligibility after previous approval form dated July 24, 2018.  Plaintiff-Beneficiary Emad Nasr Abdulrab Nagi's immigrant visa is now is Administrative Processing.

Plaintiff Rasam Obaid Saeed's son was diagnosed with asthma and continues to get worse while living in Yemen due to the air quality.   Plaintiffs suffer financial hardship and Plaintiff Rasam Obaid Saeed's family in the U.S. sends money to Plaintiff Rasam Obaid Saeed and her family in Yemen.

**Mohamed / Sharoh Family KLL2017748002**

Plaintiff-Petitioner Mansour Mohamed is a United States citizen and the husband of

Plaintiff Ghaithah Sharoh.  He resides in Detroit, Michigan.  Plaintiff Ghaithah Sharoh is a

Yemen national and currently resides in Malaysia.

Plaintiff-Petitioner filed a Form I-130 Petition on behalf of his wife, Plaintiff-Beneficiary

Ghaithah Sharoh in 2016 and had an interview at the U.S. Embassy in Kuala Lumpur, Malaysia

on December 7, 2017.  Plaintiff-Beneficiary Ghaithah Sharoh received a Notice of Visa

Ineligibility and Waiver Denial form dated November 1, 2018 from the U.S. Embassy in Kuala

Lumpur, Malaysia.  Plaintiff-Beneficiary Ghaithah Sharoh's immigrant visa application is

currently in Administrative Processing.

Plaintiff Mansour Mohamed is 75 years old and suffers from diabetes and has a bad knee

which causes him mobility issues.  He needs his wife to be with him and help take care of him.

Plaintiffs suffer financial hardship as Plaintiff Mansour Mohamed supports his wife in Kuala

Lumpur.  He has traveled to see her on a few occasions, which is expensive and difficult for him

due to his age, mobility issues, and medical issues.


**Alharbi / Taher Family DJI2017775010**

Plaintiff Majdy Alharbi is a United States citizen and the husband of Plaintiff Anhar

Abdullah Taher. He currently resides in Cheektowaga, New York.  Plaintiff Anhar Abdullah

Taher is a national of Yemen. She currently lives in Djibouti.  Plaintiffs Majdy Alharbi and

Anhar Abdullah Taher have three children: M.M.A.S.A., age 8; H.M.A., age 6; and R.M.A., age

3. One child is a U.S. citizen and lives with Plaintiff Majdy Alharbi in the United States.

Plaintiff-Petitioner Majdy Alharbi filed a Form I-130 Petition on behalf of Plaintiff-

Beneficiary Anhar Abdullah Taher on October 17, 2016 and the Petition was approved on

September 1, 2017.  Plaintiff Anhar Abdullah Taher had her immigrant interview on August 15, 2018 at the U.S. Embassy in Djibouti and she was subsequently approved for an immigrant visa. Plaintiff-Beneficiary Anhar Abdullah Taher received a Notice of Visa Ineligibility and Waiver Review Eligibility after previous approval dated August 15, 2018.  Plaintiff-Beneficiary Anhar Abdullah Taher's immigrant visa application is currently in Administrative Processing.

Plaintiffs' daughter, H.M.A., has problems with walking and is in need of surgery to correct her walking. She currently walks on her toes. She does physical therapy each week. Plaintiffs suffer from financial hardship.  Plaintiff Majdy Alharbi has borrowed roughly $40,000 from friends and family and sends his wife $2,500 per month to cover family living expenses in Djibouti.

**Ali Family DJI2016682012**

Plaintiff Abdelbaset Ali is a United States citizen and the father of Plaintiff Jamilah Ali. He currently resides in Utica, New York.  Plaintiff Jamilah Ali is a national of Yemen. She currently resides in Djibouti.

Plaintiff-Petitioner Abdelbaset Ali filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Jamilah Ali on November 7, 2011 and the Petition was approved on August 22, 2014.  Plaintiff Jamilah Ali has not yet had her immigrant interview.

Plaintiff Jamilah Ali suffers from heatstroke and rashes from living in Djibouti.  She is also suffering from depression because she is separated from her family.  Plaintiff Abdelbaset Ali is currently undergoing chemotherapy for chronic lymphocytic leukemia.  The process has also caused marriage problems and financial difficulties as Plaintiff Abdelbaset Ali is currently

not working.  Plaintiffs suffer financial hardship and Plaintiff Abdelbaset Ali sends money from the United States to PLaintiff Jamilah Ali and her family in Djibouti.

**Algazali Family DJI2016716101**

Plaintiff Esmayl Algazali is a United States citizen and the father of Plaintiff Latifiya Algazali. He currently resides in Hamtramck, Michigan.  Plaintiff Latifiya Algazali is a national of Yemen. She currently resides in Hamtramck, Michigan with her father.  Plaintiff Latifiya Algazali is married and has six children.  Her youngest child, E.A., and husband are derivatives of her Form I-130 Petition.

Plaintiff-Petitioner Esmayl Algazali filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Latifiya Algazali over 20 years ago and the Petition was approved.  Plaintiff Latifiya Algazali had her immigrant interview on June 3, 2018 at the U.S Embassy in Djibouti.  Plaintiff Latifiya Algazali was approved and issued a visa on October 28, 2018 and arrived to the U.S. on November 5, 2018.  Plaintiff Latifiya Algazali's derivatives have not been issued visas and their immigrant visa applications are currently in Administrative Processing.

Plaintiffs are suffering hardships as a result of being separated.  Plaintiff Latifiya Algazali's depression has gotten worse since arriving to the U.S. She is separated from her husband and son.  Plaintiff Latifya Algazali also suffers from a number of medical conditions including diabetes and high blood pressure.  She has also had three panic attacks due to her constant fear about her family living in Djibouti.

**Abdullah / Saleh Family DJI2017699011**

Plaintiff Fayah Abdullah is a United States citizen and the wife of Plaintiff Ghyath Abdulrahman Saleh. She currently resides in Djibouti.  Plaintiff Ghyath Abdulrahman Saleh is a

national of Yemen. He currently resides in Djibouti.  Plaintiffs Fayah Abdullah and Ghyath Abdulrahman Saleh have one child: R.S., age 1. He is a United States citizen.

Plaintiff-Petitioner Fayah Abdullah filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Ghyath Abdulraham Saleh on December 23, 2016 and the Petition was approved on June 22, 2017.  Plaintiff Ghyath Abdulrahman Saleh had his immigrant interview on July 9, 2018 at the U.S. Embassy in Djibouti.  Plaintiff-Beneficiary Ghyath Abdulrahman Saleh received a Notice of Visa Ineligibility and Waiver Review Eligibility after previous approval dated July 8, 2018.  Plaintiff-Beneficiary Ghyath Abdulrahman Saleh's immigrant visa application is currently in Administrative Processing.

Plaintiffs Fayah Abdullah and Ghyath Abdulrahman Saleh require sleeping pills because they both struggle with depression and stress as a result of their financial and emotional hardships resulting from the war in Yemen, their immigrant visa application process, and the separation of their family.  Plaintiffs' parents are both suffering medical issues including pain, disability, and sadness and depression as a result of the family separation they are experiencing, which require support from their children.  Plaintiffs suffer financial hardship and Plaintiff Ghyath Saleh send money to his wife Fayah Abdullah in Yemen.

**Kassem / Saleh Family SAA2010617002**

The Estate of Mohamed Mutaher Kassem represents Mohamed Mutaher Kassem, who was a United States citizen and was the husband of Plaintiff Wafa Abdulla Saleh.  He was killed in Yemen while visiting family. Plaintiff Wafa Abdulla Saleh is a national of Yemen. She currently resides in Djibouti.  Plaintiff Wafa Abdulla Saleh and Mohamed Mutaher Kassem and have four children: A.M.M., age 13; O.M.M., age 10; A.M.M, age 6; and S.M.M., age 16. The children are U.S. Citizens and live in Djibouti with their mother.

Plaintiff-Petitioner Mohamed Ahmed Mutaher filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Wafa Saleh, which was subsequently approved.  Plaintiff-Beneficiary Wafa Abdulla Saleh had two interviews at the U.S. Embassy in Djibouti.  Plaintiff-Beneficiary Wafa Abdulla Saleh received a Notice of Visa Ineligibility and Waiver Review Eligibility notice from the U.S. Embassy in Djibouti dated October 17, 2018.  Plaintiff-Beneficiary Wafa Abdulla Saleh's immigrant visa application is currently in Administrative Processing.

Plaintiff Wafa Abdulla Saleh is a widow and is struggling to raise her four children in Djibouti.   She faces additional hardships including dealing with the loss of her husband, financial hardship living in Djibouti, and the stress of taking care of four children by herself.


**Alghaithy Family DJI2016778051, DJI2016778050, DJI2016778049**

Plaintiff Nada Alghaithy is a United States citizen and the mother of Plaintiffs B.H.A., G.H.A., and S.H.A.  She currently lives in Rochester, New York.  Plaintiffs B.H.A., G.H.A., and S.H.A are all nationals of Yemen. They currently reside in Sudan.

Plaintiff-Petitioner Nada Alghaithy filed Form I-130 Petitions on behalf of Plaintiff-Beneficiaries B.H.A., G.H.A., and S.H.A, which were all subsequently approved.  Plaintiff-Beneficiaries B.H.A., G.H.A., and S.H.A's immigrant visa applications are all currently in Administrative Processing.

The family faces hardships as a result of being separated. Plaintiff Nada Alghaithy has three natural born United States citizen children, (the younger siblings of Plaintiffs B.H.A., G.H.A., and S.H.A) living in the U.S. but Plaintiff Nada Alghaithy divides her time between the U.S. and Sudan.  Plaintiff Nada Alghaithy suffers from stress as a result of the long drawn out visa process and has started to take medication for it.

**Sharif / Al Hamri Family DJI2016795012, DJI2016792080**

Plaintiff Saeed Sharif is a United States citizen and the husband of Plaintiff Saba Al Hamri.  He currently resides in Oakland, California.  Plaintiff Saba Al Hamri is a national of Yemen.  She currently resides in Djibouti.  Plaintiffs A.S., N.S., and F.S. are the children of Plaintiffs Saeed Sharif and Saba Al Hamri. They are nationals of Yemen and currently reside in Djibouti with their mother.

Plaintiff-Petitioner Saeed Sharif filed Form I-130 Petitions on behalf of Plaintiff-Beneficiaries Saba Al-Hamri, A.S., N.S., and F.S. on June 22, 2016 and the Petitions were subsequently approved.  Plaintiff-Beneficiary F.S.'s Petition was approved on September 2, 2016.  Plaintiff-Beneficiary A.S.'s Petition was approved on September 6, 2016.  Plaintiff-Beneficiary Saba Al-Hamri's Petition was approved on September 8, 2016. Plaintiff-Beneficiary N.S.'s Petition was approved on October 24, 2016.  Plaintiff-Beneficiaries Saba Al-Hamri, A.S., N.S., and F.S. had their immigrant interviews on January 4, 2018 at the U.S. Embassy in Djibouti.  Plaintiff-Beneficiaries Saba Al-Hamri, A.S., N.S., and F.S. each received a Notice of Visa Ineligibility and Waiver Denial form after previous approval dated January 4, 2018. Plaintiff-Beneficiaries A.S. and N.S.'s visas were issued in January 2019.  Plaintiff-Beneficiaries Saba Al-Hamri and F.S.'s immigrant visa applications are currently in Administrative Processing.

Plaintiffs suffer hardship as a result of the war in Yemen, family separation, and the expenses of being in Djibouti.  Plaintiffs suffer financial hardship.  Plaintiff Saeed Sharif works two jobs, 14-hour shifts, and seven days a week to provide for his family in Djibouti.  This causes him great stress, which he is currently taking medication for.

**Al-Saidi / Alkuaif Family DJI2016724028**

Plaintiff Tawfik Al-Saidi is an LPR and the wife of Plaintiff Etidal Alkuaif.  He currently resides in Detroit, Michigan.  Plaintiff Etidal Alkuaif is a national of Yemen. She currently resides in Djibouti.  Plaintiffs Tawfik Al-Saidi and Etidal Alkuaif have five children: A.A., age 21; F.A., age 19; F.A. (2), age 16; G.A., age 11; and F.A. (3), age 8. The children are derivatives on the Form I-130 Petition.

Plaintiff-Petitioner Tawfik Al-Saidi filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Etidal Alkhuaif, and their derivative children.   The Petition was approved on June 11, 2014. Plaintiff-Beneficiary Etidal Alkuaif and derivatives A.A., F.A., G.A., and F.A. (2) and F.A. (3) had their immigrant interview on January 22, 2018 and the Petition was subsequently approved.  Plaintiff-Beneficiary Etidal Alkuaif and derivatives A.A., F.A., G.A., and F.A. (2) and F.A. (3) received a Notice of Visa Ineligibility and Waiver Review Denial after previous approval.  Plaintiff-Beneficiary Etidal Alkuaif and derivatives A.A., F.A., G.A., and F.A. (2) and F.A. (3)'s immigrant visa applications are currently in Administrative Processing.

Plaintiffs suffer financial hardship. Plaintiff Tawfik Al-Saidi has spent over $30,000 to bring his family to the United States. His monthly income is $2,700.  He works overtime and sends roughly $2,300 to his family in Djibouti to cover all of their expenses.  He is also in debt to his cousin for $10,000. There are occasions where he cannot cover his own expenses as he struggles to cover the living expenses for his family in Djibouti.

**Al-Wajih / Al Malki Family DJI2017743012, DJI2017743008, DJI2017743023**

Plaintiff Mohamed Al-Wajih is a United States citizen and the father of Plaintiffs Kawkab Al Malki and Abdurahman Al Malki. He currently resides in the Bronx, New York. Plaintiffs Kawkab Al Malki and Abdurahman Al Malki are nationals of Yemen.  They currently

reside in Djibouti.  Plaintiff Kawkab Al Malki and was 31 weeks pregnant as of October 31, 2018.  Her husband is a U.S. citizen.  Plaintiff Abdurham Al Malki is married to Plaintiff Asma Abdulhamid Alquhaif.

Plaintiff-Petitioner Mohamed Al Wajih filed a Form I-130 Petition on behalf of Plaintiff-Beneficiaries Abdurahman Al Malki and Kawkab Al Malki on September 2005 and the Petition was approved on December 5, 2005.  Plaintiff-Beneficiary Abdurahman Al Malki and derivatives had their immigrant interviews on October 10, 2018 at the U.S. Embassy in Djibouti. Plaintiff-Beneficiary Kawkab Al Malki received a Notice of Visa Ineligibility and Waiver Denial form after previous approval dated February 22, 2018.  Plaintiff-Beneficiary Kawkab Al Malki's immigrant visa application is currently in Administrative Processing.  Plaintiff-Beneficiary Abdurahman Al Malki's immigrant visa application is currently in Administrative Processing. Plaintiff Asma Abdulhamid Alquhaif received a visa approval notice but her visa has not yet been issued and her immigrant visa application is currently in Administrative Processing.

Plaintiffs are suffering financial hardship and Plaintiff Mohamed Al-Wajih's family in the United States sends money to his family in Djibouti.


**Al-Okam/ Aldafri Family DJI2017792002, DJI2017798007, DJI2017792005**

Plaintiff Mohamed Taher Aldafri is a United States citizen and is the husband of Plaintiff Amal Al-Okam and the father of Plaintiffs A.A. and S.A.  He currently resides in Chicago, Illinois.  Plaintiff Amal Al-Okam is a national of Yemen. She currently resides in Yemen. Plaintiffs Mohamed Taher Aldafri and Amal Al-Okam have two children: A.A., age 5 and S.A., age 3.  They currently reside with their mother in Djibouti.

Plaintiff-Petitioner Mohamed Taher Aldafri filed a Form I-130 Petition on behalf of Plaintiff-Beneficiaries Amal Esmail Al-Okam (his wife), and A.A. and S.A. (his children) on

September 21, 2015 and the Petitions were approved on October 4, 2017.  Plaintiff-Beneficiaries Amal Esmail Al-Okam, A.A., and S.A. had their immigrant interviews on July 22, 2018 at the U.S. Embassy in Djibouti.  A second interview was conducted on October 8, 2018 for their Consular Report of Birth Abroad (CRBA) applications. Plaintiff-Beneficiary Amal Esmail Al-Okam received a Notice of Visa Ineligibility and Waiver Review Eligibility form dated July 22, 2018.  Plaintiff-Beneficiary Amal Esmail Al-Okam's immigrant visa application is currently in Administrative Processing.   Plaintiff-Beneficiaries A.A. and S.A.'s immigrant visa applications have been refused.

Plaintiff Mohamed Taher Aldafri has psychological problems. He has been diagnosed with schizophrenia and depression and is taking medication. Plaintiff Mohamed Taher Aldafri has been in and out of medical centers for treatment.  His last visit was in July 2018.  Plaintiffs have suffered hardships related to the war in Yemen, Plaintiff Amal Esmail Al-Okam giving birth to her son in a war zone, her father and son both getting injured, and her experience with the U.S. Embassy in Djibouti.


**Al Ghazali Family DJI2017834009**

Plaintiff Mutei Al Ghazali is a United States citizen and the father of Plaintiff M.M.N.A. He currently resides in Fresno, California.  Plaintiff M.M.N.A. is a national of Yemen. She currently resides in Yemen.

Plaintiff-Petitioner Mutei Al Ghazali filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary M.M.N.A on September 16, 2016.  The Petition was approved on October 27, 2017. Plaintiff-Beneficiary M.M.N.A had her immigrant interview in October 2018 at the U.S. Embassy in Djibouti. Plaintiff-Beneficiary M.M.N.A received a Notice of Visa Ineligibility and

Waiver Review Eligibility form dated October 2, 2018.  Plaintiff-Beneficiary M.M.N.A's immigrant visa application is currently in Administrative Processing.

Plaintiff M.M.N.A's entire family is in the United States, except for her grandfather who she resides with in Yemen. This visa process and the war in Yemen has taken a toll on her mental health and she is depressed.

**Saeed Family SAA2006674010**

Plaintiff Abdasalam Saeed is a United States citizen and is the father of Plaintiff Geab Saeed.  He currently resides in Watsonville, California.  Plaintiff Geab Saeed is a national of Yemen.  He currently resides in Egypt.

Plaintiff-Petitioner Abdasalam Saeed filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Geab Saeed.  Plaintiff-Beneficiary Geab Saeed's immigrant visa application is currently in Administrative Processing.

Plaintiff Geab Saeed's wife and children live in the United States with Plaintiff Abdasalam Saeed and Plaintiff Geab Saeed has not seen his family in over a year.  Plaintiffs suffer financial hardship.  Plaintiff Abdasalam Saeed provides financial support to Plaintiff Geab Saeed to pay for his expenses.

**Zabara / Al Nehmi Family DJI2017526026**

Plaintiff Mona Abass Zabara is a United States citizen and lives in Yemen.  She is the wife of Plaintiff Waled Mohammed Al Nehmi, who is a national of Yemen.  He also resides in Yemen.

Plaintiff-Petitioner Mona Abass Zabara filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Waled Mohammed Al Nehmi.  Plaintiff-Beneficiary Waled Mohammed Al Nehmi. had an immigrant visa interview at the U.S. Embassy in Djibouti on October, 24, 2017 and he was approved for a visa. Plaintiff-Beneficiary Waled Mohammed Al Nehmi received a Notice of Visa Ineligibility and Waiver Denial form from the U.S. Embassy in Djibouti dated January 24, 2018.  Plaintiff-Beneficiary Waled Mohammed Al Nehmi's immigrant visa application is currently in Administrative Processing.

Plaintiff Waled Mohammed Al Nehmi suffers from a number of medical issues including high cholesterol, high blood pressure, and diabetes.  He has issues with his eye that cause problems with his vision and requires surgery.  Plaintiffs suffer financial hardship as a result of Plaintiff Waled Mohammed Al Nehmi not being able to work.  Plaintiff Mona Abass Zabara used to work as a school teacher when she lived in the United States but is no longer working in Yemen.  Plaintiff Mona Abass Zabara and Plaintiffs' children are struggling adjusting to the life in war-torn Yemen, especially after living in the United States.  Plaintiffs' oldest daughter refuses to go to school in Yemen because she is afraid her school will be bombed.


**Al Najar Family DJI2017623014**

Plaintiff Naif Al Najar is a United States citizen and the husband of Plaintiff Somayah Al Najar.  He currently resides in Brooklyn, New York.  Plaintiff Somayah Al Najar is a native of Yemen and she currently resides in Yemen.  Plaintiffs Somayah Al Najar and Naif Al Najar are the parents of Plaintiff M.A., 8 years old, who is also a native of Yemen and who lives in Yemen.

Plaintiff-Petitioner Naif Al Najar filed I-130 Petitions on behalf of Plaintiff-Beneficiaries Somayah Al Najar and M.A.  Plaintiffs were scheduled for an immigrant visa in interview at the

U.S. Embassy in Djibouti on November 7, 2017 and they were immediately rejected without an interview because of the way Somayah Al Najar's hijab looked in her photo.  They attended an interview on December 26, 2017 where they were told by the consular officers that they could not get visas because of the President's Ban.  They subsequently received refusal notices. Plaintiff-Beneficiaries Somayah Al Najar and M.A.'s immigrant visas are both currently in Administrative Processing.

Plaintiff Naif Al Najar is suffering from medical issues and has heart valve problems.  He also experiences sadness and depression as a result of being separated from his wife and son. Plaintiffs are suffering financial hardship as a result of being separated and traveling to and from Djibouti for immigrant visa interviews.


**Arevalo / Alhagag Family DJI2017750001**

Plaintiff Diana Arevalo is a United States citizen who resides in Ventura, California.  She is the wife of Plaintiff Yahya Amer Alhagag.  Plaintiff Yahya Amer Alhagag is a national of Yemen who currently resides in Yemen.

Plaintiff-Petitioner Diana Arevalo filed an I-130 Petition for her husband, Plaintiff-Beneficiary Yahya Amer Alhagag on December 27, 2016.  Plaintiff-Beneficiary's visa was delayed and in 2018 Plaintiffs contacted a local congresswoman to help expedite the process but he still has not received his visa.  Plaintiff-Beneficiary Yahya Amer Alhagag's immigrant visa application is currently in Administrative Processing.

Plaintiff Diana Arevalo suffers from epilepsy and seizures.  They are exaggerated by stress.  As a result of her stress and anxiety related to her husband's long drawn out visa application process and the stress of him living in war-torn Yemen, her seizures have increased. After hearing he was denied his visa recently, she suffered a major seizure and went into cardiac

arrest. She has had to increase her medication which has other side effects such as vertigo and dizziness.  Plaintiffs suffer financial hardship and Plaintiff Diana Arevalo sends money from the United States to her husband, Plaintiff Yahya Amer Alhagag in Yemen.


**Nasser Family SAA2005829002, SAA2005829003**

Plaintiff Abdo Ahmed Nasser is a United States and the father of Plaintiffs Ghamdam Nasser, age 30, and Mokhtar Nasser, age 31.  He currently resides in New York, New York. Plaintiffs Ghamdam Nasser and Mokhtar Nasser are nationals of Yemen and currently live in Yemen.

Plaintiff-Petitioner Abdo Ahmed Nasser filed I-130 Petitions on behalf of his children, Plaintiff-Beneficiaries Ghamdam Nasser and Mokhtar Nasser and the Petitions were subsequently approved.  Plaintiff-Beneficiaries Ghamdam Nasser and Mokhtar Nasser received a notice of visa illegibility and waiver denial form from the U.S. Embassy in Djibouti dated May 3, 2018.   Plaintiff-Beneficiary Mokhtar Nasser received a notice of visa ineligibility and eligibility for waiver form from the U.S. Embassy in Djibouti dated July 3, 2018.  Plaintiff-Beneficiaries Ghamdam Nasser and Mokhtar Nasser's immigrant visa applications are currently in Administrative Processing.

Plaintiffs are suffering as a result of their visa denial and delays.  Plaintiff-Petitioner has not seen his family in over four years.  His children are in Yemen with his wife, who went there to be with their children.  They were in Djibouti but it is too expensive so they went back to war-torn Yemen.  It is not safe in Yemen.  Plaintiffs are suffering financial hardship due to the cost of supporting the family in Djibouti and Yemen.  Plaintiffs are also suffering family separation.

**Alghaithi / Algaradi Family BMB2017763014**

Plaintiff Hanan Fahmi Alghaithi is a United States citizen and the wife of Plaintiff Wazea Abdualkader Algaradi. She currently resides in the Bronx, New York. Plaintiff Wazea Abdualkader Algaradi is a national of Yemen who currently resides in India.

Plaintiff-Petitioner filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Wazea Abdualkader Algaradi in 2017. Plaintiff-Beneficiary Wazea Abdualkader Algaradi had an immigrant visa interview at the U.S. Embassy in Mumbai, India on September 10, 2018. He was then told by a consular officer that he would not be issued a visa due to the Proclamation. Plaintiff-Beneficiary received an immigrant visa application denial notice and notice of eligibility for a waiver dated September 10, 2018. Plaintiff-Beneficiary Wazea Abdualkader Algaradi's immigrant visa application is currently in Administrative Processing.

Plaintiff Wazea Abdualkader Algaradi moved to India to study and is earning a master's degree. Plaintiffs have suffered hardships as a result of the war in Yemen, and the fact that their family has been separated due to the delay in Plaintiff Wazea Abdualkader Algaradi's visa application. Plaintiff Hanan Fahmi Alghaithi had her baby alone without her husband due to the fact that his visa has still not been issued. Plaintiff is sad that her family has been separated and that her husband missed the birth of their first child. She is now struggling to raise their child alone.

**Shohatee / Yahya Family SAA2001774019**

Plaintiff Nehmah Ahmed Shohatee is a United States citizen and is the brother of Plaintiff Mustafa Ahmed Yahya, a national of Yemen.

Plaintiff-Petitioner Nehmah Ahmed Shohatee filed an I-130 Petition on behalf of her brother, Plaintiff-Beneficiary Mustafa Ahmed Yahya, and his derivative wife and their five children.  They had an interview at the U.S. Embassy in Djibouti and were not denied.  The Embassy officials requested more tests and information and the Petition was revoked on September 21, 2017 and Plaintiffs subsequently appealed the decision.  Plaintiff-Beneficiary Mustafa Ahmed Yahya's immigrant visa (along with the visas of his derivatives) is currently in Administrative Processing.

Plaintiff-Beneficiary Mustafa Ahmed Yahya and his wife and children have been stuck in Djibouti waiting for their visa approvals.  The children have gotten sick and the older children are suffering because they have not been able to go to school.  The family is suffering a number of hardships including financial hardship and the hardship as a result of having to move to Djibouti to flee from their home in Yemen, which is in a war zone.


**Muthana / Qasem Family YTC 2017726002, YTC2017726001**

Plaintiff Suriah Mohamed Muthana is United States citizen and the daughter of Plaintiffs Mohamed Qasem and Samerah Ahmed Musa.  She currently resides in Melvindale, Michigan.  Plaintiffs Mohamed Qasem and Samerah Ahmed Musa are Yemeni nationals who currently reside in Egypt.

Plaintiff-Petitioner Suriah Mohamed Muthana filed Form I-130 Petitions on behalf of Plaintiff-Beneficiaries Mohamed Qasem and Samerah Ahmed Musa they were subsequently approved.  Plaintiffs received approval notices in March 2017.  Plaintiff-Beneficiaries Mohamed Qasem and Samerah Ahmed Musa had their immigrant interviews on October 23, 2017 at the U.S. Embassy in Cairo, Egypt at which point they were told by embassy officials that everything

would be fine and that they would receive their visas.  After long delays, Plaintiff-petitioner emailed her Senator who then emailed the Embassy inquiring about the adjudication of Plaintiff-Beneficiaries' visas. The embassy said the applications were still in Administrative Processing. One year later on September 25, 2018, Plaintiff-Beneficiaries had a second interview at the embassy where embassy officials took Plaintiff-Beneficiaries' passports.  Plaintiff-Beneficiaries' immigrant visas are currently in Administrative Processing.

Plaintiff Suriah Mohamed Muthana suffers from sadness and depression as a result of her parents' visa applications being delayed.  She suffers digestion issues as a result of the stress and suffers from inflammation and is unable to process food.  Plaintiff Samerah Ahmed Musa also suffers medical issues.  She had surgery for a tumor on her throat and her thyroid has been removed so she is not able to properly digest food.  She had to go to Egypt to receive medical care because the medical care is Yemen is not sufficient.  However, this is only a temporary solution and she requires better medical care in the U.S. She also suffers from depression as a result of being separated from her family.


**Saleh Family SAA2010801013**

Plaintiff Abdullah Ali Saleh is a United States citizen and the father of Plaintiff Meethak Abdullah Ali Saleh, a national of Yemen.  Plaintiff Meethak Abdullah Ali Saleh currently resides in Yemen.

Plaintiff-Petitioner Abdullah Ali Saleh filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Meethak Abdullah Ali Saleh.  After having his Petition approved, Plaintiff-Beneficiary had an immigrant visa interview at the U.S. Embassy in Djibouti.  He was asked to take a medical and DNA test, which he passed.  Plaintiff-Beneficiary was told that he would be

contacted by the embassy about his visa.  He waited a month in Djibouti for his visa to be adjudicated but it was not.  After being robbed, he went back home to Yemen.  Plaintiff-Beneficiary's immigrant visa is currently in Administrative Processing.

Plaintiff Abdullah Ali Saleh suffers medical issues including diabetes, high blood pressure, and high blood sugar.  He takes medications for these conditions but they are worsened by the stress and anxiety of having his son in war-torn Yemen while he is awaiting the adjudication of his visa.  Plaintiff Abdullah Ali Saleh lives in fear that his son will die in Yemen. Plaintiff Meethak Abdullah Ali Saleh's home has bullet holes from the war and he is living in a dangerous environment.

Plaintiffs also suffer from financial hardship because Plaintiff Meethak Abdullah Ali Saleh is unable to work in Yemen and everything, including food is expensive.  Plaintiff Abdullah Ali Saleh supports his son financially but he is also struggling because he has injuries as a result of a car accident and surgery so he is also unable to work.  Plaintiff Abdullah Ali Saleh is in debt more than $25,000 from supporting his son in Yemen.


**Haimed / Yahya Family DJI2017789009**

Plaintiff Ahmed Yahya Haimed is a United States citizen and the son of Plaintiff Qublah Tahar Yahya.  He currently resides in Modesto, California.  Plaintiff Qublah Tahar Yahya is a Yemeni national who currently lives in Yemen.

Plaintiff-Petitioner Ahmed Yahya Haimed filed a Form I-130 Petition on behalf of Plaintiff-Beneficiary Qublah Tahar Yahya which was subsequently approved.  Plaintiff-Beneficiary had an interview at the U.S. Embassy in Djibouti.  The embassy officials requested DNA and proof that Plaintiff-Beneficiary Qublah Tahar Yahya was Plaintiff-Petitioner Ahmed

Yahya Haimed's biological mother.  Plaintiffs got the test, which they subsequently passed.
Plaintiffs have since been waiting to hear back about the status of Plaintiff-Beneficiary's visa.
Plaintiff-Beneficiary's immigrant visa is currently in Administrative Processing.

Plaintiff Qublah Tahar Yahya suffers from medical issues including diabetes for which
she takes medication, but the medication is very expensive.  Plaintiff Ahmed Yahya Haimed's
father is currently very ill and he wants his family to be reunited.  Plaintiff Ahmed Yahya
Haimed's father suffers from a number of medical conditions including lymphoma, untreated
diabetes, and Alzheimer's disease.   Plaintiff Ahmed Yahya Haimed is very concerned about the
health and safety of his mother, as she is stuck in war-torn Yemen, which is very dangerous.
Plaintiffs suffer from financial hardship as a result of helping to support Plaintiff Qublah Tahar
Yahya in Yemen and pay for her food and medication.


**III.    RELIEF SOUGHT**

Plaintiffs seek Preliminary Injunctive Relief ordering the following:

(1) Issue a writ of mandamus and preliminary injunction directing Defendants to
adjudicate Plaintiffs' applications for waivers pursuant to Section 3(c) of the
Proclamation, and issue a final determination on Plaintiffs' applications for
immigrant visas within 15 days;

(2) Declare that Defendants' actions and inactions, including the lack of clarity
surrounding the adjudication of waivers pursuant to Section 3(c) of the
Proclamation and the delay in adjudicating Plaintiffs' visa applications, is
unreasonable and violates the APA, the INA, and the Fifth Amendment to the U.S.

Constitution and that Plaintiffs are entitled to a prompt adjudication of their waiver
and visa applications within 15 days;

(3) Grant any other relief as the Court may deem just and proper.


## IV.    JURISDICTION

Article II, § 2 of the United States Constitution extends the judicial power of the United
States "to all Cases, in Law and Equity, arising under this Constitution the Laws of the United
States, and Treaties made, or which shall be made under their Authority."  The current grant of
"federal question" jurisdiction is set out in 28 U.S.C. § 1331.  Federal question jurisdiction is
premised on the principle that the federal judiciary should have authority to interpret and apply
federal law.

The "federal question" statute, 28 U.S.C. § 1331, is the basis for jurisdiction in an APA
suit for review of agency action.  The Supreme Court has found that 28 U.S.C. §1331 serves as the
jurisdictional basis for federal courts "to review agency action." *Califano v. Sanders*, 430 U.S. 99,
105 *(1977)*; *see also Bowen v. Massachusetts*, 487 U.S. 879, 891 n.16 (1988) ("[I]t is common
ground that if review is proper under the APA, the District Court has jurisdiction under 28 USC §
1331"). Courts of Appeals uniformly agree that 28 U.S.C. § 1331 is the jurisdictional basis for a
suit to review agency action under the APA. *See, e.g., Ana International Inc. v. Way*, 393 F.3d
886, 890 (9th Cir. 2004) (finding that this rule applies in the immigration context); *Yeboah v. U.S.
DOJ*, 345 F.3d 216, 220 (3d Cir. 2003) (SIJS visa case); *Sabhari v. Reno*, 197 F.3d 938, 943 (8th
Cir. 1999) (immigrant visa case); *Sigman Coal Co. v. Apfel*, 226 F.3d 291, 301 (4th Cir. 2000);
*Dixie Fuel Co. v. Comm'r of Social Security*, 171 F.3d 1052, 1057 (6th Cir. 1998); *Trudeau v.
FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006).

Here,  Plaintiffs seek review of actions of Defendants' denial of issuance of immigrant visas although Plaintiffs are exactly the class of people the waiver was designed to protect and they have clearly demonstrated that they meet the requirements for a waiver under the PP, including medical emergencies, financial hardship, and family separation.  The APA states that a person who is suffering a legal wrong because of agency action, or who is adversely affected by agency action within the meaning of a relevant statute, is entitled to judicial review.  5 U.S.C § 702.  "Agency action" is defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).  Plaintiffs' claims are against officers and employees of the United States and agencies thereof.  As such, this Court has jurisdiction over the instant action.

## V.     STANDARD FOR PRELIMARY INJUNCTION

Plaintiffs are seeking preliminary injunctive relief. The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985). A party seeking to obtain a preliminary injunction must establish that it will (1) suffer irreparable harm in the absence of an injunction and (2) demonstrate either "a likelihood of success on the merits" or "sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of the hardships tipping decidedly" in favor of the movant. *Jolly v. Coughlin*, et al., 76 F.3d 468, 1996 U.S. App. LEXIS 1757, 10, 1996 WL 49162, at 4 (2d Cir. 1996); *Waldman Publishing Corp. v Landoll, Inc.*, 43 F.3d 775, 779-80 (2d Cir. 1994); *Coca-Cola Co. v. Tropicana Prods., Inc.,* 690 F.2d 312, 314-15 (2d Cir. 1982).

A heightened standard applies when the injunction sought (1) will alter, rather than maintain, the status quo that is, a "mandatory" rather than "prohibitory" injunction; or (2) will provide the movant with substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits. *Jolly*, 76 F.3d 468, 1996 U.S. App. LEXIS 1757, 11, 1996 WL 49162, at 4 (citing *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995)).  In such cases, the movant must make a "clear" or "substantial" showing of a likelihood of success and a strong showing of irreparable harm. *Doe v. New York University*, 666 F.2d 761, 773 (2d Cir. 1981).

## VI.   ARGUMENT

### A.  PLAINTIFFS HAVE SUFFERED, AND CONTINUE TO SUFFER IRREPARABLE HARM

Plaintiffs suffer and will continue to suffer extreme and irreparable harm if Defendants continue to deny and unreasonably delay Plaintiffs their immigrant visas.  A showing of probable irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) (citations omitted).  Plaintiffs must demonstrate that such injury is "imminent, not remote or speculative," *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989), and that the alleged injury cannot be fully remedied by monetary damages.  *Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 917-18 (2d Cir. 1986). The law in this Circuit requires a strong showing of irreparable injury where mandatory injunctive relief is sought. *Doe*, 666 F.2d at 773; *Pazer v. N.Y. State Board of Law Examiners*, 849 F. Supp. 284, 287 (S.D.N.Y. 1994).

Plaintiffs have been separated from their families and loved ones, they have faced extreme financial hardship, their homes and hometowns have been destroyed by the war in Yemen, and

they are suffering medical emergencies including life threatening tumors, cancer, gastrointestinal issues, difficulty breathing, and physical disabilities.  Defendants' actions are keeping Plaintiffs separated from their families and denying them access to appropriate treatment and facilities for their severe and life-threatening medical conditions.  Absent intervention from this Court, Plaintiffs will continue to suffer from a lack of appropriate medical care, financial hardship, and the impacts associated with family separation including depression, loneliness, stress, and anxiety.

### B.  PLAINTIFFS DEMONTRATE A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS

**1.    Plaintiffs will Likely Prevail on their Claim that Defendants' Denial of Immigrant Visas to Plaintiffs is an Arbitrary and Capricious Abuse of Discretion, not in Accordance with the Law, and without Observance of Procedure in Violation of Plaintiffs' Rights Under the APA**

The APA provides a waiver of sovereign immunity that allows a person to sue the federal government over unlawful agency action for non-monetary damages.  5 U.S.C. § 702.  The sovereign immunity waiver found in the APA applies to suits that seek relief other than money damages, which generally includes suits for injunctive and declaratory relief.  *See, e.g., Trudeau* 456 F.3d 178, 186 (D.C. Cir. 2006); *Sabhari v. Reno,* 197 F.3d 938, 943 (8th Cir. 1999) (challenge to the denial of an immigrant visa petition); *Shah v. Chertoff,* No. 3:05-CV-1608-BH (K) ECF, 2006 U.S. Dist. LEXIS 73754, (N.D. Tex. 2006) (challenge to denial of an L-1A visa extension).

Pursuant to the APA, a person who is suffering a legal wrong because of agency action, or who is adversely affected by agency action within the meaning of a relevant statute, is entitled to judicial review.  5 USC §702.  "Agency action" is defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 USC §551(13).  Thus an agency action may include the denial of a visa petition or an application

for adjustment, for example.  It can also include the agency's failure to adjudicate a visa petition or adjustment application.  Additionally, a number of courts have held that the statute must clearly grant discretion to the Department of Homeland Security ("DHS"); thus, because the INA does not grant DHS discretion to deny an I-130 visa petition, these courts concluded that INA § 242(a)(2)(B)(ii) does not bar review of such denials. *See, e.g., Ginters v. Frazier,* 614 F.3d 822 (8th Cir. 2010); *Ruiz v. Mukasey,* 552 F.3d 269 (2d Cir. 2009); *Ayanbadejo v. DHS*, 517 F.3d 273 (5th Cir. 2008.  The Eleventh Circuit has similarly found that a district court retained review under INA § 242(a)(2)(B)(ii) over statutory eligibility issues related to Temporary Protected Status (TPS) although the ultimate grant of TPS was within the unreviewable discretion of DHS.  *Mejia Rodriguez v. DHS,* 562 F. 3d 1137 (11th Cir. 2009).

Further, the APA prohibits federal agency action that is "arbitrary and capricious," an abuse of discretion, or "not in accordance with the law," or conduct "without observance of procedure required by law." 5 U.S.C. § 706(2).   The Supreme Court confirmed that exceptions to judicial review under the APA are to be read narrowly, and that many actions "committed to agency discretion" nonetheless remain reviewable in *Weyerhaeuser Co. v. United States Fish and Wildlife Service, et al.* 139 S. Ct. 361 (2018).  The Court stated that although "use of the word 'may' certainly confers discretion on the agency," such discretion is not unfettered, and does not eliminate the requirement that the agency abide by the mandates of the applicable law.  *Id.* at 371. Accordingly, agency actions in implementing the waiver provisions of the Proclamation are reviewable because the Proclamation provides clear standards against which to judge the agency's actions.

Defendants have a non-discretionary duty under the Proclamation to develop standards to guide visa applicants in compiling their applications for waivers and for consular officers to

reference in adjudicating waiver and visa applications.  Presidential Proclamation No. 9645, 82 Fed. Reg. 45161 (Sept. 27, 2017), 3(c).  Defendants have failed to promulgate such guidance and have nonetheless proceeded in denying or stalling waivers and visas.  Defendants have also failed to follow existing procedures prescribed by the INA, implementing regulations, and the FAM in issuing these denials. Rather than looking at Plaintiffs' visa applications and reviewing waivers on a "case-by-case basis" Defendants are issuing blanket waiver denial letters containing boilerplate language (see Exhibit M), not looking at Plaintiffs' documentation providing proof of their eligibility for waivers, and flat out denying waivers without providing explanations or guidance on where to go to receive a waiver.  (See Exhibits DD1-DD3).   In failing to develop or follow any procedures, Defendants have acted arbitrarily and capriciously and in contravention of the Proclamation, the INA, and the U.S. Constitution, and they have thus violated the APA. Defendants have also failed to follow their own stated policy by failing to create an orderly process for waiver applications and by failing to consider all visa applicants for a waiver.

Defendants' violations of these laws have harmed and continue to harm Plaintiffs by exposing them to economic loss and indefinitely denying them access to their families and adequate medical care.  For the above stated reasons, Plaintiffs will likely prevail on their claim that Defendants' denial of immigrant visas to Plaintiffs is an arbitrary and capricious abuse of discretion, not in accordance with the law, and without observance of procedure in violation of Plaintiffs' rights under the APA.

**2.       Plaintiffs will Likely Prevail on their Claim that Defendants' Denial of Plaintiffs' Immigrant Visas is in Violation of the INA, the FAM, and the Fifth Amendment Due Process Clause of the U.S. Constitution**

The INA prohibits discrimination in the issuance of immigrant visas based on nationality, place of birth, or place of residence.  8 U.S.C. § 1152(a)(1)(A).  The INA's implementing

77

regulations specify the procedures for issuance or denial of a visa.  22 C.F.R. 42.81; 22 C.F.R. 41.121; 22 C.F.R. § 40.6.  Under these regulations, a denial must be based on legal grounds and made in conformance with the INA. In denying waivers and visas to Plaintiffs based on their country of origin or nationality, Defendants have acted arbitrarily and capriciously and not in accordance with the INA. Defendants' actions have resulted in the indefinite—and possibly permanent—separation of U.S. citizens and U.S. LPRs from their family members in contravention of Congress' purpose in enacting the INA: promoting family reunification. Defendants' conduct is in not in accordance with the INA.

Pursuant to the Foreign Affairs Manual, "decisions to issue or refuse an immigrant visa application must be based on personal interview, during which the consular officer must ensure that all required documentation has been provided, that there is a legal basis for the applicant to immigrate, and that there are no ineligibilities that would affect visa issuance." *See* 9 FA.M 504.l3(e)(l).  Upon completion of the immigrant visa interview, the consular officer is tasked with making the determination as to whether the applicant shall be issued a visa or refused.  "Once an application has been executed, the consular officer must either issue the visa or refuse it.  A consular officer cannot temporarily refuse, suspend, or hold the visa for future action.  If the consular officer refuses the visa, he or she must inform the applicant of the provisions of law on which the refusal is based, and of any statutory provision under which administrative relief is available." *See* 9 FAM 504.13(f) (emphasis added).

Procedural Due Process requires that procedural application of the law be fair and just, such that individuals are not subjected to the arbitrary exercise of governmental authority. Accordingly, Procedural Due Process requires that an individual be entitled to notice and an opportunity to be heard before the government can lawfully deprive him or her of an interest that

is protected under the Due Process Clause, to wit: life, liberty or property.  *See* U.S. Con. Amend V.  These rights extend to U.S. citizens, LPRs, and foreign nationals.  *See Ferreras v. Ashcroft,* 160 F. Supp. 2d 617, 629 (S.D.N.Y 2001) (holding that even aliens who have not achieved LPR status have been held entitled to protection under the Fifth Amendment's Due Process Clause). Due process rights are implicated by the deprivation of a fundamental liberty interest, e.g., family integrity, and they may also arise from statute.  *See Lanza v. Ashcroft,* 389 F.3d 917, 927 (9th Cir. 2004) ("The due process afforded aliens stems from those statutory rights granted by Congress and the principle that '[m]inimum due process rights attach to statutory rights.'") (Alteration in original) (quoting *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003).  The INA and its implementing regulations mandate various procedures for the processing of visas, procedures which Defendants have failed to follow.

The Due Process Clause of the Fifth Amendment of the U.S. Constitution further guarantees all individuals equal protection under the law.  The blanket denials of visas to applicants from banned countries without the opportunity to demonstrate their eligibility for a waiver from the Proclamation, together with the statements and actions of Defendants concerning their anti-Muslim and anti-immigration intent and the application of the travel ban (see Exhibits O-T), makes clear that Defendants are targeting individuals for discriminatory treatment based on their country of origin or nationality, without any lawful justification.

In addition, Plaintiffs have a constitutionally protected liberty interest in making personal choices regarding family matters in a manner that is free from unjustifiable government interference in said choices.  *See, e.g., Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) (reaffirming substantive due process rights that protect recognized liberty interests—such as life choices concerning family relationships and childrearing, and decisions concerning marriage—against

government deprivation).  Plaintiffs' fundamental rights include their right to the "integrity of the family unit." *Stanley v. Illinois,* 405 U.S. 645, 651 (1972). Defendants' improper denial of immigrant visas despite the fact that Plaintiffs qualify for waivers under the Proclamation constitutes a de facto deprivation of Plaintiffs' constitutionally protected liberty interests under the Fifth Amendment of the United States Constitution.  The implementation of the waiver provision under the Proclamation directly and substantially infringes on Plaintiffs' fundamental rights.

The Due Process Clause forbids Defendants from infringing on Plaintiffs' fundamental rights unless the infringement is narrowly tailored to serve a compelling governmental interest. As applied, the Proclamation's waiver provision fails this test.  It is not narrowly tailored and it operates to block nearly all persons from banned countries from entry into the United States, regardless of whether they meet the criteria for a waiver grant.  Defendants' decisions, actions and/or inaction relating to unlawful and improper decisions regarding Plaintiffs' visa applications have deprived Plaintiffs of their liberty interest in making personal choices regarding family matters in a manner that is free from unjustifiable government interference in said choices.  As a result of Defendants' actions and/or inactions regarding the waiver under the Proclamation, Plaintiffs have been separated from their families for years, causing extreme financial and emotional hardship and stress.

Defendants have failed to follow existing procedures prescribed by the INA and implementing regulations and the FAM in issuing visa denials.  In failing to develop or follow any procedures, and instead basing their decisions on applicants' country of origin or nationality, Defendants have violated the INA.   In addition, Defendants have deprived Plaintiffs of the above-described fundamental liberty interest without first supplying a legitimate governmental interest as a reason for taking the herein-alleged actions and/or failure to act.  Defendants' actions and/or

inaction in arbitrarily depriving Plaintiffs of the liberty interest described herein violate their Substantive Due Process rights under the Fifth Amendment.

Defendants' violations of these laws have harmed and continue to harm Plaintiffs by exposing them to economic loss and indefinitely denying them access to their families and adequate medical care.  For the above stated reasons, Plaintiffs will likely prevail on their claim that Defendants' denial of immigrant visas to Plaintiffs is in violation of the INA, the FAM, and the Fifth Amendment Due Process Clause of the U.S. Constitution.

### 3. Plaintiffs will Likely Prevail on their *Bivens* Claim Against Defendants Miller, Whitaker, Pompeo, Nielsen, Cissna, McAleenan, Coats, Kennington, and Godbey for Violating Plaintiffs' Constitutional Rights

Individuals—including noncitizens or those whom the government perceives to be noncitizens—are entitled to a judicial remedy for conduct by federal agents that violates the U.S. Constitution under the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). *Bivens* allows individuals to bring claims against government actors in their individual capacity based on their actions even if committed within the scope of their job.  *Schweitzer v. Dep't of Veterans Affairs*, 23 F. App'x 57, 59 (2d Cir. 2001), *cert. denied*, 535 U.S. 955, 122 S. Ct. 1359, 152 L. Ed. 2d 355 (2002) (Mem.) ("Bivens actions' for damages against federal officers have . . . been permitted for violations of the Due Process Clause of the Fifth Amendment . . . ." (*citing Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979)).

Courts have held that if Plaintiffs wish to bring a constitutional tort claim based on the alleged assault at an Embassy, they must name or describe the *individual federal officials* involved. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir.

1994)) ; *see also Harrison v. New York*, 95 F. Supp. 3d 293, 316 (E.D.N.Y. 2015) (dismissing *Bivens* claims against a federal agency for lack of subject matter jurisdiction); *Sereika v. Patel*, 411 F. Supp. 2d 397, 402 (S.D.N.Y. 2006) (same).  Plaintiffs have identified the government agencies and specific individuals, namely Defendants Miller, Whitaker, Pompeo, Nielsen, Cissna, McAleenan, Coats, Kennington, and Godbey, and detail below their actions and inactions including abuse of Plaintiffs and other U.S. citizens and their beneficiaries at the U.S. Embassy in Djibouti, which constitute a violation of Plaintiffs' constitutional rights.

Plaintiffs have a constitutional right to clear information and guidance from Defendants regarding what qualifies for a waiver under the Proclamation and to have their immigrant visa applications adjudicated within a reasonable amount of time under the Fifth Amendment to the United States Constitution.

Defendants Miller, Whitaker, Pompeo, Nielsen, Cissna, McAleenan, Coats, Kennington, and Godbey's conduct was done intentionally, with deliberate indifference, or, at a minimum, with reckless disregard of Plaintiffs' constitutional rights.  Defendants Miller, Whitaker, Pompeo, Nielsen, Cissna, McAleenan, Coats, Kennington, and Godbey's conduct was unreasonable, arbitrary, and capricious.  Defendants Miller Whitaker, Pompeo, Nielsen, Cissna, McAleenan, and Coats can claim no immunity as they are ethically bound by their position to act in accordance with applicable law while in their positions working for the government of the United States of America. Defendants Kennington and Godbey can claim no immunity as they are ethically bound by their position to act in accordance with applicable law while at their posts at U.S. Embassies abroad on what has definitively been deemed U.S. soil.

Defendants Miller, Whitaker, Pompeo, Nielsen, Cissna, McAleenan, Coats, Kennington, and Godbey acted under color of law and acted or purported to act in the performance of official

duties under the law, as federal agents.  There is no statutory cause of action or alternate remedial relief available that addresses this misconduct either directly under the Constitution, or under any administrative processes emanating therefrom.

**A.     Defendants Miller, Whitaker, Pompeo, Nielsen, Cissna, McAleenan, and Coats Are Involved in the Drafting, Implementation, and Enforcement of the Proclamation, a Blatantly Racist and Discriminatory Policy, Targeting Immigrants from Muslim Countries and Violates Plaintiffs' Constitutional Rights**

Defendant Miller played a significant role in the drafting of the Proclamation.  He has also been a staunch advocate of restricting entry and migration of Muslims to the United States.  He often uses psychological tactics to deter immigration such as leading meetings with horror stories of Americans being victimized by noncitizens in order to push his anti-immigrant and anti-Muslim agenda.  (See Exhibit S).

Defendants Whitaker, Pompeo, Nielsen, Cissna, McAleenan, and Coats are all responsible for the implementation and enforcement of the Proclamation, a blatantly racist and discriminatory policy, which targets immigrants from Muslim countries and is essentially a Muslim ban.  In addition, they have repeatedly failed to provide meaningful guidance on the waiver process thereby discriminating against people from Muslim majority countries by prohibiting them from obtaining immigrant visas although they qualify for waivers.

By failing to provide meaningful guidance for how to qualify for a waiver under the Proclamation, Defendants Miller, Whitaker, Pompeo, Nielsen, Cissna, McAleenan, and Coats have departed from statutory procedure and deprived Plaintiffs of their statutory and constitutionally protected rights under the Fifth Amendment to the United States Constitution.  *See* Proclamation § 3(c) (instructing that "[t]he Secretary of State and the Secretary of Homeland

Security shall coordinate to adopt guidance addressing the circumstances in which waivers may be appropriate for foreign nationals seeking entry as immigrants or nonimmigrants.")

Defendant Nielsen has lied about the Trump Administration's family separation and anti-immigrant policies as detailed in her tweet stating: "We do not have a policy of separating families at the border.  Period."  (See Exhibit U).  This statement directly contradicts Defendants' anti-immigrant policy and intentions of separating families at the border as exhibited in a recently released draft report detailing Defendants' plan to separate children from their families and deport them without asylum hearings.  (See Exhibit T).

Defendants Miller, Whitaker, Pompeo, Nielsen, Cissna, McAleenan, and Coats are purposely depriving Plaintiffs of their constitutional rights in order to further their agenda to keep Muslims out of the United States.  Defendants Miller, Whitaker, Pompeo, Nielsen, Cissna, McAleenan, and Coats' conduct proximately caused harm to Plaintiffs because their actions and inactions in implementing and enforcing the Proclamation as well as their lack of clear guidance on the waiver process has denied Plaintiffs the opportunity to receive immigrant visas although they all qualify due to extreme hardship.  As a result of Defendants' unreasonable denials and delays in the adjudication of their immigrant visas, Plaintiffs have been separated from their families and loved ones for years, suffered extreme financial hardship, and been prohibited them from receiving timely and adequate medical care for life threatening medical conditions. Defendants' actions have harmed and continue to harm Plaintiffs by exposing them to economic loss and indefinitely denying them access to their families and adequate medical care.  For the above stated reasons, Plaintiffs will likely prevail on their claim that Defendants' actions violate Plaintiffs' constitutional rights.

**B.     Defendants Kennington, and Godbey's Abusive and Discriminatory Behavior Against Plaintiffs in the Issuance of Visas Based on Nationality, Their Failure to Properly Apply Waivers Under the Proclamation, and their Failure to Provide Guidance on the Waiver Process Violates Plaintiffs' Constitutional Rights**

State Department regulations impose an unequivocal mandatory duty upon consular officers to issue a decision on a visa application as well as reconsideration of a refused visa application. 22 C.F.R. § 42.81(a) states, "When a visa application has been properly completed and executed . . . the consular officer *must* either issue or refuse a visa under INA 212(a) or INA 221(g) or other applicable law."  (Emphasis added).  If a visa is refused, and the applicant provides evidence tending to overcome the ground of ineligibility on which the refusal was made, "the case shall be reconsidered." 22 C.F.R. § 42.81(e).

Defendants Kennington and Godbey are purposely, maliciously, and unlawfully depriving Plaintiffs of their statutory and constitutional rights by issuing blanket denials of waivers to Plaintiff-Beneficiaries and their families who all qualify for waivers under the Proclamation and refusing to answer their questions about what qualifies for a waiver.  *See* 9 FAM 5 04.13 (f) ("If the consular officer refuses the visa, he or she must inform the applicant of the provisions of law on which the refusal is based, and of any statutory provision under which administrative relief is available").  In addition, as discussed above, Defendants Kennington and Godbey are refusing to take documents and other evidence from Plaintiffs which prove they qualify for a waiver under the Proclamation and consider waivers, thereby denying Plaintiffs of their right to Due Process under the Fifth Amendment of the United States Constitution.  (See Exhibits DD1-DD3).

Plaintiffs will likely prevail on their claim that Defendants Kennington and Godbey's abusive and discriminatory behavior against Plaintiffs in the issuance of visas based on nationality, their failure to properly apply waivers under the Proclamation, and their failure to provide guidance

on the waiver process constitutes a violation of constitutional rights and therefore Plaintiffs are entitled to relief pursuant to *Bivens*.

Defendants Kennington and Godbey's conduct proximately caused harm to Plaintiffs because their actions and inactions in denying waivers under the Proclamation as well as their lack of clear guidance on the waiver process and refusal to accept Plaintiffs' documents has denied Plaintiffs the opportunity to receive immigrant visas although they all qualify due to extreme hardship.  As a result of Defendants' unreasonable denials and delays in the adjudication of their immigrant visas, Plaintiffs have been separated from their families and loved ones for years, suffered extreme financial hardship, and been prohibited them from receiving timely and adequate medical care for life threatening medical conditions.

## VII.   THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN FAVOR OF PLAINTIFFS

Plaintiffs will suffer irreparable harm if the requested emergency relief is not granted. Many of the named Plaintiffs in this case are suffering extreme medical emergencies, including brain tumors, cancer, kidney and stomach issues, difficulty breathing, and digestive issues and need proper medical attention.  Plaintiffs have been separated from their families for an unreasonable amount of time, and many have not seen their families for years.  Many of the families have suffered and continue to suffer emotional and financial hardships as a result of the separation.  The cost of living in Djibouti while awaiting visa processing is overly burdensome. These hardships have caused undue stress and anxiety for Plaintiffs, causing many to seek medical attention and medication.

In addition, the waiver process under the Proclamation violates the APA, the INA, and Fifth Amendment procedural and substantive due process rights in that it is discriminatory,

arbitrary and capricious, not narrowly tailored and serves no compelling government interest, and deprives Plaintiffs of their fundamental liberty interests such as integrity of the family. Conversely, Defendants will not suffer any hardship if Plaintiffs' request for declaratory judgment for expedited visa processing is approved.

## VIII.   CONCLUSION

In light of the foregoing, Plaintiffs respectfully submit that they have met the requisite showing for the relief requested, and respectfully request this Court to issue a temporary restraining order and/or preliminary injunction against Defendants and enjoin Defendants from unlawfully and discriminatorily denying Plaintiffs their visas.  In addition, Plaintiffs respectfully request this Court to issue a declaratory judgment ordering Plaintiffs to expedite the process of issuing Plaintiffs visas and issue all Plaintiffs immigrant visas pursuant to the waiver under the Proclamation within 15 days whereas Plaintiffs have all met the requirements to qualify for a waiver.  Plaintiffs have demonstrated that they will likely prevail on their claim that Defendants' actions denying Plaintiffs immigrant visas under the Proclamation waiver is in violation of the APA, the INA, and violates Plaintiffs' procedural and substantive due process rights under the Fifth Amendment.  Plaintiffs have also demonstrated that they will likely prevail on their *Bivens* claim against Defendants Miller, Whitaker, Pompeo, Nielsen, Cissna, McAleenan, Coats, Kennington, and Godbey whose conduct was done intentionally, with deliberate indifference, or, at a minimum, with reckless disregard of Plaintiffs' constitutional rights.  Further, Plaintiffs have demonstrated that they will suffer irreparable and unconscionable harm if their immigrant visas are not issued immediately, whereas Plaintiffs all have urgent circumstances that qualify them for a waiver under the Proclamation, including the need for urgent medical care in the U.S., the need

to be with their families following years of separation, and financial hardship as a result of being

stuck abroad, and in Djibouti in particular, awaiting the processing of their visas.  Due to these

reasons, the balance of hardships tips decidedly in Plaintiffs' favor.  Accordingly, this Court should

enter a preliminary injunction.


Dated: Bronx, NY

     February 12, 2019                 Respectfully submitted,


                                             _____ /s/ Julie. Goldberg _____
                                             Julie Goldberg, Esq.
                                             Mehgan Gallagher, Esq.
                                             Goldberg and Associates P.C.
                                             5586 Broadway, Third Floor
                                             Bronx, New York 101463
                                             Tel: (718) 432-1022
                                             E-mail: uscis@goldbergimmigration.com
                                             *Attorney for the Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the date indicated below, I caused service of the foregoing NOTICE OF MOTION AND MOTION FOR EMERGENCY WRIT OF MANDAMUS AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <u>via hand delivery</u> on February 12, 2019 to Susan L. Riley, Chief, Civil Division, United States Attorney's Office, Eastern District of New York, 271 Cadman Plaza East, 7th Floor, Brooklyn, NY  11201.

　　　　　　　　　　　_____/s/ Julie Goldberg_____
　　　　　　　　　　　Julie Goldberg, Esq.
Goldberg and Associates P.C.
5586 Broadway, Third Floor
Bronx, New York 101463
Tel: (718) 432-1022
E-mail: uscis@goldbergimmigration.com
*Attorney for the Plaintiffs*