**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Suood **ALMERDAEI**, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) **No. 19-CV-830 (WFK)** |
| *v.* | ) |
| | ) **(Kuntz, J.)** |
| Donald J. **TRUMP**, *et al.*, | ) |
| | ) |
| *Defendant*s. | ) |
| | ) |

## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

F. FRANKLIN AMANAT
Senior Counsel

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section

GISELA A. WESTWATER
Assistant Director
STACEY I. YOUNG
Senior Litigation Counsel

ARCHITH RAMKUMAR
Trial Attorney
Office of Immigration Litigation
District Court Section

*Attorneys for Defendants*

**Filed:  February 18, 2019**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ............................................................................................................... 2

ARGUMENT .................................................................................................................... 7

I.   APPLICABLE STANDARD.......................................................................................... 7

II.  THE MOTION IS PROCEDURALLY IMPROPER BECAUSE IT SEEKS THE
EQUIVALENT OF FINAL JUDGMENT ON THE MERITS ................................................ 8

III. PLAINTIFFS HAVE FAILED TO DEMONSTRATE A SUBSTANTIAL
LIKELIHOOD OF SUCCESS ON THE MERITS ............................................................ 10

    A.   Plaintiffs Have Failed To Demonstrate a Substantial Likelihood of Success on their
APA and Mandamus Claims....................................................................................... 10

    B.   Plaintiffs Have Not Shown a Substantial Likelihood of Success Under Their Claim
Arising Under The INA .............................................................................................. 17

    C.   Plaintiffs Have Not Shown a Substantial Likelihood of Success on Their Procedural
Due Process Claim, Their Substantive Due Process Claim, or Their Ninth Amendment
Claim........................................................................................................................ 18

IV. THE REMAINING PRELIMINARY INJUNCTION FACTORS DO NOT SUPPORT
GRANTING PLAINTIFFS' MOTION ............................................................................ 21

CONCLUSION................................................................................................................ 24

## TABLE OF AUTHORITIES

**Cases**

*Abdo v. Tillerson*, 17 Civ., 7519 (PGG), 2019 WL 464819 (S.D.N.Y. Feb. 5, 2019)................. 11

*Air Transport Ass'n of Am. v. F.A.A.*, 169 F.3d 1 (D.C. Cir. 1999) ............................................ 12

*Allco Finance Ltd. v. Klee*, 805 F.3d 89 (2d Cir. 2015)................................................................. 13

*Am. Soccer League, LLC v. U.S. Soccer Federation, Inc.*,296 F. Supp. 3d 442 (E.D.N.Y. 2017). 8

*Bakran v. Sec., U.S. Dep't of Homeland,Sec.*, 894 F.3d 557 (3d Cir. 2018) ............................... 20

*Bangura v. Hansen*, 434 F.3d 487 (6th Cir. 2006) ...................................................................... 21

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1981)
............................................................................................................................................ 5, 21

*Burrafato v. U.S. Dep't of State*, 523 F.2d 554 (2d Cir. 1975).................................................... 20

*Cheney v. U.S. Dist. Court for Dist. Of Columbia*, 542 U.S. 367 (2004)..................................... 15

*Coalition of Watershed Towns v. U.S. E.P.A.*, 552 F.3d 216 (2d Cir. 2008)............................... 13

*Emami v. Nielsen*, No. 18-cv-10587-JD, 2019 WL 428780 (N.D. Cal. Feb. 4, 2019) ..... 18, 20, 21

*Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009)..................... 21, 22

*Foad v. Holder*, No. 13-cv-6049, 2015 WL 1540522 (E.D.N.Y. Apr. 7, 2015) ......................... 11

*Franklin v. Massachussetts*, 505 U.S. 788 (1992) ....................................................................... 12

*Gebhardt v. Nielsen*, 879 F.3d 980 (9th Cir. 2018) ..................................................................... 20

*Gong v. Duke*, 282 F. Supp. 3d 566, 568 (E.D.N.Y. 2017) .................................................. 15, 16

*Hoo Loo v. Ridge*, No. 04-5553, 2007 WL 813000 (E.D.N.Y. Mar. 14, 2007) .......................... 15

*Hsieh v. Kiley*, 569 F.2d 1179 (2d Cir. 1978)............................................................................. 10

*Kerry v. Din*, 135 S.Ct. 2128 (2015).................................................................................... 19, 20

*Khanom v. Kerry*, 37 F. Supp. 3d 567 (E.D.N.Y. 2014)......................................................... 10, 11

*L.M. v. Johnson*, 150 F. Supp. 3d 202 (E.D.N.Y. 2015)......................................................... 15, 16

*LG Capital Funding, LLC v. Positive ID Corp.*, No. 17-cv-1297 (NCG), 2017 WL 2556991 (E.D.N.Y. June 12, 2017) ............................................................................... 8, 22

*Moore v. Consolidated Edison Co. of N.Y., Inc.*, 409 F.3d 506 (2d Cir. 2005) ............................ 7

*Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625 (MKB), 2013 WL 3968748 (E.D.N.Y. July 30, 2013) ......................................................................................................... 17, 18

*Munaf v. Green*, 553 U.S. 675 (2008) ............................................................................ 7

*N.Y. Progress and Protection PAC v. Walsh*, 733 F.3d 483 (2d Cir. 2013) ............................. 7, 8

*Noel v. Chapman*, 508 F.2d 1023 (2d Cir. 1975) ......................................................... 20

*Patel v. Rodriguez*, No. 15-cv-486, 2015 WL 6083199 (N.D. Ill. Oct. 13, 2015) ................. 15, 16

*Pesantez v. Johnson*, No. 15 Civ. 1155 (BMC), 2015 WL 5475655 (E.D.N.Y. Sept. 17, 2015) ..... ................................................................................................................... 14, 15, 16

*Pittson Coal Grp. v. Sebben*, 488 U.S. 105 (1988) ................................................... 14, 15

*Saleh v. Holder*, 84 F. Supp. 3d 135 (E.D.N.Y. 2014) ................................................. 10

*Saleh v. Ridge*, 367 F. Supp. 2d 508 (S.D.N.Y. 2005) ................................................. 15

*Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432 (E.D.N.Y. 2013) .......................... 7

*Stagg P.C. v. U.S. Dep't of State*, 158 F. Supp. 3d 203 (S.D.N.Y. 2016) ..................... 23

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004) ................................... 8

*Sussman v. Crawford*, 488 F.3d 136 (2d Cir. 2007) ................................................. 7

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995) ............... 7, 8, 9

*Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005) ................................. 18

*Trump v. Hawaii*, 138 S.Ct. 2392 (2018) ........................................................ *passim*

*Winter v. NRDC*, 555 U.S. 7 (2008) ............................................................... 7

*Zhang v. USCIS*, No. 05 Civ. 4086 (RJH) (AJP), 2005 WL 3046440 (S.D.N.Y. Nov. 8, 2005) . 21

## Statutes

5 U.S.C. § 702 ....................................................................................... 12

8 U.S.C. § 1152(a)(1)(A) ................................................................................................................ 17

**Rules**

Fed. R. Civ. P. 25(d) ....................................................................................................................... 6

**Executive Directives**

Presidential Proclamation 9645 ("the Proclamation"), 82 Fed Reg. 45161 (Sep. 27, 2017)
................................................................................................................................................. *passim*

## PRELIMINARY STATEMENT

The extraordinary scope of the preliminary injunction that Plaintiffs seek cannot be overstated.  Though styled as a motion for preliminary relief, Plaintiffs are effectively seeking final judgment from this Court—even though this case is in its infancy, with the Complaint filed a week ago.  Plaintiffs ask this Court to order that the Government abandon the orderly processing of visa cases; to prioritize processing Plaintiffs' cases at the expense of thousands of other visa applicants waiting in line for a waiver; and to short-circuit the deliberate vetting process that is necessary to ensure that no national security concerns are implicated when an alien first enters the United States. *See* Dkt. 24 at 87 ("Plaintiffs … request this Court to issue a  declaratory judgment … to expedite the process of issuing Plaintiffs visas and issue all Plaintiffs immigrant visas … within 15 days."). To grant such a request would not only be unprecedented, but unfounded. Plaintiffs have fallen far short of showing that any of their claims are even plausibly pled, let alone substantially likely to succeed, the standard Plaintiffs are required to meet in order for this Court to grant Plaintiffs' motion for a mandatory injunction that would alter the status quo.  Many of Plaintiffs' various challenges to Presidential Proclamation 9645 ("the Proclamation") and its accompanying waiver regime are squarely foreclosed by the recent Supreme Court decision in *Trump v. Hawaii*, 138 S.Ct. 2392 (2018).  To the extent Plaintiffs are challenging Consular Officers' case-by-case discretionary decision to grant or deny waivers pursuant to the Proclamation, none of Plaintiffs' claims are cognizable.  By itself, this suffices to deny Plaintiffs' motion in its entirety.

Even if this Court were to reach the remaining factors in the preliminary injunction calculus—which is unnecessary since Plaintiffs have not demonstrated the requisite likelihood of success on the merits of their legal claims—Plaintiffs have still not shown an entitlement to a preliminary injunction.  The balance of equities favors denying Plaintiffs' motion, for multiple

reasons: the majority of Plaintiffs have not exhausted the normally-available procedures for requesting expedited processing of visa cases; expediting Plaintiffs' visa cases would displace others who are also seeking visa issuance; and it appears that the substantial majority of Plaintiffs have been waiting less than 14 months (and the majority less than that), for the administrative processing of their waiver applications, including national security vetting, to conclude. Conversely, if Plaintiffs' motion were granted, then the careful safeguards imposed by the Proclamation's waiver scheme would be vitiated at the expense of national security and thousands of other visa applicants whose waiver applications are also being processed. The conditions underlying Plaintiffs' demands for urgency have been known for months, if not years, yet the Complaint was only filed last week. Indeed, this is precisely one of the reasons why Plaintiffs' request for a Temporary Restraining Order ("TRO") was denied, in conjunction with Plaintiffs' inability to demonstrate irreparable harm.[1] Accordingly, this Court should deny Plaintiffs' motion.

## BACKGROUND

At issue is the implementation of the Proclamation, and specifically, the waiver process it sets forth. The Proclamation suspends entry into the United States of nationals of a number of identified countries of concern, including, as relevant here, Yemen. *See* 82 Fed. Reg. 45161, 45166, § 2(g) (Sept. 27, 2017). "Notwithstanding the suspensions of and limitations on entry set forth in section 2" of the Proclamation, a consular officer "may, in [his/her] discretion grant waivers on a case-by-case basis to permit the entry of foreign nationals for whom entry is otherwise suspended." *Id.* at 45168, § 3(c). Thus, applicants from the enumerated countries of concern: (1) apply for a visa, and if the visa applicant is subject to the Proclamation and that is the only basis

---

[1] *See* Dkt. 22-1 at 22-23, 26.

for refusal, then the applicant is refused accordingly and. (2) they are then automatically considered for a waiver.

Visa applicants bear the burden of "demonstrat[ing] that waivers would be appropriate" and a "waiver may be granted only if a foreign national demonstrates" that: (1) denying entry would cause undue hardship; (2) entry would be in the national interest of the United States; and (3) entry would not pose a threat to the national security or public safety of the United States. *Id.* The third component of this process—determining whether or not allowing an individual to enter the United States implicates concerns of national security—can be time consuming, with good reason.  The lengthy security checks entailed by the case-by-case process in evaluating waiver eligibility is necessary to ensure that the goals of the Proclamation are furthered, namely detecting "foreign nationals who may commit, aid, or support acts of terrorism, or otherwise pose a safety threat."  82 Fed. Reg. at 45162, § 1.

As is explained in the Department of State's publicly-accessible guidance, there is no separate application for a waiver; an "individual who seeks to travel to the United States should apply for a visa and disclose during the visa interview any information that might demonstrate that he or she is eligible for a waiver."  United States Department of State – Bureau of Consular Affairs, June 26 Supreme Court Decision on Presidential Proclamation 9645("State Dep't Website").[2]  The Proclamation provides a list of non-exhaustive examples elucidating when a waiver "may be appropriate" but is clear that "[c]ase-by-case waivers may not be granted categorically."  82 Fed. Reg. at 45168, § 3(c) (iv).  The Proclamation also mandates that the "Secretary of State and the Secretary of Homeland Security shall coordinate to adopt guidance addressing the circumstances

---

[2]  *Available   at*   https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/presidential-proclamation-archive/june_26_supreme_court_decision_on_presidential_proclamation9645.html   (last   visited, February 17, 2019).

in which waivers may be appropriate"; however, no aspect of this guidance is required to be public. *Id*. Nevertheless, since the promulgation of the Proclamation, the Department of State has released hundreds of pages of redacted versions of its internal guidance in response to Freedom of Information Act requests and has provided answers on its public website to a number of common questions regarding the mechanics of the waiver process. *See* U.S. Department of State, Virtual Reading Room Documents Search Results ("FOIA Response")[3]; see *also* State Dep't Website. As of January 31, 2019, consular officers have cleared 2,673 applicants for waivers based on the process outlined above. *See* State Dep't Website.

Plaintiffs in this action are Yemeni visa applicants and their family members—a number of whom are United States citizens or lawful permanent residents ("LPRs")—at various stages of intending to apply or having applied for an immigrant visa. The majority have applied or are seeking to apply for immigrant visas at the United States Embassy in Djibouti. According to Plaintiffs, they "do not challenge the Proclamation itself. Rather, taking the Proclamation as law of the land, they challenge Defendants' implementation of its waiver provisions." Dkt. 24 at 40. Based on the Complaint and Defendants' investigation to date,[4] the intending-immigrant Plaintiffs fall into four categories. Ten Plaintiffs appear to have not yet been, and may never be, subjected to the Proclamation. Within that set, two Plaintiffs appear to have not yet executed an immigrant visa application at an interview, and thus, a consular officer has not yet determined whether the Proclamation applies to them; and eight Plaintiffs appear to have been denied visas for reasons

---

[3]*Available* *at* https://foia.state.gov/Search/results.aspx?searchText=proclamation+waiver&beginDate=&endDate=&publishedBeginDate=20180301&publishedEndDate=&caseNumber

[4] As the Complaint was only filed a week ago, Defendants' investigation into the facts relevant to the Complaint is ongoing, and Defendants aim to file a supporting declaration corroborating the figures describing the number of Plaintiffs in each category.

other than the Proclamation.  *See, e.g.*, *id.* at 39.  40 Plaintiffs appear to have received notice that their applications for visas have been refused due to the Proclamation, and that further administrative processing is required before a decision on their waiver applications can be made. No final decision has been made yet as to whether or not these plaintiffs qualify for a waiver.  *See, e.g.*, Dkt. 24 at 43-45, 49, 52, 55, 57, 58, 62-63.  Many of these applicants likely qualify under the first two prongs of the Proclamation's waiver criteria and they are awaiting national security vetting.  And two Plaintiffs appear to have received notice both that their application for a visa was denied and that they are ineligible to receive a waiver.  *See, e.g.*, *id.* at 47.  One Plaintiff has cleared the waiver process and "was approved and issued a visa on October 28, 2018 and arrived to the U.S. on November 5, 2018."  *Id.* at 56; *see also* Dkt. 1, ¶ 208.  Other Plaintiff-Beneficiaries also appear to have cleared the waiver process.  *See id.*, ¶ 229.  In addition, multiple members of Plaintiffs' families who applied for visas at the same time appear to have already been granted waivers and issued visas, and are simply not named Plaintiffs.  *See, e.g.*, *id.*, ¶¶ 120-21.  There are procedures in place for seeking expedited processing directly from consular officers due to medical and other emergencies, but, as far as the Government has ascertained in the one week since the Complaint was filed, Plaintiffs have not presented requests for expedited processing to consular officers in the majority of the cases.  *See* FOIA Response, Operational Q & As on P.P. 9645 in light of the U.S. Supreme Court order of December 4, 2017, lifting lower court injunctions and pursuant to guidance in 17 State 97682, at 15.

Plaintiffs filed a nine-count Complaint, *see* Dkt. 1 at 60-73, bringing claims under: (1) the Administrative Procedure Act ("APA"), (2) the Immigration and Nationality Act ("INA"); (3) the Fifth Amendment for alleged violations of procedural due process; (4) the Fifth Amendment for alleged violations of substantive due process; (5) the Ninth Amendment; (6) *Bivens v. Six Unknown*

*Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1981); (7) the Mandamus Act; (8) the Declaratory Judgment Act; and (9) the Equal Access to Justice Act.  Plaintiffs, through their Complaint, seek to obtain "a declaratory judgment directing Defendants to adjudicate Plaintiffs' applications for waivers pursuant to Section 3(c) of the Proclamation, and issue a final determination on Plaintiffs' applications for immigrant visas within 15 days," and to further "[e]njoin the U.S. Embassy in Djibouti from denying immigrant visas for those who qualify for the waiver under the Proclamation." *Id.* at 73-74.  Thus, in essence, Plaintiffs seek to compel Defendants to complete administrative processing for those Plaintiffs with pending waiver applications, whether or not complete and without regard for the other individuals awaiting processing of their waiver applications, within 15 days, and to further compel Defendants to overturn prior visa refusals on the ground that two Plaintiffs are ineligible for a waiver.  Plaintiffs have named as Defendants numerous Government officials,[5] as well as several government agencies. *Id.* at 2.[6]

One day after Plaintiffs filed their Complaint, their motion for a TRO was heard and denied because Plaintiffs "failed to establish that they were likely to suffer irreparable harm in the absence of a temporary restraining order."  ECF Minute Entry dated February 12, 2019.  In large measure, the TRO was denied because the medical issues Plaintiffs highlighted as necessitating the entry of a TRO were being experienced "here in the United States" where "access [to] medical care" is not an issue.  Dkt. 22-1 at 32.  The Court found "that Plaintiffs failed to establish that they were likely

---

[5] Under Fed. R. Civ. P. 25(d), Attorney General William P. Barr is substituted for former Acting Attorney General Matthew Whittaker.  We respectfully ask the Court to direct the Clerk to update the caption accordingly.

[6] The individual defendants are named as Defendants in their official and individual capacities.  It appears that these officials have not yet been served in their individual capacities, nor have they requested representation nor has the Department of Justice as of yet determined to provide them with representation in such capacities.  Therefore, the instant brief is submitted only on behalf of the United States, its sued agencies, and the aforementioned persons sued in their official capacities (collectively "the Government").

to suffer irreparable harm in the absence of a temporary restraining order."  ECF Minute Entry
dated February 12, 2019.  The Court explained that the medical issues presented with respect to
particular plaintiffs were "chronic rather than emergent medical issues," and that Plaintiffs had
delayed in filing the case where the issues they raised were "identified at least [as early as July
2018]."  Dkt. 22-1 at 22-23.  Further, the Court was not "confident that Plaintiffs can satisfy the
heightened standard for success on the merits applicable to mandatory injunctions that would
provide a movant with substantially all the relief sought."  ECF Minute Entry dated February 12,
2019 (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc*., 60 F.3d 27, 34-35 (2d Cir. 1995)).

## ARGUMENT

### I.  APPLICABLE STANDARD

It is well-settled that a preliminary injunction is an "extraordinary remedy that may only
be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. NRDC*, 555
U.S. 7, 22 (2008); *see also Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 438 (E.D.N.Y.
2013) ("A preliminary injunction is an extraordinary and drastic remedy … never awarded as of
right.") (quoting *Munaf v. Green*, 553 U.S. 674, 689-90 (2008)).  The burden is thus squarely on
Plaintiffs, as the movants, to carry "the burden of persuasion" and demonstrate their entitlement
to a preliminary injunction. *Moore v. Consolidated Edison Co. of N.Y.*, *Inc.*, 409 F.3d 506, 510 (2d
Cir. 2005); *see also Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) ("[A] preliminary
injunction … should not be granted unless the movant, by a *clear showing*, carries the burden of
persuasion."  (emphasis in original) (internal quotation omitted)).  "A plaintiff seeking a
preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to
suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his
favor, and that an injunction is in the public interest."  *N.Y. Progress and Protection PAC v. Walsh*,

733 F.3d 483, 486 (2d Cir. 2013) (quoting *Winter*, 555 U.S. at 20).  This standard is essentially identical to "standard for an entry of a TRO."  *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (citing *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)).

Significantly, where, as here, Plaintiffs seek "a preliminary injunction that will alter the status quo," the burden to obtain preliminary injunctive relief is even more onerous, as Plaintiffs "must demonstrate a 'substantial' likelihood of success on the merits."  *N.Y. Progress*, 733 F.3d at 486 (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)); *LG Capital Funding, LLC v. Positive ID Corp.*, No. 17-cv-1297 (NCG), 2017 WL 2556991, at *5 (E.D.N.Y. June 12, 2017) ("Where, as here, a party is moving for a mandatory injunction that alters the status quo by commanding a positive act, the moving party must meet a higher standard … [t]he movant must show a clear or substantial likelihood of success on the merits … and make a strong showing of irreparable harm, … in addition to showing that the preliminary injunction is in the public interest.") (emphases and internal quotation omitted)).  Assessing Plaintiffs' motion for a preliminary injunction under a heightened standard is necessary for a second, independent reason: Plaintiffs are seeking "substantially all the relief sought"—favorable adjudication of their visa applications within 15 days—and "that relief cannot be undone even if the [Government] prevails at a trial on the merits."  *Tom Doherty*, 60 F.3d at 34; *see also N. Am. Soccer League, LLC v. U.S. Soccer Federation, Inc.*, 296 F. Supp. 3d 442, 456 (E.D.N.Y. 2017).

## II.   THE MOTION IS PROCEDURALLY IMPROPER BECAUSE IT SEEKS THE EQUIVALENT OF FINAL JUDGMENT ON THE MERITS

Plaintiffs' motion for a preliminary injunction seeks the identical relief, and the entirety of relief, as the Complaint itself seeks.  At bottom, both Plaintiffs' motion and complaint seek to adjudicate Plaintiffs' waiver applications and revisit adverse waiver determinations. If the Court were to grant Plaintiffs' preliminary injunction, there would be nothing left for the Court to do.

Plaintiffs are thus seeking summary judgment, rather than emergency provisional relief designed to preserve the status quo until the merits of the claims can be fairly determined on a full record.

It is well-established that courts may not grant a "preliminary" injunction that effectively gives the Plaintiffs a final judgment on the merits. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be had …. [I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits"); *WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996) ("[T]he purpose of a preliminary injunction is not to give the plaintiff the ultimate relief it seeks."); *Mohsin v. Cissna*, 18-CV-2931 (ENV), Tr. at *5-*6 (E.D.N.Y. May 31, 2018) (denying requested preliminary injunction because a "request[ ] for relief that is the ultimate relief in a petition [is] not available" through a preliminary injunction) (citing *Taiebat v. Scialabba*, No. 17-CV-0805 (PJH), 2017 WL 747460, at *3 (N.D. Cal. Feb. 27, 2017)).

The impropriety of Plaintiffs' present motion is buttressed by the denial of Plaintiffs' motion for TRO—which applies substantially the same standard as a motion for preliminary injunction. In particular, the Court was not "confident that Plaintiffs can satisfy the heightened standard for success on the merits applicable to mandatory injunctions that would provide a movant with substantially all the relief sought." ECF Minute Entry dated February 12, 2019 (citing *Tom Doherty*, 60 F.3d at 34-35).

Accordingly, Plaintiffs' motion therefore must be denied for this reason alone.

### III.   PLAINTIFFS HAVE FAILED TO DEMONSTRATE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

#### A.   Plaintiffs Have Failed To Demonstrate a Substantial Likelihood of Success on their APA and Mandamus Claims

Plaintiffs appear to be asserting multiple legal theories under the heading of their claims based on the APA and mandamus: (1) that specific adverse visa decisions should be overturned and Plaintiffs' pending consideration for entry based on a waiver should be expedited, Dkt. 24 at 73, 77, 87; (2) that the waiver process, in general, is a "sham" and a "fraud," *id.* at 41; (3) that Defendants have not complied with the Proclamation's requirements by failing to provide adequate guidance, *id.* at 76-77; and (4) that Defendants have unreasonably delayed issuing visas. *Id.* at 42. Each of these claims is meritless.

The essence of the injuries Plaintiffs ultimately claim are: (1) the alleged delays in adjudicating waiver determinations; and (2) the denial of waiver requests.  This Court, however, lacks the power to review these plaintiff-specific determinations under the doctrine of consular nonreviewability.  "No jurisdictional basis exists for review of the action of the American Consul … suspending or denying the issuance of immigration visas …." *Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978); *see also Saleh v. Holder*, 84 F. Supp. 3d 135, 138-39 (E.D.N.Y. 2014) ("Federal courts, as a general matter, lack subject matter jurisdiction over claims arising from the adjudication of visa applications …. [T]he doctrine of consular nonreviewability provides that courts do not have jurisdiction to review decisions made by consular officers regarding the grant or denial of visas.") (internal quotation omitted)).  The doctrine stems from the need for courts avoid incursion upon the "plenary power of Congress to prescribe the terms and conditions upon which [aliens] may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention." *Khanom v. Kerry*, 37 F.

Supp. 3d 567, 574 (E.D.N.Y. 2014) (internal quotation omitted).   Critically, in the Second Circuit, "the doctrine of consular nonreviewability applies not only when a plaintiff challenges an official's discretionary decision to approve or deny a visa application," but also "where a plaintiff seeks to compel an official to simply adjudicate a visa application." *Abdo v. Tillerson*, 17 Civ. 7519 (PGG), 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019).   Thus, in *Abdo*, plaintiffs, like the Plaintiffs in this case, sought "judicial review of Defendants' delay in adjudicating [a] visa application" under the Proclamation; "[s]uch a claim falls squarely within the doctrine of consular nonreviewability." *Id.* at *4; *see also Foad v. Holder*, No. 13-cv-6049, 2015 WL 1540522, at *3 (E.D.N.Y. Apr. 7, 2015) ("The doctrine is well settled and beyond dispute …. None of the statutes that Plaintiffs rely on allow the Court to review a consulate's decision to issue a visa.").   It follows that this Court lacks authority to either revisit final decisions made regarding waivers or to expedite the issuance of waivers, as the doctrine of consular nonreviewability applies with the same force here as it did in *Abdo*.

Plaintiffs also generally allege that the waiver process is "fraudulent," Dkt. 1, ¶ 60, and that there is an "absence of a meaningful waiver consideration process," *id.*, ¶ 81 because only a "miniscule percentage" of waiver applications are granted.  *Id.* at 19; *see also* Dkt. 24 at 41.  Their claims, however, are belied by the 2,600+ applicants who have been cleared for waivers to date, the waivers granted and visas already issued to multiple Plaintiffs and, based on Defendants' investigation to date, multiple family members of Plaintiffs, as well as the large number of individuals who are still being considered for waivers in comparison to the miniscule number of Plaintiffs actually denied waivers.  In any event, to the extent Plaintiffs' APA and mandamus claims are construed to encompass this claim, the Supreme Court has already considered and rejected these very arguments.  *See Hawaii*, 138 S.Ct. at 2423 n.7 ("Justice Breyer suggests that

not enough individuals are receiving waivers or exemptions.  Yet even if such an inquiry were appropriate …the evidence he cites provides but a piece of the picture, and does not affect our analysis.") (internal quotation omitted).  Indeed, some of the evidence that Plaintiffs rely on to make this point, *see* Dkt. 1, ¶¶ 82-85, was the very evidence Justice Breyer relied on in his dissent to suggest that the Proclamation was unlawful, *see Hawaii*, 138 S.Ct. at 2432-33 (Breyer, J., dissenting).  But a majority of the Supreme Court disagreed, illustrating that Plaintiffs' global challenge to the waiver program, which ultimately amounts to a challenge to the Proclamation itself, cannot pass muster.  More generally, Plaintiffs cannot challenge the waiver program under the APA because the APA provides a cause of action only for persons "adversely affected or aggrieved by an agency action within the meaning of a relevant statute," 5 U.S.C. § 702. Such a cause of action does not extend to nonstatutory executive decisions, especially because the Proclamation explicitly disavows creating any enforceable rights.  *See* 82 Fed. Reg. at 45172, § 9(c); *Air Transport Ass'n of Am. v. F.A.A.*, 169 F.3d 1, 8-9 (D.C. Cir. 1999) ("Although petitioner indicated that it does not seek to assert rights under the order but is merely referencing it to provide evidence of the arbitrary and capricious nature of the [agency's] decision, such an argument is nothing more than an indirect—and impermissible—attempt to enforce private rights under the [executive] order.").  Because Plaintiffs cannot bring an APA claim against the Proclamation, *see Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992), they likewise cannot bring an APA claim based on the agencies' implementation of the waiver standards in the Proclamation.

Plaintiffs also contend that "Defendants have failed to promulgate …guidance and have nonetheless proceeded in denying or stalling waivers and visas."  Dkt. 24 at 77; *see also* Dkt. 1, ¶¶ 302, 357.  This claim, however, has nothing to do with the relief Plaintiffs seek in their Motion, which is favorable adjudications of visa applications within 15 days.  For this reason, Plaintiffs

lack standing to pursue a claim based on the absence of any guidance, as the alleged lack of guidance is neither "fairly traceable" to Plaintiffs' injuries, nor is there a "non-speculative likelihood that the injury can be remedied by the requested relief,"—*i.e.*, redressability. *Allco Finance Ltd. v. Klee*, 805 F.3d 89, 93 (2d Cir. 2015). "In determining whether an injury is redressable, [courts] examine whether each aspect of the relief… would redress [the] asserted injury." *Id.* Here, the relief sought—additional guidance—would not ameliorate Plaintiffs' asserted injuries, because Plaintiffs have not demonstrated how or why additional guidance would impact the time in which waiver requests are granted, or why additional guidance would have resulted in a different determination for the smaller group of Plaintiffs whose requests for a waiver were denied. It is thus "merely speculative" at best that any additional guidance would rectify Plaintiffs' injury. *Id.* at 98; *see also Coalition of Watershed Towns v. U.S. E.P.A.*, 552 F.3d 216, 218 (2d Cir. 2008) ("Despite any injury the Coalition may allege, any relief this Court could provide is speculative. Even if we were to [grant the requested relief], there is no basis for us to conclude that petitioners would more likely than not be in any different position than they are now."). Similarly, making additional guidance available, even if legally required, would not place Plaintiffs in a more advantageous position because what Plaintiffs truly seek in their motion is a final adjudication on all outstanding waiver decisions within 15 days and to overturn the decisions to deny certain Plaintiffs waivers, and if that relief is granted, their relief requested based upon their claim for additional guidance would become null and void. Indeed, requiring Defendants to take specific action within 15 days—which Plaintiffs demand, and which would result in the denials of their applications as the vetting process would not be completed within that time period—has nothing to do with whether or not any particular guidance is or is not available. As a result, Plaintiffs have not shown that they have standing, and necessarily, cannot show a substantial

likelihood of success on the merits based upon Defendants' alleged failure in making guidance available.

In any event, the premise of Plaintiffs' claim, that "Defendants have failed to promulgate such guidance," Dkt. 24 at 77, is factually flawed. The State Department has provided publicly-available guidance detailing how waivers are evaluated. *See generally* FOIA Response; State Dep't Website. Plaintiffs have shown no legal entitlement to any additional guidance, especially because no aspect of the Proclamation requires that any guidance developed be made public. Since long before the Proclamation, the State Department has some guidance non-public regarding adjudication of visas, in order to protect national security. The Proclamation thus states that Secretary of Homeland Security must merely coordinate "to adopt guidance," not to release it publicly. 82 Fed. Reg. at 45168, § 3(c). Plaintiffs have not even pled facts from which it is plausibly alleged that Defendants have been derelict in developing guidance. Instead, at most, they have alleged that sufficient guidance has not been made public, but even if Plaintiffs had standing to pursue that challenge (which they do not), Plaintiffs would not possess a legal entitlement under the APA to such guidance for the simple reason that it is not compelled by the Proclamation.

Finally, to the extent Plaintiffs attempt to couch their claims as predicated upon "months … and even years of delay" in the issuance of visas, Dkt. 24 at 39, Plaintiffs have not pled facts that would warrant the grant of relief under either the APA or the Mandamus Act. As an initial matter, a writ of mandamus is an "extraordinary remedy" that is only appropriate "to compel the performance of a clear and nondiscretionary duty." *Pittson Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988). Because Plaintiffs have no legal entitlement to a waiver, there is no duty that can give rise to the writ of mandamus that Plaintiffs seek. *See Pesantez v. Johnson*, No. 15 Civ. 1155, 2015

WL 5475655, at *2 (E.D.N.Y. Sept. 17, 2015) (Cogan, J.) ("It is beyond serious dispute that mandamus … is unavailable to compel compliance with a … obligation when the underlying statute expressly disclaims a private right of action."). Because the Proclamation similarly disclaims creating any private right of action, Defendants owed Plaintiffs no duty that could support a claim for the "extraordinary remedy" of a writ of mandamus. *Pittson*, 488 U.S. at 121.

Even if Plaintiffs could properly assert a claim for mandamus relief based on delay, they have not shown the unreasonable delay necessary for either their mandamus or their APA claim. "It is not unreasonable for delays to occur … where an agency with limited resources is attempting to adjudicate an every-increasing number of applications." *L.M. v. Johnson*, 150 F. Supp. 3d 202, 214 (E.D.N.Y. 2015) (Garaufis, J.). Here, Plaintiffs have not alleged or shown any facts showing unreasonable delay. Instead, Plaintiffs have simply shown that for each individual case, the waiver process can take a matter of months, a period of time that is far from "extraordinary" when considering the national security interests implicated and the volume of applications being processed. *Cheney v. U.S. Dist. Court for Dist. Of Columbia*, 542 U.S. 367, 380 (2004); *see also Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) ("While the delay of almost five years from May 2000 is not insubstantial, the Court finds, in light of the annual limit on the number of available adjustments and the volume of applications for adjustment in the system, that the delay is not unreasonable."); *Gong v. Duke*, 282 F. Supp. 3d 566, 568 (E.D.N.Y. 2017) ("[T]he mere delay of less than four years is an inadequate ground to grant either mandamus or APA relief."); *Hoo Loo v. Ridge*, No. 04-5553, 2007 WL 813000, at *4 (E.D.N.Y. Mar. 14, 2007) (Irizarry, J.) (finding delay of more than four years was not unreasonable). Indeed, the case-by-case determination of whether to grant a visa in numerous contexts frequently took months even prior to the promulgation of the Proclamation. *See, e.g.*, *Patel v. Rodriguez*, No. 15-cv-486, 2015 WL

6083199, at *6 (N.D. Ill. Oct. 13, 2015) ("Plaintiffs have failed to allege or explain why a one-year delay is unreasonable …. Plaintiffs have remained on the waiting list because there is a long line of applicants ahead of them.  Thus, while Plaintiffs' applications have surely been delayed, the Court has no basis for finding the delay unreasonable.").

In *L.M.*, this Court, in the context of the adjudication of asylum applications, found that "[w]hile two years of delay is not insubstantial, the court cannot find, as a matter of law, that Plaintiffs have alleged facts that would entitle them to the relief requested."  150 F. Supp. 3d at 214; *see also Patel*, 2015 WL 6083199, at *6.  Likewise, Plaintiffs have offered no basis from which this Court can infer that the decision times for individual waiver decisions are unreasonable. The discretionary remedy of mandamus should also be discouraged here because the remedy Plaintiffs seek would, "if … anything, move [Plaintiffs'] application to the front of the line at the expense of other applicants whom …. are [not] less deserving of prompt adjudication."  *Pesantez*, 2015 WL 5475655, at *3; *see also Gong*, 282 F. Supp. 3d at 569 ("There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit. That factor should not give him any advantage.").  That Plaintiffs are attempting to bypass set procedures at the expense of thousands of other visa applicants only underscores why they are not entitled to mandamus relief.

In sum, Plaintiffs have not shown a substantial likelihood of success on their claims under the APA or the Mandamus Act.[7]

---

[7] The preliminary injunctive relief granted in *Alharbi et al. v. Miller et al.*, No. 1:18-cv-02435-BMC, Dkt. 20 (E.D.N.Y. May 29, 2018), is readily distinguishable.  First, it involved an entirely different provision of the Proclamation, section 6(c), which precludes the Government from revoking visas issued before the Proclamation became effective, *see* 82 Fed. Reg. at 45171, § 6(c).  While several Plaintiffs in this case make vague allegations that someone told them that they would be issued a visa, no Plaintiff claims to have received a visa approval notice or to have been told that he or she had been issued visa.  Second, the preliminary injunction in *Alharbi* was narrowly circumscribed to a limited number of plaintiffs who had erroneously received printed forms indicating that their visa

**B.  Plaintiffs Have Not Shown a Substantial Likelihood of Success Under Their Claim Arising Under The INA**

Plaintiffs allege that "[i]n denying waivers and visas to Plaintiffs based on their country of origin or nationality," Defendants have run afoul of the anti-discrimination provision of the INA, 8 U.S.C. § 1152(a)(1)(A).  Dkt. 24 at 77-78.  To the extent that this is nothing more than another challenge to the Proclamation itself, insofar as it suspends entry from certain countries of concern, this is yet another challenge that *Hawaii* precludes.  *See Hawaii*, 138 S.Ct. at 2414-15.

To the extent Plaintiffs are contending that the case-by-case waiver determination operates to functionally discriminate on the basis of national origin, that claim lacks adequate factual support, and is belied by Plaintiffs' own submissions.  The Supreme Court in *Hawaii* noted that, at most, rational basis review would apply, as judicial "inquiry into matters of entry and national security is highly constrained."  138 S.Ct. at 2420.  For this very reason, the Supreme Court, applying the requisite deferential standard of review, rejected the arguments that the Proclamation operated in a discriminatory manner.  *Id.* at 2421-2423.  Here, a review of the Complaint and based upon Defendants' investigation to date, at least one Plaintiff and several family-member non-plaintiffs were granted waivers and issued visas to the United States in the wake of the Proclamation.  *See* Dkt. 1, ¶ 208; Dkt. 24 at 56.  More generally, the fact that over 2,600 applicants within the same protected class were cleared for waivers is proof positive that the waiver process is not enshrining invidious discrimination.  Favorable treatment of an individual within a protected class undermines an inference of national origin discrimination against that same class.  *See, e.g.*,

---

applications had been granted.  Third, Judge Cogan still recognized "the importance of ensuring that plaintiffs are properly vetted" and did not order issuance of a visa to any plaintiff who failed national security checks and did not impose a 15-day deadline that would have truncated such vetting.  *Alharbi et al. v. Miller et al.*, No. 1:18-cv-02435-BMC, ECF Text Order (E.D.N.Y. June 25, 2018).  Notwithstanding these differences, the factual and legal overlap between this case and *Alharbi*, especially now that additional plaintiffs similarly-situated to those in this case have been added in an amended complaint filed in *Alharbi* after issuance of the preliminary injunction, still warrants marking this case as related to *Alharbi* for the reasons the Government explained in its Notice of Related Cases.  *See* Dkt. 23.

*Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625 (MKB), 2013 WL 3968748, at *12 (E.D.N.Y. July 30, 2013) (noting that company "continued to hire and employ individuals of West Indian Origin, further undermining Plaintiff's claim").  Moreover, because the majority of the Plaintiffs are still awaiting a decision on whether or not they will be granted a waiver, the most Plaintiffs can allege is that two plaintiff applicants received unfavorable visa decisions because of the Proclamation.  Such allegations, without more, far well short of even plausibly alleging discrimination on the basis of national origin, and, by extension, showing a substantial likelihood of success on the merits, especially in view of the fact that the process operates on a case-by-case basis, with a number of Plaintiffs (and several family members) having already received a favorable outcome.

### C. Plaintiffs Have Not Shown a Substantial Likelihood of Success on Their Procedural Due Process Claim, Their Substantive Due Process Claim, or Their Ninth Amendment Claim

Plaintiffs assert that they were deprived of a "liberty or property interest" in contravention of the Due Process Clause of the Fifth Amendment.  Dkt. 24 at 78-79; *see also* Dkt. 1, ¶ 313. Plaintiffs are incorrect.  The Supreme Court has recognized "that a benefit is not a protected entitlement if government officials may grant it or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005).  The decision of whether or not to grant a waiver from a Presidential entry-suspension order under 8 U.S.C. § 1182(f) is the paradigmatic example of a discretionary decision committed to the executive branch.  Accordingly, Plaintiffs' claims that their procedural due process rights were denied because of the "denials of immigrant visas," Dkt. 1, ¶ 318, is a nonstarter, because there is no protected property or liberty interest at stake.  *See Emami v. Nielsen*, No. 18-cv-10587-JD, 2019 WL 428780, at *9 (N.D. Cal. Feb. 4, 2019) ("For the due process claim, the threshold question is whether a plaintiff was deprived of

any of these interests, because *no* process is due if one is not deprived of life, liberty, or property …. Plaintiffs' inability to allege a deprivation of an interest protected by the Due Process Clause means their claim must be dismissed in both its procedural and substantive iterations.") (internal quotation omitted).

Moreover, even if Plaintiffs had a cognizable liberty or property interest implicated, nothing in Plaintiffs' submissions suggests that any of the Plaintiffs were afforded anything less than the full extent of the process contemplated by the Proclamation.  Because there is no application for a waiver that exists separate and apart from the visa application, and because Plaintiffs do not allege that they were hindered in executing visa applications, they instead attempt to claim that the "blanket denials of visas" constitutes a due process violation.  Dkt. 1, ¶ 316. However, "the Government need provide only a statutory citation to explain a visa denial," *Hawaii*, 138 S.Ct. at 2419, so Plaintiffs' complaint that waivers are denied based on "[f]orm denial letters," *id.*, ¶ 61, is legally irrelevant because those letters contain statutory citations.[8]  *See* Ex. M to Plaintiffs' Motion for Preliminary Injunction.

As for Plaintiffs' substantive due process claim and Ninth Amendment claim, Plaintiffs argue that their fundamental rights to the "integrity of the family" have been violated.  *See* Dkt. 24 at 80; *see also* Dkt. 1, ¶¶ 322, 332.  But Plaintiffs have stretched the doctrine of implied fundamental rights past its breaking point.  The implied fundamental right to make familial decisions does not extend to an affirmative entitlement to have particular family members enter the country.  "[The Supreme Court] has consistently recognized that these various distinctions are policy questions entrusted exclusively to the political branches of our Government, and [courts]

---

[8] Plaintiffs' claims that the State Department only has forms for denying waivers are also misleading and disingenuous.  There is no block on the form to mark "approved" because when a waiver application is granted and a visa is issued, the visa is printed and affixed to the applicant's passport.

have no judicial authority to substitute … political judgment for that of Congress. Only by diluting the meaning of a fundamental liberty interest and jettisoning … established jurisprudence could we conclude that the denial of [the] visa application implicates any … fundamental liberty interests." *Kerry v. Din*, 135 S.Ct. 2128, 2136 (2015); *Burrafato v. U.S. Dep't of State*, 523 F.2d 554, 555 (2d Cir. 1975) ("With respect to the claim that the denial of [the] visa application violated the constitutional rights of [the plaintiff] … we reaffirmed the rule that no constitutional right of a citizen spouse is violated by deportation of his or her alien spouse."); *Noel v. Chapman*, 508 F.2d 1023, 1027 (2d Cir. 1975) ("There can be no doubt that … unadmitted and nonresident aliens have no constitutional right to enter and to remain in this country. It is equally clear that their wives as resident aliens have no constitutional right to keep them here on the theory that the integrity of the family is protected by equal protection principles."); *see also Bakran v. Sec., U.S. Dep't of Homeland Sec.*, 894 F.3d 557, 565 (3d Cir. 2018) ("[N]o court has recognized that a citizen spouse has a constitutional right to have his or her alien spouse reside in the United States. Boiled down, Plaintiff's theory is that he has a fundamental right to reside in the United States with his non-citizen [spouse]. But that theory runs headlong into Congress' plenary power over immigration." (quoting *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018)). Because no fundamental rights are at stake, Plaintiffs' substantive due process and Ninth Amendment claims must succumb. *See Emami*, 2019 WL 428780, at *9 ("Plaintiffs … refer to a 'right' to the 'integrity of the family unit,' but even assuming such a right can be found in the Fifth Amendment, which is not at all clear, plaintiffs concede that it would 'not amount to a right of entry for foreign nationals, nor to an unfettered right to reside in the United States with family members who are foreign nationals.").

Even assuming, *arguendo*, Plaintiffs' fundamental rights were at issue, strict scrutiny would not apply, as the Proclamation would be subject, at most, to "rational basis review." *Hawaii*,

138 S.Ct. at 2420; *see also Bangura v. Hansen*, 434 F.3d 487, 495 (6th Cir. 2006) ("[F]ederal courts apply a much more deferential standard of review to substantive due process challenges even where the immigration law interferes with a plaintiff's fundamental rights," a standard that "may be even lower than rational basis review."). And the Supreme Court has already determined that the Proclamation is supported by a rational basis, notwithstanding arguments similar to those Plaintiffs allege here. *See Hawaii*, 138 S.Ct. at 2420-23; *see also Emami*, 2019 WL 428780, at *10 (noting that "rational basis review" constitutes "another sizeable roadblock to the … claim as currently alleged").[9]

## IV. THE REMAINING PRELIMINARY INJUNCTION FACTORS DO NOT SUPPORT GRANTING PLAINTIFFS' MOTION

Because Plaintiffs have not demonstrated a substantial likelihood of success on the merits, Plaintiffs' motion can be denied on that basis alone. In the event this Court elects to consider the remaining preliminary injunction factors, however, they only serve to reinforce the impropriety of the relief Plaintiffs seek.

With respect to irreparable harm, Plaintiffs argue that "their homes and hometowns have been destroyed by the war in Yemen, and they are suffering medical emergencies …[a]bsent intervention from this Court, Plaintiffs will continue to suffer from a lack of appropriate medical care." Dkt. 24 at 74-75. As an initial matter, the pertinent inquiry is not whether Plaintiffs will suffer irreparable harm in a vacuum, but instead whether "absent a preliminary injunction" Plaintiffs will "suffer an injury that is neither remote nor speculative, but actual and imminent, and

---

[9] Plaintiffs' *Bivens* claim is ultimately just a damages remedy, and is therefore not relevant to Plaintiffs' motion. In any event, because Plaintiffs have not shown any predicate constitutional violation, and because there is reason to doubt that the individual defendants have been properly served in their individual capacities, Plaintiffs' *Bivens* claim does not alter the conclusion that their request for a preliminary injunction should be denied. Similarly, Plaintiffs' declaratory judgment claim fails to rescue Plaintiffs' motion. A standalone declaratory judgment claim that is simply duplicative of the other causes of action does not provide an independent basis for injunctive relief. *See, e.g.*, *Zhang v. USCIS*, No. 05 Civ. 4086 (RJH) (AJP), 2005 WL 3046440, at *7 (S.D.N.Y. Nov. 8, 2005).

one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). And Plaintiffs must make a "strong showing" that such irreparable harm will ensue. *LG Capital Funding*, 2017 WL 2556991, at *5. Neither of Plaintiffs' claimed bases for irreparable harm fits this description. As to the former, Plaintiffs concede that the majority of the Plaintiffs are either living in the United States or in Djibouti, not Yemen. *See, e.g.*, Dkt. 24 at 87-88 ("Plaintiffs … need to be with their families … as a result of being stuck abroad, and in Djibouti in particular, awaiting the processing of their visas."). Consequently, the conditions in Yemen have limited relevance in assessing whether or not these particular Plaintiffs have suffered irreparable harm for the purposes of evaluating Plaintiffs' motion.

As to the latter, many of the medical ailments Plaintiffs allude to are chronic concerns of certain Plaintiffs that are already being treated in the United States, irrespective of the outcome of the visa applications at issue. *See, e.g.*, Dkt. 22-1 at 22; Dkt. 24 at 44 ("Plaintiff Abdo Ali Saleh is a United States citizen [who] currently resides in Brooklyn, New York …. Plaintiff Abdo Ali Saleh has a history of stroke."); *id.* at 49 ("Plaintiff Amin El Burati is a United States Citizen [who] currently resides in Bridgeview, Illinois …. Plaintiff Amin El Burato had an arthroplasty in September 2018."); *id.* at 54 ("Plaintiff-Petitioner Mansour Mohamed is a United States citizen [who] resides in Detroit, Michigan …. Plaintiff Mansour Mohamed is 75 years old and suffers from diabetes …."); *see also* Dkt. 22-1 at 32. As Judge DeArcy Hall determined during the TRO hearing held last week in this matter, Plaintiffs have not shown that absent the expedited and favorable adjudication of the visa applications that they seek, they will suffer imminent irreparable harm. *See* Dkt. 22-1 at 32 ("I'm not unsympathetic to the issues here. Most of the people … in terms of the medical issues … highlighted, they are here in the United States. They're able to

access medical care …. I just don't have the information here to be able to grant a TRO.").  In fact, Judge DeArcy Hall made special mention of the fact that Plaintiffs' TRO submission was "light" on evidence of "irreparable harm," which constituted a "hurdle" that Plaintiffs could not overcome. *Id.* at 6; 26 ("[I]f the court were to proceed in the way that you are suggesting, that the existence of a chronic health condition without being any evidence of some emergent issue is sufficient, I think it's not a precedent that I think that I am inclined to make.").  Further undercutting Plaintiffs' position that urgent relief is necessary is the fact that the underlying facts date back months, and in some instances, even years, for the individual Plaintiffs, yet suit was not brought until February of this year, *see id.* at 22 (noting the "delay in filing this case"), and that based on Defendants' investigation to date, a majority of the Plaintiffs did not file expedited requests directly with the consular officers examining their visa applications.

For largely similar reasons, the balance of the equities favors Defendants.  Plaintiffs repeat the "extreme medical emergencies," Dkt. 24 at 86, a factor that favors granting the injunction, but for the reasons discussed above, Plaintiffs have not sufficiently shown why the relief sought in this case would remedy the medical maladies described in Plaintiffs' submissions.  Meanwhile, if this Court were to grant Plaintiffs' motion, the normal and orderly processing of waiver applications would be disrupted to the disadvantage of all except the plaintiffs in this case, necessary security checks would either be compromised, a factor that weighs heavily in favor of the Government, or returned incomplete such that Plaintiffs would be unable to establish eligibility for waivers.  *See, e.g.*, *Stagg P.C. v. U.S. Dep't of State*, 158 F. Supp. 3d 203, 210-11 (S.D.N.Y. 2016) ("Granting this injunction would have very serious adverse impacts on the national security of the United States …. The balance of the equities and the public interest both firmly weigh in favor of the Government, and against the plaintiff.").  Indeed, the precise purpose of the Proclamation—

safeguarding the security of the country—would be compromised if Plaintiffs' motion were granted, a factor that only reinforces that the equities favor denying Plaintiffs' motion. *See* Proclamation, 82 Fed. Reg. at 45162, § 1 ("It is the policy of the United States to protect its citizens from terrorist attacks and other public-safety threats. Screening and vetting protocols and procedures associated with visa adjudications and other immigration processes play a critical role in implementing that policy."). Granting Plaintiffs' motion would undermine these very protocols, harming the crucial security interests that animated the promulgation of the Proclamation.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be denied.

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

F. FRANKLIN AMANAT
Senior Counsel

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration litigation
District Court Section

GISELA A. WESTWATER
Assistant Director

STACEY I. YOUNG
Senior Litigation Counsel

/s/ {FILED ELECTRONICALLY}
ARCHITH RAMKUMAR

ARCHITH RAMKUMAR
Trial Attorney
Office of Immigration Litigation
District Court Section
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-8085

Facsimile: (202) 305-7000
Gisela.Westwater@usdoj.gov
Archith.Ramkumar@usdoj.gov

*Attorneys for Defendants*